# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CHRIS HAULMARK**,                )

         Plaintiff,                )

         V.                )

**CITY OF WICHITA**,                )

    and                )  Civil Action No. _6:21-cv-1182-EFM-TJJ_

**BRANDON WHIPPLE**, in his official   )

capacity as the Mayor of the           )

City of Wichita,                )

         Defendants.                )

_____  )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Because of their aggressive refusal to take legally-required steps to prohibit discrimination against individuals with a hearing disability, Plaintiff Chris Haulmark, appearing *pro se*, brings this action against the Defendants City of Wichita and Brandon Whipple, in his official capacity as the Mayor of the City of Wichita, alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA"), for equal access to, participation in, and to enjoy the benefits of services, programs, and activities provided by Defendants to the public. He alleges as follows:

## I.    INTRODUCTION

1.    Defendant Brandon Whipple has worked diligently as Wichita's mayor since the COVID-19 pandemic broke out in America during March 2020 to ensure that

the public has access to essential health information. He uses Facebook Live's streaming services to hold weekly briefings on his Facebook page. By using his Facebook Live videos as the public forum, he created a space for the public to interact with him in real-time, and he is able to respond to comments from the public in real-time. In response to the public's comments on these streamed videos, Defendant Whipple frequently provides typed responses. In his official capacity as the mayor, Defendant Whipple has published dozens of Facebook Live videos on his Facebook page.

2.     Plaintiff Haulmark and Defendant Whipple have been engaging with one another on social media since 2017 as Democratic colleagues. In light of Plaintiff Haulmark's hearing disabilities, he repeatedly requested captioning from Defendant Whipple in anticipation of his election to the office of mayor of Wichita. Because of these requests, many of the pre-recorded videos on Defendant Whipple's Facebook page are captioned. Thus, Defendant Whipple has known for all relevant times since 2017 that Plaintiff Haulmark has hearing disabilities and that accommodations such as captioning and transcripts are required for individuals with a hearing disability in pursuant to Title II of the ADA.

3.     Plaintiff Haulmark has commented on Defendant Whipple's Facebook page that he is required to comply with Title II of the ADA once he is elected mayor of Wichita. In the months following COVID-19's arrival in the United States, Plaintiff Haulmark has been repeatedly requesting Defendant Whipple for accommodations to make his live-streaming videos equally accessible to Plaintiff Haulmark and those with a hearing disability.

4.     Instead of complying with the ADA, Plaintiff Haulmark has been banned from the interactive space of Defendant Whipple's Facebook page solely because Plaintiff Haulmark is Deaf who has repeatedly requested communication access. Because of Plaintiff Haulmark's disability and the ban imposed by Defendant Whipple, Plaintiff Haulmark no longer can interact on Whipple's FB Page to participate in exchange of views. Meanwhile, Plaintiff Haulmark's discussions with other members of the public on requests for accommodations on Defendant Whipple's Facebook page have been removed from view of the public. Additionally, Defendant Whipple publicly humiliated Plaintiff Haulmark by using the premise that he is Deaf and subjected him to public hatred, contempt, and ridicule due to his hearing disabilities.

5.     Because of his cavalier attitude toward Deaf people, Defendant Whipple fails to reasonably modify the policies, practices, and procedures as necessary to accommodate Plaintiff Haulmark, as well as other individuals with a hearing disability, for dozens of his Facebook Live streaming videos.

6.     In addition to the Whipple's Facebook page, the Defendants control two other social media platforms that are in violation of the ADA. There are many videos posted on these two other social media platforms that do not contain any accurate captioning, sign language interpreters, or transcripts as the ADA-required auxiliary aids or services to be provided as to ensure effective communication and to ensure equal participation for Plaintiff Haulmark. One of the two social media platforms as a Facebook page frequently contains links to the videos that the Defendants live streamed on their YouTube channel as the second social media platform.

7.     By intentionally excluding Plaintiff Haulmark from participating in Defendants' services, programs, and activities, Defendant Whipple has subjected Plaintiff Haulmark to discrimination because he is Deaf. As a result, not only was Defendant Whipple able to chill Plaintiff Haulmark's discussion on political views, his message was sent to the Deaf community, informing them that they are not entitled to critical health and government information shared by the Defendants. Lastly, the aggressive refusal of the Defendants to comply with the ADA makes it impossible for Plaintiff Haulmark to participate in and benefit from the services, programs, and activities offered by the Defendants.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction of this action under Title II of the ADA, 42 U.S.C. § 12131-12132, and 28 U.S.C. § 1331 and 1345. This Court may grant the reliefs sought in this action pursuant to 28 U.S.C. § 2201 and 2202.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial portion of the acts and omissions giving rise to this action occurred in the District of Kansas. 28 U.S.C. § 1391(b).

## III.     PARTIES

10.     Plaintiff Chris Haulmark is a citizen of the United States of America. At all times relevant, Plaintiff Haulmark is a resident of Olathe, Johnson County, Kansas. Since 2010, Plaintiff Haulmark has served as an active political leader who advocates for the Deaf community across the country. Thus, Plaintiff Haulmark keeps apprised of the current policies and procedures of state and local governments in Kansas. Plaintiff Haulmark is a qualified individual with a hearing disability. Plaintiff

Haulmark has been deaf since he was one year old. Plaintiff Haulmark is substantially limited in the major life activities of hearing and speaking aurally. Plaintiff Haulmark's preferred method of communication is through American Sign Language (ASL). Plaintiff Haulmark also uses auxiliary aids such as video conferencing and electronic devices to communicate. Plaintiff Haulmark watches videos with the assistance of a captioning function.

11.     Defendant Brandon Whipple is the mayor of the City of Wichita. He is sued in his official capacity. As a former state representative of Kansas, Defendant Whipple served between 2013 and 2020 as a member and then the Ranking Minority member of the Joint Committee on Information Technology of the Kansas General Assembly.

12.     Defendant City of Wichita is a city and municipality organized under the laws of the State of Kansas. The City may be served with process at 455 N. Main, Wichita, Kansas 67202.

## IV.     STATEMENT OF FACTS

13.     Defendant City of Wichita is the largest city in the state of Kansas and is a role model to the rest of the cities within Kansas.

14.     Defendant Brandon Whipple is the elected Mayor of the City of Wichita after assuming the office on January 13, 2020.

15.     The Defendants operate two Facebook pages-- City of Wichita-Government[1] and Brandon Whipple[2]-- which publicize both of their official business

---

[1] Facebook Page of City of Wichita- Government, https://www.facebook.com/cityofwichita
[2] Facebook Page of Defendant Brandon Whipple, https://www.facebook.com/VoteWhipple

activities. The City of Wichita- Government Facebook page appears to have been handed over by the previous administration to Whipple's.

16.     As of March 12, 2020, Governor Laura Kelly of Kansas proclaimed a State of Disaster Emergency within Kansas relating to COVID-19. After this proclamation, Defendant Whipple has been holding a weekly discussion on Saturdays in his official capacity to interact with the public on his own Facebook page (hereinafter "Whipple's FB Page") as the services, programs, and activities. This Facebook page is an official source of information to promote official government business.

17.     Any members of the public can view the videos and other posts on Whipple's FB Page. These services, programs, and activities include his messages and the responses from the audience, who are watching, listening, and interacting within the same interactive space as his audiovisual streams. These discussions with the public are usually at least thirty minutes each week.

18.     With the Facebook Live streaming services, Defendant Whipple seeks to promote official government business and communicate with the public directly in his official capacity as the Mayor of Wichita. As he streams himself to the public, Defendant Whipple pays attention to solicited comments and discussions left by the public in order to provide real-time responses. This functionality is made possible by Facebook for this interactivity space to be established.

19.     All of these live streaming videos on Whipple's FB Page do not have any captioning or transcripts readily available to ensure that individuals with a hearing disability, including Plaintiff Haulmark, are not excluded.

20.     Also, the City of Wichita's Facebook page (hereinafter "Wichita's FB Page") posts dozens of videos, either live streamed or pre-recorded. Wichita's FB Page regularly shares links to websites and Facebook posts from sources that include both audiovisual and audio-only content. Many of these videos and links to other videos, published on different social media platforms, contain messages from elected officials, employees, and staff members of the Defendants to be shared to the public. Many of these published videos and links as services, programs, and activities are not readily accessible for Plaintiff Haulmark and individuals with a hearing disability. Thus, Plaintiff Haulmark and other individuals with a hearing disability are intentionally excluded from the Defendants' services, programs, and activities.

21.     The Defendants regularly share posts with link to its other social media platforms, which do not ensure that effective communication and equal participation are achieved for Plaintiff Haulmark and other individuals with a hearing disability.

22.     Ultimately, the Defendants control the content of the three social media platforms, Whipple's FB Page, Wichita's FB Page, and the YouTube channel by determining which users are allowed to participate and to comment on which posts.

23.     In spite of the obvious fact that captioning and transcript services are required for each video and audio-only file, Plaintiff Haulmark has to go through exhausting, but necessary legal actions against the Defendants because they intentionally refuse to comply with Title II of the ADA.

## V.     THE DESIGN OF FACEBOOK

24.     Facebook is a social media platform with more than 2.85 billion monthly active users, as of March 31, 2021. See *Facebook, Inc., Quarterly Report* (Form 10-Q)

(April 29, 2021). In the United States, approximately two-thirds of adults are Facebook users. *Id.* A user of Facebook can post any length of message or post a Facebook post, republish another user's post or share another Facebook post, or respond to another user's post or make a comment on another user's post. *Id.* There are all kinds of exchanges on Facebook, from greetings to heartfelt reconnection with politics.

25.     The Facebook platform is particularly well-suited to public discussion and debate as "protected First Amendment activity." See *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

26.     A Facebook user's "profile" contains information about the user including their name, a description of themselves, biographical information, work history, and other sites they manage. A Facebook "profile" is a personal account on the social network.

27.     In contrast, Facebook "pages" are user accounts created by businesses, celebrities or public figures, organizations, or corporations. The Facebook "pages" are visible to the general public without the need to first register for a Facebook account.

28.     The majority of public officials create separate Facebook "pages" in their official capacity as public officials or government officials. These pages are called Public Figure, Politician, or Government Organization "pages" and differ from personal Facebook user profiles in appearances and content. Those who have "pages" often describe their official position on their pages.

29.     Personal Facebook "profiles" can be protected by users so that only other certain users can see their timelines and search for their posts, but Facebook "pages"

cannot be restricted in this way. Users and page creators can "ban" Facebook profiles from participating on their pages.

30.     When a user with a Facebook page "bans" a personal Facebook profile, the user of this Facebook profile can no longer comment on the Facebook page. If the banned user attempts to comment on a Facebook page that she or he has been banned from, she or he will only be given the opportunity to share the post and not be allowed to comment under the post. Unless the non-banned users opt to look at the list of shared posts of the Facebook page's post in order to view the shared post of the banned user on the personal Facebook profile, they will not be able to see the discussion involving the banned user.

31.     A user with a Facebook page can remove the comments left by a user with a Facebook profile from being visible to the public. In order to remove the comments from being visible to the public, there are two choices: a permanent deletion of these comments or to hide these comments from view of other Facebook users.

32.     With Facebook as a social media platform, captioning can be uploaded to be accompanied with a video in order to ensure that people with a hearing disability can access the audio information in this video. Third-party captioning services can be used to embed real-time captions into a live video stream. Facebook makes it possible for posts containing audiovisual and audio content to include transcripts in order to provide communication accessibility to individuals with a hearing disability to the governmental information that is included in these formats.

## VI.   DEFENDANT WHIPPLE OPERATES AND USES WHIPPLE'S FB PAGE IN HIS CAPACITY AS THE MAYOR OF WICHITA

33.   Defendant Whipple presents Whipple's FB Page to the public as where he conducts official business of the Wichita city on the behalf of his elected office as the mayor of Wichita. His page also has an "About" section. In the "About" section, Defendant Whipple describes himself as the father of three children, a husband, a former representative of a district within Wichita, and the Mayor of Wichita.

34.   Thus, Defendant Whipple has designated Whipple's FB Page as an interactive space for the mayor office of Wichita to engage with the public. While appearing in a selfie-style format on Whipple's FB Page, Defendant Whipple live-streams himself while discussing critical health information and important political issues.

35.   As a digital town hall forum for local government and political issues, Whipple's FB Page is intended to allow the public to comment on news and information posted by Defendant Whipple and to participate in exchanges of views with other members of the public.

36.   Whipple's FB Page is generally accessible to the public at large without regard to political affiliation or any other limiting criteria. There is no limit on the happenstance of geography for Whipple's FB Page. Any Facebook user who wants to follow Whipple's FB Page can do so and this page has over 9,700 followers. Any Facebook user can also comment on posts, published on Whipple's FB Page, unless they have been banned. In other words, there are no restrictions on which members of the public can participate in this interactive space, except for having an electronic

device that is internet-enabled with an active Facebook account that is not banned from Whipple's FB Page.

37.     Between January 30, 2020 and this day, Defendant Whipple, in his official capacity as the mayor of Wichita, created and published at least hundreds of audiovisual content, that were live streamed, on Whipple's FB Page. There are no auxiliary aids and services included in any of these audiovisual content to ensure that individuals with a hearing disability are not excluded.

## VII.   THE DEFENDANTS CONTROLS WICHITA'S FB PAGE

38.     The Defendants uses other social media platforms to communicate depending on the issue or what it is trying to accomplish (i.e., Facebook, YouTube, Twitter, etc.).

39.     With this lawsuit, Plaintiff Haulmark is focusing on the audiovisual content published on this social media platform even though much of its content on other social media platforms also fails to comply with Title II of the ADA. The posts, published on Wichita's FB Page, consist of a variety of written statements, photos, videos, and other posts linking to external websites and other social media platforms.

40.     The Defendants present an official Facebook page as an interactive governmental space for their constituents, residents outside of Wichita, and individuals with political and democratic interests. Wichita's FB Page has hundreds, if not thousands, of videos dating December 2011 to present.

41.     Wichita's FB Page is generally accessible to the public without regard to affiliation with political parties or any other limiting criteria. For Wichita's FB Page, there is no geographical restriction. Facebook users can follow Wichita's FB Page,

which currently has over 39,500 followers. Facebook users can also comment on posts published on Wichita's FB Page, unless they've been banned. In other words, members of the public are not restricted from participating in this interactive space, except that they need an internet-connected device with an active Facebook account that has not been banned from Wichita's FB Page.

42.    On Wichita's FB Page, the published videos contain elected officials, including Defendant Whipple, employees, and guests of the public providing information about the city and its surrounding. The published videos contain regular public hearings of the city and recordings of its meetings. Moreover, the published videos include previews of the agenda and public statements made by the city government. Lastly, these published video cover topics such as transportation concerns, procurement contracts, tax rates, cultural activities, and other important policies and issues.

43.    Nearly all of the videos on Wichita's FB Page do not provide any communication access for Plaintiff Haulmark and other individuals with a hearing disability. There is no captioning, transcript, or sign language interpretation on these videos.

## VIII.  THE DEFENDANTS CONTROLS THEIR YOUTUBE CHANNEL

44.    The Defendants operate a YouTube Channel-- <u>City of Wichita</u>[3]-- which publicizes their official business activities. This YouTube channel has published over 2,100 videos since it was created by Defendant City of Wichita more than a decade ago.

---

[3] YouTube Channel of <u>City of Wichita</u>, https://www.youtube.com/user/wichitacity7

45.     Some of the recorded audiovisual content on this YouTube channel uses automatic machine-generated captioning, created at least a day after being streamed and published. This automated captioning service provided by YouTube is non-compliant with the ADA. Automatic machine-generated captioning does not provide effective communication for Plaintiff Haulmark and other individuals with a hearing disability, due to lack of the following: errorless accuracy, uniformity in style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and including speaker identification and non-speech audio information with clarity. Other audiovisual content on the same YouTube Channel does not include captioning or transcripts at all.

46.     YouTube's automatic captioning services are not designed and intended to be ADA compliant to provide equally effective communication for individuals with a hearing disability. Because of this, the Defendants must modify their policies, procedures, and practices to ensure the future audiovisual content is in full compliance with Title II of the ADA by using a third-party captioning service to ensure the digital information is equally effective communication accessible for Plaintiff Haulmark and other individuals with a hearing disability. With the archived audiovisual content, accurate transcripts must accompany each video to ensure that no individual with a hearing disability is excluded from benefiting from these videos.

## IX.     PLAINTIFF HAULMARK ALLEGES A PRIMA FACIE CASE OF DISCRIMINATION UNDER TITLE II OF THE ADA.

47.     In this Complaint, Plaintiff Haulmark brings to this Court the issue of being deliberately excluded from equally participating in and benefiting from the

services, programs, and activities offered by the Defendants. This lawsuit relies heavily on the amount of daily speech that occurs on social media platforms including Facebook and YouTube by, to, and about the government at the city level.

48.     At one of the first live streaming videos, being a digital town hall on Whipple's FB Page, Plaintiff Haulmark responded to Defendant Whipple as a comment to request for the ADA-required auxiliary aids and services to be able to participate in this particular interactive space as an individual with a hearing disability. Instead of taking action to bring their services, programs, and activities into full compliance with Title II of the ADA, Defendant Whipple denied Plaintiff Haulmark's request.

49.     Plaintiff Haulmark continued to request for accommodations throughout the following months after the first live streaming videos. As responses to Plaintiff Haulmark, Defendant Whipple demanded from Plaintiff Haulmark that Plaintiff Haulmark provide any and all solutions that can provide free captioning services with Defendant Whipple's live streaming videos. However, despite being experienced with information technology, Defendant Whipple's demands are no different than requiring individuals with a hearing disability to bring their own sign language interpreter.

50.     In this interactive online environment within which all can watch and hear the digital town halls, Defendant Whipple has engaged in public discrimination against Plaintiff Haulmark because of his hearing disability.

51.     Plaintiff Haulmark contacted the executive director of the Kansas Commission for the Deaf and Hard of Hearing on July 12, 2020 in response to one of Defendant Whipple's demands for a solution to include real-time captioning in his live

streaming videos. Contact has been made by email, which has been carbon copied to Defendant Whipple. The email provided background information regarding Defendant Whipple's need for resources to make his live streaming videos fully compliant with the ADA. Defendant Whipple has not responded to Plaintiff Haulmark's email or made any necessary improvements to bring the Facebook Live streaming videos into full compliance with the ADA.

52.     The president of Kansas Association for the Deaf contacted Defendant Whipple on March 15, 2021, informing him that the Deaf community did not have access to Defendant Whipple's weekly media briefings. The letter expressed frustration and concern over the Deaf community not having access to Defendant Whipple's Facebook Live streaming videos on Facebook. ASL interpreters and real-time captioning for Facebook Live streaming videos are requested in this letter, as well as transcripts of past Facebook Live videos to be produced and published. Responding to the letter, Defendant Whipple stated that Defendant Whipple agrees that the official communications should meet or exceed the standards of the ADA. Despite this, individuals with a hearing disability continue to be excluded from Defendant Whipple's Facebook Live streaming videos to this day.

53.     To put it simply, Defendant Whipple aggressively refuses to provide auxiliary aids and services for Plaintiff Haulmark and other individuals with a hearing disability to have an equally effective means of communicating with Defendant Whipple and other Facebook users on posts containing all live recorded videos on Whipple's FB Page.

54.   Over a thousand of videos published on Wichita's FB Page lack captioning or transcripts to ensure individuals with hearing a disability are not excluded from their programs, services, and activities.

55.   Wichita's FB Page regularly posts links to its other social media platforms (i.e., YouTube, Twitter, etc.) that do not provide effective communication for individuals with a hearing disability. While it has been obvious to them of the necessary to make ADA-required reasonable modifications, the Defendants fail to take affirmative actions to make sure that the audiovisual content available on Whipple's FB Page and Wichita's FB Page comply with Title II of the ADA.

56.   Additionally, Defendant Whipple rejects Plaintiff Haulmark's requests for reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of his hearing disabilities.

57.   As a Facebook user, Plaintiff Haulmark has been banned from commenting on Whipple's FB page only because he repeatedly requested, with citations to Title II of the ADA, and discussed his accommodation needs on Whipple's FB page to obtain communication access to the live streaming and published videos. Additionally, the Defendants removed Plaintiff Haulmark's comments from public view regarding these requests and discussions.

58.   Defendant Whipple has essentially banished Plaintiff Haulmark from the interactive space associated with Whipple's FB Page only because Plaintiff Haulmark is an individual with hearing disabilities. Defendant Whipple has acknowledged this fact. These actions have violated not only the ADA, but also the First Amendment to the U.S. Constitution.

59.     Because of this ban on Whipple's FB Page, Plaintiff Haulmark is hesitant to request for accommodations to be able to share his political views on Wichita's FB page, since he may be banned because of his hearing disabilities.

## X.     CAUSE OF ACTION

### Americans With Disabilities Act -- Title II
### (42 U.S.C. § 12131-12134 *et seq.*)

60.     Plaintiff Haulmark incorporates the allegations in the preceding paragraphs, as if alleged herein.

61.     To combat widespread discrimination against disabled individuals, Congress enacted a federal law in 1990 known as the ADA. The purpose of the ADA is to prohibit discrimination against disabled individuals in major aspects of public life, including employment (Title I of the Act), public services (Title II), and public accommodations (Title III).

62.     Title II of the ADA, 42 U.S.C. § 12131-12134, *et seq.*, and 28 C.F.R. § 35 guarantees equal access for qualified individuals to the benefits of the services, programs and activities of a public entity.

63.     Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

64.     In addition, a public entity may not, on the basis of disability, "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[.]" 28 C.F.R. § 35.130(b)(1)(i).

65.     In addition, a public entity may not, on the basis of disability, "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" 28 C.F.R. § 35.130(b)(1)(iii).

66.     In addition, a public entity may not, on the basis of disability, "[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" 28 C.F.R § 35.130(b)(1)(v).

67.     A public entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R § 35.130(b)(7)(i).

68.     In addition, "A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R § 35.160(a)(1).

69.     Such a public entity "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R § 35.160(b)(1).

70.     Title II of the ADA prohibits the unjustified isolation of persons with disabilities and requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

71.     Title II of the ADA "does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them." 28 C.F.R. 35.103(b).

72.     It is unlawful for any public entity to "coerce, intimidate, threaten, or interfere with" an individual on the basis of his exercise of any right granted under Title II, including the protected rights to reasonable accommodations and effective communication. 28 C.F.R § 35.134(b).

73.     This lawsuit is filed by Plaintiff Haulmark alleging that Defendants City of Wichita and Whipple violated and are repeatedly violating Title II of the ADA, 42 U.S.C. § 12131-12134 *et seq.*

74.     In order to be in full compliance with Title II of the ADA, the Defendants must take affirmative action to furnish the appropriate auxiliary aids and services where necessary to afford individuals with a hearing disability, as the members of the

public, an equal opportunity to participate in and enjoy the benefits of the published video, being available on Whipple's FB Page, Wichita's FB Page, and other social media platforms.

75.     Defendant City of Wichita is a local government; accordingly, Defendant City of Wichita constitute "public entity" as defined in 42 U.S.C. § 12131(1)(A).

76.     Defendant City of Wichita as the public entity is liable based on the actions of its Mayor, Defendant Whipple.

77.     Plaintiff Chris Haulmark is a qualified individual with a disability as that term is defined in 42 U.S.C. § 12131(2). Plaintiff Haulmark is Deaf. Plaintiff Haulmark meets the eligibility requirements for participation in the programs, services, and activities offered by City of Wichita.

78.     At all relevant times, the Defendants were aware of Plaintiff Haulmark's physical disability, namely that Plaintiff Haulmark is an individual with hearing disabilities. The Defendants had notice that an auxiliary aid was necessary for individuals with a hearing disability, including Plaintiff Haulmark, to effectively communicate and participate in the services, programs, and activities of the Defendants.

79.     Defendant Whipple acts as an individual in his official capacity in all activities with the services, programs, and activities offered by Defendant City of Wichita.

80.     The Defendants have failed and continue to fail to meet their obligations in pursuant to ADA to provide Plaintiff Haulmark with opportunities that are equal to those provided to the individuals without a hearing disability.

81.     The Defendants have excluded and continues to exclude Plaintiff Haulmark from participation in and denied and continues to deny Plaintiff Haulmark the benefits of their services, programs, or activities. The Defendants have denied and continues to deny Plaintiff Haulmark the right to exercise not just his constitutional rights to participate in the democratic process, but also to engage in the political process as equally as those without a hearing disability.

82.     The ignorance of the Defendants subjects Plaintiff Haulmark to encounter various forms of discrimination including outright intentional exclusion, segregation, communication barriers, and relegation to lesser services, programs, activities, benefits, and other opportunities offered by the Defendants.

83.     The Defendants fails to provide auxiliary aids and services to ensure equally effective communication with Plaintiff Haulmark with all due speed and fails to reasonably modify their policies, practices, and procedures as necessary to accommodate Plaintiff Haulmark.

84.     The Defendants are violating 42 U.S.C. § 12132 and its accompanying regulations by committing the following intentional discriminatory acts or practices on the basis of disability:

A.     failed to maintain policies and procedures to ensure compliance with ADA Title II, specifically policies that provide equal access and effective communication to individuals with a hearing disability;

B.     failed to ensure that communications with Plaintiff Haulmark were as effective as communications with individuals without a hearing disability and to provide auxiliary aids and services necessary for effective communication;

C.      failed to provide reasonable modifications of policies, practices, and procedures to prevent discrimination;

D.      failed to provide opportunities and information in a manner that is timely, equally effective, and equally integrated;

E.      otherwise discriminated and retaliated against Plaintiff Haulmark by excluding him from the participation in the digital town halls by refusing to provide equally accurate real-time captions and transcripts for all of the audiovisual content streamed and published on their Facebook social media platforms;

F.      refused to provide equally accurate real-time captions and transcripts for all of the audiovisual content streamed on the YouTube Channel, administered by the Defendants; and

G.      banned Plaintiff Haulmark from Whipple's FB Page for having hearing disabilities to prevent him from participating in the interactive space.

85.    In the absence of declaratory and injunctive relief, Plaintiff Haulmark has and will continue to suffer irreparable harm from the Defendants' failure to comply with the federal law.

## XI.    CLAIMS FOR RELIEF

86.    WHEREFORE, Plaintiff Chris Haulmark demands judgement against the Defendants as follows:

A.      Enter a declaratory judgement, in accordance with 28 U.S.C. § 2201:

        i.     declaring that the Defendants' actions and failures have violated and continue to repeatedly violate Title II of the ADA by subjecting Plaintiff Haulmark to discrimination;

        ii.     declaring that all official government business videos posted and shared on the Defendants' social media platforms are services, programs, and activities covered by Title II of the ADA; and

        iii.     declaring that Plaintiff Haulmark has been intentionally excluded from the Defendants' services, programs, and activities.

    B.     A mandatory preliminary and thereafter permanent injunction relief, pursuant to 28 U.S.C. § 2202, requiring the Defendants to:

        i.     to make reasonable modifications in policies, practices, or procedures, which such modifications are necessary to afford all offered services, facilities, privileges, advantages, or accommodations to Plaintiff Haulmark and other individuals with a hearing disability;

        ii.     to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff Haulmark or other individuals with a hearing disability by failing to provide effective communication to ensure that no individual with a hearing disability is excluded, denied services, segregated or otherwise treated differently than other individuals without a hearing disability because of the absence of auxiliary aids and services;

        iii.     to develop, implement, promulgate, and comply with a policy requiring the existing facilities including the, but not limited to, digital town halls, streaming and published audio and audiovisual content to be readily accessible with

accurate captioning and published transcripts provided to provide effective communication for Plaintiff Haulmark and other individuals with a hearing disability;

iv.     to develop, implement, promulgate, and comply with a policy requiring that prompt remedial measures are made to cure past violations of the Defendants' requirements to produce and publish the accurate transcripts to provide effective communication for all of the archived and future audiovisual and audio content published on the social media platforms that are administered by the Defendants;

v.     to develop, implement, promulgate, and comply with a policy requiring that prompt remedial measures are made to cure past violations of the Defendants' requirements to produce and publish with the accurate captioning to provide effective communication to Plaintiff Haulmark and individuals with a hearing disability for all of the archived and future videos on the YouTube Channel or any other video hosting platforms administered by the Defendants;

vi.     to develop, implement, promulgate, and comply with a policy to ensure that the Defendants will notify individuals with a hearing disability of their right to effective communication. This notification will include posting explicit and clearly worded notices that the Defendants will provide sign language interpreters, transcripts, captioning services, and other services to ensure effective communication with individuals with a hearing disability to participate in Defendants' services, programs, and activities;

vii.     to develop, implement, promulgate, and comply with a policy to ensure that the Defendants will provide training for all of their employees, staffs,

and other agents on a regular basis about the rights of the individuals with a hearing disability under the ADA;

        viii.  to enjoin the Defendants from banning Plaintiff Haulmark from all of Defendants' social media platforms; and

        ix.  to enjoin the Defendants from deleting any further comments made by Plaintiff Haulmark on all of Defendants' social media platforms on issues including violations of the anti-discrimination law and public concern.

87.    Retain jurisdiction over this action to ensure the Defendants' full compliance with the mandates of the ADA;

88.    An award of Plaintiff Haulmark's compensatory damages, not expected to exceed more than $25,000 depending on findings of the evidence;

89.    An award of attorney fees and costs if counsel has ever been retained by Plaintiff Haulmark during the duration of this action;

90.    An award of reasonable expenses of court to Plaintiff Haulmark; and

91.    Such other further relief as deemed just and proper.

## V.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

---------------------------------------------------------------

DESIGNATION OF PLACE OF TRIAL

Plaintiff Haulmark designates Wichita, Kansas as the location for the trial in this matter.

Respectfully submitted this 27th day of July 2021

/s/ChrisHaulmark
PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981