# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **CITY OF WICHITA**, | ) |
| and | ) Civil Action No.  21-1182-EFM-TJJ |
| **BRANDON WHIPPLE**, in his official | ) |
| capacity as the Mayor of the | ) |
| City of Wichita, | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT WHIPPLE AND BRIEF IN SUPPORT

As a *pro se* litigant, Plaintiff Chris Haulmark moves this Court under Rule 37(a) of the Federal Rules of Civil Procedure for an order compelling Defendant Brandon Whipple to fully produce all documents responsive to Plaintiff Haulmark's First Set of Requests for Production of Documents that are in his possession, custody, or control. In support of this Motion, Plaintiff Haulmark submits the following statements and the requested legal authorities:

### BRIEF IN SUPPORT

### I.    INTRODUCTION

1.    The first federal laws prohibiting discrimination against people with disabilities were enacted several decades ago. However, people with disabilities still experience blatant discrimination on a regular basis. An example is this case.

2.    Plaintiff Haulmark has repeatedly requested that Defendants-- City of Wichita and Brandon Whipple-- to take affirmatively-required steps to prohibit discrimination against

him and other individuals with a hearing disability by making reasonable modifications to their policies, practices, and procedures so that Plaintiff Haulmark could take part in and benefit from Defendant Whipple's weekly briefings via Facebook Live streaming videos that are offered to the public on Defendant Whipple's Facebook page[1] (Hereinafter "Whipple's Facebook page"). After his requests were denied by Defendant Whipple, Plaintiff Haulmark has been barred from participating in this public forum because he posted comments on Whipple's Facebook page about Title II of the ADA requirements and Defendant Whipple's violations of the same federal anti-discrimination law.

3. The Complaint in the above captioned matter was filed on July 27, 2021 to seek damages, including compensatory damages, equitable relief, including declaratory and injunctive relief, award of attorney fees if counsel is ever retained by Plaintiff Haulmark, and expenses of court against the named Defendants, alleging ongoing and repeating violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA" or "Title II") (See Haulmark's Complaint) (Docket No. 1)

4. On September 2, 2021, the two Defendants-- City of Wichita and Brandon Whipple-- filed their separate unverified answers to Plaintiff Haulmark's Complaint. (See Docket No. 7; hereinafter "Wichita's Answer") (Docket No. 8; hereinafter "Whipple's Answer")

5. During the period between September 21, 2021 and October 20, 2021, Plaintiff Haulmark and Defendants conferred then submitted a proposed scheduling order. This scheduling order has been issued by this Court on December 10, 2021. (See Docket No. 17)

6. Plaintiff Haulmark submitted the First Set of Requests for Production of Documents to both Defendants on October 13, 2021. (See Docket No. 11 and Exhibit #1; hereinafter "Haulmark's Requests").

---

[1] Facebook Page of Defendant <u>Brandon Whipple</u>, https://www.facebook.com/VoteWhipple

7.     On November 12, 2021, Defendants Whipple and City of Wichita each separately requested an extension of time to respond to Haulmark's Requests. Defendant Whipple requested an extension of the deadline to and including November 22, 2021 as seven extra days. Defendant City of Wichita requested a twenty-day extension until and including December 2, 2021. Both Defendants' requests for time extensions were unopposed by Plaintiff Haulmark. (See Docket No. 14 and 15)

8.     On November 22, 2021, Plaintiff Haulmark received response from Defendant Whipple objecting to nearly every reasonable request in Haulmark's Requests. (See Exhibit #2; hereinafter "Whipple's Response")

9.     Defendant Whipple argues with a general objection that "[t]he provisions of the ADA are not applicable to Brandon Whipple's campaign page as Mayor of the City of Wichita."

10.     It is unclear why Defendant Whipple asked for seven extra days over the standard thirty for him to prepare his simplistic reply, objecting to providing any requested documents regarding Whipple's Facebook page.

11.     Defendant City of Wichita has provided a response to Plaintiff Haulmark's Requests on December 2, 2021.  This response appears to be uncomplete.

12.     On December 16, 2021, a Zoom video conference was held for both parties by this Court. Plaintiff Haulmark's deadline to file a motion to compel was extended to January 14, 2022, as a result of this meeting. The January 18, 2022 order extends the deadline until February 4, 2022 in response to Plaintiff Haulmark's Motion for Extension of Time to file the Motion to Compel filed on January 14, 2022. Both sides were ordered to further confer in good faith before filing any motions to compel.

13.     Both parties made reasonable efforts to reach an agreement between December 20, 2021 and February 4, 2022. There has been no resolution to this disagreement and this motion to compel must be filed.

## II.     THE REQUESTS FOR PRODUCTION AT ISSUE

14.     Federal Rule of Civil Procedure 26(b)(1) states: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

15.     Plaintiff Haulmark must conduct a discovery process to gather the necessary admissible evidence before attempting to establish that the published Facebook Live videos within a public forum located on Whipple's Facebook page contain public entity output. In turn, to demonstrate that Defendant City of Wichita intentionally excludes Plaintiff Haulmark from participating in services, programs, and activities it offers on Whipple's Facebook page. Furthermore, Plaintiff Haulmark intends to present the obtained admissible evidence to establish that Defendant Whipple has engaged in a pattern of discrimination against Plaintiff Haulmark on the basis of his disability while depriving Plaintiff Haulmark of his constitutional rights to participate in the public forum on Whipple's Facebook page.

16.     A declaratory relief claim relating to online videos published on social media platforms is requested in the Complaint filed by Plaintiff Haulmark. (See ¶ 86(A)(ii) in

Haulmark's Complaint) Plaintiff Haulmark must obtain admissible evidence regarding Whipple's Facebook page to support his claim for this declaratory relief.

17.    The defenses Defendants City of Wichita and Whipple may assert that the online videos on Whipple's Facebook page do not constitute services, programs, or activities provided by the City of Wichita, claiming that Whipple's Facebook page does not reflect the mayor's role in the City of Wichita and does not constitute a public forum. (See ¶ 2 in Whipple's Response) ("None of the actions taken as to this site are in his official capacity as Mayor."); (See ¶ 2 in Wichita's Response) ("Defendant City denies that a public forum existed because Defendant Whipple's actions in posting Facebook Live videos and typed comments to his personal campaign Facebook page were as a private individual, not in his official capacity as mayor of Defendant City.") Due to these possible defenses, Rule 26(b)(1) makes all requests about Whipple's Facebook page in Haulmark's Requests relevant in this lawsuit.

18.    Plaintiff Haulmark believes this discovery is necessary to uncover discoverable matter leading to admissible evidence to demonstrate that the City of Wichita violates the ADA with its mayor's government activities and speech on his private Facebook page being inaccessible to individuals with a hearing disability. Plaintiff Haulmark understands that this motion is not the appropriate opportunity to obtain Court's ruling on the merits of his case.

19.    Plaintiff Haulmark cannot bring a claim concurrently under Title II and through an action under 42 U.S.C. § 1983 (Hereinafter "Section 1983") because there is "an intent by Congress to foreclose remedies under § 1983 where the [Title II] itself provides a comprehensive remedial scheme which leaves no room for additional private remedies under § 1983." *Suter v. Artist M*, 503 U.S. 347, at 361 n.11 (1992).

20.   Plaintiff Haulmark is seeking to determine if Defendant Whipple has ever engaged in, encouraged, or advocated discrimination against Plaintiff Haulmark when Defendant Whipple took actions to deprive Plaintiff Haulmark of his constitutional rights on Whipple's Facebook page. During the discovery process, Plaintiff Haulmark must establish whether the reason for Plaintiff Haulmark's disability, a required element of a Title II violation, is a factor in Defendant Whipple's unconstitutional actions against Plaintiff Haulmark. In this case, the ADA's remedial statute would apply in full force if Plaintiff Haulmark proves that Whipple's removal of his comments, removal of his participation in, and removal of his access to the public forum on Whipple's Facebook page was due in part to his hearing disability.

21.   If Plaintiff Haulmark's disability was not the reason while his constitutional rights were deprived by Defendant Whipple on Whipple's Facebook page, Title II would not apply. As a result of the missing element of Title II, Plaintiff Haulmark will move for leave to file an amended complaint to include a second set of claims to be brought under Section 1983 against Defendant Whipple in his individual capacity. The amendment of the original complaint would include any of the three claims of Section 1983 violations: 1) Plaintiff Haulmark's comments were removed from public view, 2) Plaintiff Haulmark is barred from participating in that public forum, and 3) Plaintiff Haulmark is blocked from observing that public forum.

22.   With this Motion to Compel, Plaintiff Haulmark is moving for this Court to compel Defendant Whipple to fully respond to:

**Request No. 8**

23.     This request is to obtain identification of who is responsible for publishing online videos on Whipple's Facebook page to show that Defendant Whipple has full control of his Facebook page, including the ability to post videos and add captions. As well as showing who is responsible for blocking Plaintiff Haulmark from this Facebook page and removing Plaintiff Haulmark's comments.

## Request No. 12

24.     Defendant Haulmark is requesting a copy of Whipple's Facebook page information[2] for Plaintiff Haulmark to review all of the comments and reactions, the structure of the Facebook page, and the activity log of who published videos and removed comments. In his lawsuit, Plaintiff Haulmark intends to obtain and show specific comments from either Defendant Whipple or members of the public to demonstrate the extent to which Plaintiff Haulmark has been subjected to public hatred, contempt, and ridicule based on his hearing disability.

## Request No. 13

25.     Plaintiff Haulmark is requesting to obtain a list of all banned people and pages on Whipple's Facebook page so he can prove that he has been banned and when. Also, he wants to review the list to find out if any of these banned individuals or organizations believe they have been discriminated against or retaliated against for defending these individuals who were banned because of their disability.

## Request No. 14

26.     As the Request No. 14 in Haulmark's Requests, Plaintiff Haulmark requests for copy of public videos, hidden videos, and deleted videos, as well as descriptions and transcripts of these videos to be prepared for judicial review. The purpose of the request is to identify and

---

[2] How can I download a copy of my Facebook Page?, https://www.facebook.com/help/466076673571942

obtain admissible evidence of government activities and speech being conducted on Whipple's Facebook page.

27.     This request is limited to only live streaming videos without available captions or other auxiliary aids.  Other videos posted on Whipple's Facebook page with available captioning will be transcribed by Plaintiff Haulmark to be presented in court to support his claims.

28.     To make available all the live-streamed videos on Whipple's Facebook page for review, selection, and presentation by a Deaf pro se litigant to obtain judicial review in this Court, the audio portion must be translated into a reasonably usable form that is in a visual form for Plaintiff Haulmark, which is to be transcribed. See Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

29.     Using these transcripts produced by Defendant Whipple, Plaintiff Haulmark will identify and present the portions of the audio information that are the government's speech contained in Facebook Live videos posted on Whipple's Facebook. This is so he can use to show that a public forum exists on Whipple's Facebook page to support his claims.

30.     While limited by his hearing disability, Plaintiff Haulmark will not have a way of determining the accuracy of the verbatim in any transcripts produced by any method he chooses if the transcripts will not be produced by Defendant Whipple. In this regard, it is highly likely that Plaintiff Haulmark will be required to defend the authenticity of the audio information presented in the transcripts against the Defendants' challenges.

31.     These video copies can be easily obtained at once when the personal Facebook profile as the owner of the Facebook Page can download the data from Facebook. However, suggestions to download directly from the Facebook page are not viable solutions due to the

time and resources needed to download one video at a time rather than downloading the Facebook page as a single archived file.

### Request No. 15

32.    Plaintiff Haulmark is requesting a copy of all comments Plaintiff Haulmark posted under Whipple's Facebook posts and videos. It is intended to show that Plaintiff Haulmark requested communication access to Facebook live videos from the mayor of Wichita. As well, Defendant Whipple asserts with a defense that Plaintiff Haulmark has been banned "because [Haulmark] was organizing people from outside of Wichita to take over the community discussion and was abusive to participants, including the Mayor."  This request may be duplicative of Request No.12.

### Request No. 16

33.    Plaintiff Haulmark is requesting for identification and any communication from the mayor acting for or on behalf of City Wichita containing or related to certain keywords that might indicate egregious discrimination, stigmatic injury, or harmful stereotypes affecting Plaintiff Haulmark and other individuals with a hearing disability.

### Request No. 17

34.    Plaintiff Haulmark is requesting for any communication between Whipple's Facebook page and any persons containing or related to certain keywords that might indicate egregious discrimination, stigmatic injury, or harmful stereotypes affecting Plaintiff Haulmark and other individuals with a hearing disability.

### Request No. 18

35.    Plaintiff Haulmark is requesting for any communication between Defendant Whipple and any person involving or containing certain keywords that might indicate

egregious discrimination, stigmatic injury, or harmful stereotypes affecting Plaintiff Haulmark and other individuals with a hearing disability. This request would include communication between his personal Facebook account, his Facebook page, email accounts for his campaign, email accounts for his personal use, texts, instant messages, and any other means of communication with anyone else using internet-connected devices.

## **Request No. 21**

36.     Plaintiff Haulmark is requesting for documentation to show the Transparency Section of Whipple's Facebook page. This section will show who manages this page, but it also was supposed to show the "Public Official" badge this page displays. Instead, the badge has been replaced with a "Politician" badge sometimes after the Haulmark's Requests was submitted to the Defendants.

## **Request No. 22**

37.     Plaintiff Haulmark is requesting any documentation and communication to evidently show how and why Plaintiff Haulmark was banned from Whipple's Facebook page. Defendant Whipple alleges that Plaintiff Haulmark was banned "because he was organizing people from outside of Wichita to take over the community discussion and was abusive to participants, including the Mayor." The burden of proof rests with Defendant Whipple to prove this.

## **Request No. 23**

38.     Plaintiff Haulmark is requesting documentation and communication showing how Whipple's Facebook page qualified for the "Public Official" category. It is not possible for any Facebook page to obtain the "Public Official" status without going through the verification stage required by Facebook. Facebook does this to ensure that the public is not misled by a

deceitful Facebook page. Typically, Facebook send emails with information and confirmation about the changes made to the Facebook page.  These are what Plaintiff Haulmark is seeking to prove that Whipple's Facebook page obtained the "Public Official" badge to be displayed to the public.

### Request No. 24

39.     Plaintiff Haulmark is requesting documentation and communication showing the changes being made to Whipple's Facebook page. Facebook usually sends emails confirming the changes made to a Facebook page. This request includes any communication that discusses about the changes made to Whipple's Facebook page.

**The summary of these requests.**

40.     It is likely that Defendant Whipple's objection of responding to the Haulmark's Requests may be repeated in bad faith when Plaintiff Haulmark continues to use other discovery tools available in this process to collect additional admissible evidence from the Defendants pertaining to his Facebook page.  By issuing this order, this Court will prevent the Defendants from thwarting Plaintiff Haulmark's efforts in forthcoming discovery related to Whipple's Facebook page.

41.     To obtain additional admissible evidence, Plaintiff Haulmark intends to obtain and show written interrogatories, depositions, and admissions. As the first step in this discovery process, the set of Haulmark's Requests is going to help point Plaintiff Haulmark into the right direction to obtain the additional admissible evidence to show how the Defendants violated and continue to violate Title II of the ADA. Any violations of Section 1983 will be considered if they are not precluded by Title II.

### III.    PLAINTIFF HAULMARK HAS A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THE MERITS RELATED TO WHIPPLE'S FACEBOOK PAGE

**The standards of Title II of the ADA.**

42. The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2)

43. Title II of the ADA commands that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

44. The elements of Plaintiff Haulmark's ADA claims are: 1) Plaintiff Haulmark is a qualified individual with a disability, 2) Plaintiff Haulmark has been excluded from participation in or denied the benefits of the City of Wichita's services, programs, and activities, and was otherwise discriminated against by the City of Wichita, and 3) that such exclusion, denied the benefits of, or discrimination was by reason of Plaintiff Haulmark's disability. *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) ("There are two types of claims under [Title II]: (1) exclusion from or denial of benefits and (2) discrimination.")

45. The United States Supreme Court has held that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, at 165-66 (1985)

46. In this lawsuit, Plaintiff Haulmark is suing a public entity, the City of Wichita. Although Plaintiff Haulmark has filed a lawsuit against Defendant Whipple in his official

capacity, his lawsuit is not directly against a private individual but rather against the municipality the official represents. See *Wirtz v. Regalado*, Case No. 18-CV-0599-GKF-FHM, at 10 (N.D. Okla. Mar. 2, 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, at 1328 (10th Cir. 2010))

47.     As the general objection in Whipple's Response, the dispute centers on whether the online videos on his Facebook page, containing government activities and speech, qualify as services, programs, or activities under Title II of the ADA. Also, a controversy exists regarding whether Defendant Whipple is acting on his Facebook page as the mayor or as a private individual. Defendant Whipple raises these arguments as defenses in his Answer to Plaintiff Haulmark's Complaint.  (See ¶ 2 in Whipple's Answer) ("None of the actions taken as to [Mayor's Facebook campaign page] are in his official capacity as Mayor."). Defendant City of Wichita also argues with the same defense in its Answer. (See ¶ 2 in Wichita's Answer)

48.     Both Defendants misunderstand the provisions of the services, programs, and activities as the first clause and subjecting individuals with disabilities to discrimination as the second clause of Title II of the ADA in relation to Whipple's Facebook page. In the matter of the second clause of Title II, both of the Defendants present an implausible theory that Defendant Whipple may switch between being a government actor and a private individual when communicating with the general public on his Facebook page during the duration of his term as mayor of the City of Wichita. Using the same theory, they are permitting discrimination against individuals with a hearing disability when they could easily take steps to prohibit it.

49.     There is no safe harbor provision as an element in Title II allowing the City to offer its services, programs, or activities anywhere to perpetuate discrimination against

individuals with a hearing disability. Title II does not provide any exceptions for the manner in which locations are determined. Title II merely covers everything that a public entity does, regardless of where its services, programs, or activities are located. See *Bay Area Addiction Research v. City of Antioch*, 179 F.3d 725, at 731 (9th Cir. 1999) (Explaining about this "sweeping language" of the Congress "strongly suggests that [Title II] should not be construed to allow the creation of spheres in which public entities may discriminate on the basis of an individual's disability.")

50.     Among the primary characteristics of his Facebook page, Defendant Whipple introduces himself as Mayor of Wichita and it is evident that he has been identified as a public official as Mayor of Wichita. Since his Facebook page has these two critical characteristics, the mayor does not metaphorically remove his badge to appear as a private individual when he meets with the public.

51.     Due to the City's mayor moving his briefings, a public service of the city, onto a private Facebook page, both Defendants are aware that Plaintiff Haulmark and others with disabilities are subjected to discrimination, and they chose not to take steps to prohibit it as required by law. See *Tennessee v. Lane*, 541 U.S. 509, at 549 (2004) ("The ADA's findings make clear that Congress believed it was attacking discrimination in all areas of public services, as well as the discriminatory effects of architectural, transportation, and *communication barriers*. In sum, Title II requires, on pain of money damages, special accommodations for disabled persons in virtually every interaction they have with the [public entity].") (Internal quotation marks omitted) (Emphasis added) (Citing 42 U.S.C § 12101 (a)(3) and (a)(5); (a) "Congress finds that" (3) "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation,

*communication*, recreation, institutionalization, health services, voting, and access to public services" and (5) "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and *communication barriers*, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.") (Emphasis added)

52.     Defendant Whipple's private Facebook page is, *inter alia*, a communication barrier established by Defendant City of Wichita to separate the public forum and interactive space, containing government activities and speech, from the protections of Title II, so that while conducting his official duties there, the mayor is attempting to avoid meeting with the requirements of Title II of the ADA.

**Here are the current undisputed facts shown in Plaintiff Haulmark's Complaint and the Defendants' Answers.**

53.     Plaintiff Haulmark is Deaf[3], a qualified individual with a disability under the ADA. (See ¶¶ 4, 77 in Haulmark's Complaint; ¶ 4 in Haulmark's Affidavit (Docket No. 1-1); ¶¶ 8, 29 in Wichita's Answer)

54.     Plaintiff Haulmark is a qualified member of the public to participate in the services, programs, and activities offered by the Defendants. ( See ¶ 77 in Haulmark's Complaint; ¶ 29 in Wichita's Answer)

---

[3]This label is contrary to the term "hearing impaired" which is generally applied in a demeaning tone to obliterate the personal history, background, cultural abundance, and visual language of this particular member of the Deaf community. The Kansas Legislature has accepted this by lawfully legislating the name change from Kansas Commission for the Deaf and Hearing Impaired to Kansas Commission for the Deaf and Hard of Hearing. K.S.A. § 75-5397b (1992).

55.     Defendant City of Wichita is a public entity. (See ¶ 75 in Haulmark's Complaint; Neither Defendant disputes, but concedes)

56.     Defendant Whipple is the mayor of the City of Wichita. (See ¶ 11 in Haulmark's Complaint; See ¶ 8 in Wichita's Answer; See ¶ 8 in Whipple's Answer as an incomplete sentence that does not deny)

57.     Both Defendants admit that Whipple's Facebook page exists. (See ¶ 2 in Wichita's Answer and Whipple's Answer; See ¶ 1 in Whipple's Response)

58.     Both Defendants admit that Defendant Whipple has full control over his Facebook page. (See ¶ 1 in Haulmark's Complaint; ¶ 2 in Wichita's Answer and Whipple's Answer; See ¶ 1 in Whipple's Response)

59.     Both Defendants admit that Defendant Whipple streams his live videos on his Facebook page. (See ¶ 2 in Wichita's Answer; ¶ 3 in Whipple's Answer)

60.     Defendant City of Wichita demands Plaintiff Haulmark to conduct discovery to obtain the required strict proof to support his ADA claims related to Whipple's Facebook page and his interaction with Defendant Whipple. (See ¶¶ 3, 5 in Wichita's Answer)

61.     Defendant Whipple admits that captioning, transcripts, or any other auxiliary aids or services do not exist for his Facebook Live videos publicly available on his Facebook page.  (See ¶ 19 in Haulmark's Complaint; See ¶ 3 in Whipple's Answer)

62.     Defendant Whipple admits of Plaintiff Haulmark's engagement with him, Plaintiff Haulmark's ADA requests, and Plaintiff Haulmark's repeated discussion of ADA requirements. (See ¶¶ 2, 3 in Haulmark's Complaint; ¶ 4 in Whipple's Answer)

63.     Defendant Whipple admits that Plaintiff Haulmark is banned from Whipple's Facebook page. (See ¶ 5 in Whipple's Answer)

64.     Defendant Whipple admits that he does not know if the ADA applies to his Facebook Live videos, but he nonetheless knew with a strong likelihood that pursuit of the questioned procedures, practices, and policies will likely result in violation of Plaintiff Haulmark's federally protected rights. (See ¶ 4 in Whipple's Answer)

65.     In spite of knowing that individuals with a hearing disability are unable to attend, participate in, and benefit from the City's public meetings, Defendant Whipple continues to use his Facebook page for his weekly public meetings, thus failing to prohibit discrimination against the individuals with a hearing disability as required by Title II of the ADA. (See ¶ 6 in Whipple's Answer)

**The Defendant City of Wichita provides a public forum on Whipple's Facebook page to the public as services, programs, or activities under Title II of the ADA**

66.     Some aspects of Whipple's Facebook page resembles a public forum where Defendant Whipple meets and interacts with the public to share the announcements, responses by the city, share critical health updates, and discuss important city business; a normal function of serving as a mayor of a city government. *JL ex rel. Thompson v. New Mexico Department of Health*, 165 F. Supp. 3d 1048, at 1074-75 (D.N.M. 2016) ("The focus of the inquiry into whether a particular public function constitutes a service, program, or activity within the meaning to Title II is not so much on whether a particular public function can technically be characterized as a service, program, or activity but whether it is a normal function of a governmental entity.") (Internal quotation marks and citations omitted)

67.     In accordance with Section 1983, members of the public have sued public officials across the country for government actions depriving constitutional rights on social media platforms they used for personal use or for campaigning. These public officials controlled these private accounts on which their governmental activities and speech took place. These courts

conducted necessary judicial review in many of those cases to determine that the public officials' social media posts themselves sometimes constitute government speech within public forums. See, e.g., *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) (Knight II)  (Emphasizing that President Trump used his Twitter account as a channel for communicating and interacting with the public about his administration and to announce matters related to official government business); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) (Analyzing the Facebook page by looking at title of the social-media page, the page's categorization on Facebook, the contact information listed on the page, and the content of the page's posts to determine whether a ban or block constituted governmental action in pursuant to Section 1983); *Davison v. Loudoun Cnty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 723 (E.D. Va. 2017) (In *Davison v. Randall*, the "Defendant maintains that she is permitted to administer this Facebook page as a purely personal page, whereas Plaintiff correctly contends that he enjoys a First Amendment right to its use."); *Buentello v. Boebert, Civil Action No. 1:21-cv-00147-DDD* (D. Colo. Jun. 24, 2021) (Regarding a federal legislator's use of a personal Twitter account)

68.     As can be seen in these cases, Whipple's Facebook page would be immediately relevant to discovery if Plaintiff Haulmark brought at least a claim of constitutional violation pursuant to Section 1983 against Defendant Whipple regarding government actions that prevent Plaintiff Haulmark from enjoying First Amendment activities on Whipple's Facebook page. As with Section 1983, Title II applies to private accounts on social media platforms wherever a public forum exists. There are several key differences between enforcement actions brought under Section 1983 and those brought under the ADA. While Section 1983 deals with the deprivation of constitutional rights, the first clause of Title II deals with the failure to take

affirmative steps to ensure that individuals with disabilities are not excluded from programs, services, and activities offered by a public entity. See *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, at 575 (2002) (Unlike demands brought under Section 1983, "neither a policymaker, nor an official policy must be identified for claims asserted under the ADA" against a municipality.); See also *Hamer v. City of Trinidad*, 924 F.3d 1093, at 1104–05 (10th Cir. 2019) ("Title II therefore imposes an affirmative obligation to accommodate persons with disabilities.") (Quoting *Tennessee v. Lane* at 533) (Internal quotation marks omitted)

69.     As alleged in Haulmark's Complaint, Defendant Whipple has established a public forum on his Facebook page on behalf of the City of Wichita. (See ¶ 1 in Complaint)  In *Swanson v. Griffin* at 6-7, a sister district court explained in depth how a public forum can be created and exist on a private account of a social media platform. *Civ. No. 20-496 KG/GJF* (D.N.M. Mar. 11, 2021) ("[O]pening an instrumentality of communication for indiscriminate use by the general public creates a public forum. Applying these general principles to whether a public official's social media account constitutes a public forum, courts examine how the official describes and uses the account; to whom features of the account are made available; and how others, including government officials and agencies, regard and treat the account.") (Internal quotation marks and citations omitted)

70.     As a governmental actor, Defendant Whipple "created a public forum" with his Facebook page because he "intentionally" used his Facebook page "for public discussion" and "upon assuming office, repeatedly used [his Facebook page] as an official vehicle for governance and made its interactive features accessible to the public without limitation." *Knight First Amend. Inst. at Columbia Univ. v. Trump (Knight)*, 928 F.3d 226, at 234 (2d Cir. 2019) (Knight II), *cert. granted, judgment vacated as moot sub nom. Biden v. Knight First*

*Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021) (Knight III) (Holding president's private Twitter account was actually used as a presidential account and therefore blocking citizens from that account violated First Amendment)

71.     In short, these Section 1983 related cases and many more across the country support the proposition that elected public officials, including Defendant Whipple, present government speech within public forums and interactive spaces on their own private accounts of the social media platforms. While there are two components of the effective communication regulations of Title II, these regulations commands that "a public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others" and the same "public entity must furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." See 28 C.F.R.§ 35.160(a)(1)-(b)(1).

72.     Furthermore, the Department of Justice has taken an expansive view of Title II, concluding that Title II "applies to all services, programs, and activities provided or made available by public entities." See 28 C.F.R.§ 35.102(a).

73.     Consequently, "courts broadly construe Title II as covering a variety of community services and programs." See *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181, at 1183 (D. Colo. 1998) (collecting cases); *accord Hason v. Med. Bd. of California*, 279 F.3d 1167, at 1172 (9th Cir. 2002) ("Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose"). See also *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) (finding that "the phrase `services, programs, or activities'

encompasses virtually everything that a public entity does"); See also *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, at 45 (2d Cir. 1997) (Reasoning that the phrase "programs, services, or activities" is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context, and that should avoid the very type of hair-splitting arguments the [City of Wichita may attempt to make.]"), *superseded on other grounds, Zervos v. Verizon New York, Inc.*, 252 F.3d 163, at n. 7 (2d Cir. 2001).

74.     As the mayor of Wichita, Defendant Whipple is conducting a normal function of a municipality on his private Facebook page, where the public is invited to take part and benefit from.  Through his private Facebook page, functioning as a communication barrier, Defendant City of Wichita's mayor distributes government speech that is publicly available as the output of a public entity. Under Title II of the ADA, the public entity, in this case the office of the mayor with the City of Wichita, must communicate effectively with individuals with a hearing disability.

75.     Public entities, with their officials providing public briefings, are required by Title II to ensure that communication with individuals with hearing disabilities is as effective as communication with others. The head of a public entity cannot simply dismiss concerns that his briefings are inaccessible to individuals with a hearing disability. See *Martinez v. Cuomo*, 459 F. Supp. 3d 517 at n. 7 (S.D.N.Y. 2020) ("[Governor Cuomo's] position in this litigation comes down to his view that the law does not require it; he has done other things to accommodate the deaf, and therefore, he will not provide in-frame ASL interpretation. That dismissive attitude towards this segment of his constituency – beyond being unkind – runs counter to the law of the land as articulated in the [Americans with Disabilities Act] and [Rehabilitation Act].")

76.     In *Yelapi v. DeSantis*, the court discusses how Title II of the ADA does not hold the Florida governor liable for an injury that was not his fault and he is unable to remedy. 487 F. Supp. 3d 1278, at 1283 (N.D. Fla. 2020) Unlike *Yelapi*, Defendant Whipple is legislatively authorized to enforce all of the laws including the ADA and other anti-discrimination laws on his own using the City's resources. See K.S.A. § 12-10a06. Injuries caused by the failure to act on ADA modification requests and the failure to furnish those requested necessary auxiliary aids and services are and will be traced to Defendant Whipple in his official capacity as the mayor for City of Wichita. See *BPS v. Bd. of Trs. for Colo. Sch. for the Deaf, Civil Action No. 12-cv-02664-RM-KLM*, 22 (D. Colo. Sep. 16, 2015) ("The Supreme Court has explained that an appropriate person is an official of the recipient entity who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf.") (Internal quotation marks omitted) (Citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, at 290 (1998))

77.     According to other circuits that have examined the question, a municipality is vicariously liable for the actions of employees who violate Title II of the ADA, even if the Tenth Circuit has not explicitly addressed this issue. See *Rosen v. Montgomery Cnty.*, 121 F.3d 154, at 157 n.3 (4th Cir. 1997) ("Under the ADA and similar statutes, liability may be imposed on a principal for the statutory violations of its agent."); See also *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, at 574-75 (5th Cir. 2002) ("when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA."); See also *DeVito v. Chicago Park Dist.*, 83 F.3d 878, at 881 (7th Cir. 1996) ("the ADA imposes respondeat superior liability on an employer for the acts of its agents"); See also *Duvall v. Cnty. of Kitsap*, 260 F.3d

1124, at 1141 (9th Cir. 2001) ("When a plaintiff brings a direct suit under . . . Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees."); See also *Mason v. Stallings*, 82 F.3d 1007, at 1009 (11th Cir. 1996) ("the 'agent' language was included [in the ADA] to ensure respondeat superior liability of the employer for the acts of its agents"); See also *Guynup v. Lancaster Cnty.*, No. 06-4315, 2008 WL 4771852, at 2 (E.D. Pa. Oct. 29, 2008) ("Title II of the ADA . . . provide[s] for vicarious liability . . . ."); See also *Cardona Roman v. Univ. of P.R.*, No. 10-CV-1363(DRD), 2011 WL 3204837, at 5 (D.P.R. July 27, 2011) ("the ADA does not provide for individual liability, but only for employer liability").

78.     The Tenth Circuit interpreted the services, programs, and activities of Title II of the ADA to mean including "all the outputs the public entity provides to the public it serves[.]" *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla*, 693 F.3d 1303, at 1307 (10th Cir. 2012); See also *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155 at 1164-1168 (D. Colo. 2020) (Explaining the areas to which Title II has been extended, along with a description of how the Title II's statutory language, DOJ's regulations, and decisions of Supreme Court, Tenth Circuit, and other courts are applied to make certain that the courts do not read services, programs, or activities so narrowly.)

79.     The City of Wichita has been aware that its mayor was conducting at least a normal mayor duty in a location, being inaccessible for individuals with hearing disabilities, and failed to take the required steps to ensure the communication with Plaintiff Haulmark and other individuals with a hearing disability are as effective as with others without a hearing disability. Plaintiff Haulmark seeks to compel the City of Wichita to make reasonable modifications to ensure accessibility of the mayor's public briefings, either through providing

effective communication accommodation as requested or by making the necessary modifications such as moving Defendant Whipple's briefings to its own official Mayor Facebook page.

**Here is limited evidence available at this time of how Defendant Whipple conducts the normal functions of a city government as the mayor on his Facebook page**

80.     Whipple's Facebook page has a live video from March 12, 2020 calling for the public to tune into his private Facebook page for updates. (See Exhibit #3) Whipple's Facebook page does not include any auxiliary aids or services, whereas the official City of Wichita's Facebook page contains a transcript of what is said. After that day, Defendant Whipple does not replicate for each of his Live videos on the official City of Wichita website or the official Facebook pages for the city or its mayor, thereby leaving the individuals with a hearing disability at a disadvantage, in violation of Title II.

81.     On March 18, 2020 at 3 PM, Defendant Whipple broadcast his first Facebook Live video from inside his residence with the title, "Working from home out of an abundance of caution." (See Exhibit #4) Following his first Facebook Live video from inside his residence on the same day while identifying himself as Mayor Brandon Whipple, he posted a pre-recorded video with embedded captioning at 5:18 PM with the text description of the video containing, "I will continue my duties as Mayor thanks to technology. I will continue to provide you with the latest information and video updates." (See Exhibit #5)

82.     A stay in order was issued by Sedgwick County Commissioners on March 24, 2020, directing individuals, residing in Sedgwick County, to stay home and leave their residence only for listed essential activities starting on March 25, 2020. (See Exhibit #6)

83.     On March 24, 2020, Defendant Whipple provided a response via Facebook Live streaming video and comments on his Facebook page to questions asked by the public about

the City of Wichita's response to COVID-19 and the decision of the Sedgwick County

Commissioners to issue stay in order. (See Exhibit #7)

84.     During this stay-at-home order and the COVID-19 pandemic, Defendant Whipple

has made his Facebook page available to the public for the purpose of communicating about

the City of Wichita's policies, programs, and actions while working from home as the mayor. It

is possible to review the titles of many of these Facebook videos, which he posts on his private

Facebook page, to see how he conducts governmental activity when speaking for the City of

Wichita as the mayor. (See Exhibit #8)

85.     During his mayoral term, Defendant Whipple presented his Facebook page to the

public with the badge of "Public Official" on his Facebook Page that identifies him as "Wichita

Mayor, KS". This screenshot was taken on July 27, 2021, the same day when the Complaint

was filed, to illustrate how his Facebook page appeared to the public. (See Exhibit #9)

86.     On July 28, 2021, the day after Plaintiff Haulmark filed this lawsuit, Defendant

Whipple was still using this public official badge on his Facebook page. (See Exhibit #10) In

addition with a written comment, Defendant Whipple responded on the behalf of the city

about the bus system.

87.     On August 1, 2021, Plaintiff Haulmark captured a screen recording and

published on his personal Youtube channel of Defendant Whipple discussing his response to

Plaintiff Haulmark's lawsuit against the City of Wichita on Whipple's Facebook page. In this

screenshot of the recording, it is shown that Whipple's Facebook page was still using this

public official badge at that time. Plaintiff Haulmark is also unaware of whether Defendant

Whipple replied to any of the comments regarding the new water treatment facility when

speaking in this live streaming video due to the lack of captioning or other auxiliary aids and

services.  (See Exhibit #11).  Defendant Whipple's response on behalf of the city will be discovered after Plaintiff Haulmark obtains the transcript of the video requested in Request No. 14.

88.     While continuing to present his Facebook page to the public, Defendant Whipple made the changes to his Facebook page, such as removing the public official badge, sometimes after Defendant Whipple's video response to Plaintiff Haulmark's lawsuit in order to conceal the true extent of his mayoral duties on his Facebook page. He continues to not include captions or other auxiliary aids or services in his Facebook Live videos for individuals with a hearing disability. Also, these same Facebook Live videos do not appear anywhere else, including on the official Mayor of Wichita's Facebook page.

**Due to the fact that a public official of a public entity is using a private Facebook page, Plaintiff Haulmark has been subjected to discrimination.**

89.     The Tenth Circuit explains that "the second clause [of Title II of the ADA] prevents [a public entity] from, say, making it disproportionately more difficult for handicapped individuals to participate; unfairly disadvantaging them compared to others; or otherwise discriminating against them in the manner the [public entity] provides its services, programs, and activities." See *Elwell* at 1308.

90.     When the City of Wichita's mayor conducts the weekly briefings via his own private Facebook page, this makes it disproportionately more difficult for Plaintiff Haulmark to participate, unfairly disadvantaging Plaintiff Haulmark compared to other individuals without a hearing disability, and discriminating against Plaintiff Haulmark in the manner that the City of Wichita provides its services, programs, and activities. Thus, Plaintiff Haulmark is currently subjected to discrimination by the Defendant City of Wichita, in contravention of the second clause of Title II of the ADA. See also *Bledsoe v. Palm Beach*

*County Soil & Water Conservation District*, 133 F.3d 816, at 822 (11th Cir. 1998) ("[T]he language of Title II's antidiscrimination provision does not limit the ADA's coverage to conduct that occurs in the `programs, services, or activities,' of [a public entity]. Rather, it is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context.") (Citation and internal quotation marks omitted) (Overruled on other grounds)

91.      Defendant City of Wichita has arranged to hold weekly public briefings on the campaign's Facebook page through its mayor while intentionally excluding the individuals with a hearing disability from some of its services, programs, and activities. This violates the Title II of the ADA. See 28 C.F.R. § 35.130(b)(1)(v)

92.      When Defendant Whipple had failed to furnish the necessary auxiliary aids and services for Plaintiff Haulmark to participate in and benefit from the online live streaming videos on Whipple's Facebook page, Plaintiff Haulmark raised awareness among the public about Defendant Whipple's discrimination against him and the Deaf and Hard of Hearing population. In retaliation, Defendant Whipple removed Plaintiff Haulmark's comments from public view and blocked Plaintiff Haulmark from making comments on his Facebook page by making it impossible for Plaintiff Haulmark to continue his discussion as a concerned citizen of Kansas. In response to Plaintiff Haulmark's lawsuit against the named Defendants, Defendant Whipple escalated the discriminatory effect by blocking Plaintiff Haulmark from viewing Whipple's Facebook page where he can observe the public forum in existance.  This not only violates Title II of the ADA, but also deprives Plaintiff Haulmark of his constitutional rights, which is alternatively a viable cause of action available under Section 1983, but only if all the elements of Title II are not met for these three unconstitutional actions.

93.     In borrowing *Elwell*'s analogy to demonstrate the violation of Title II of the ADA, Defendant City of Wichita moved the soup kitchen to its mayor's home upon a stay-at-home order. The public is invited by this mayor to come to his home repeatedly to receive their own bowls, filled up with government speech about the city, its residents, and its surrounding, from the mayor. Defendant Whipple as the mayor acts as the representative of the city to engage with the public. (See K.S.A. § 12-10a06) Then Plaintiff Haulmark is refused a bowl because of his hearing disability. On the behalf of the City of Wichita, Defendant Whipple banned Plaintiff Haulmark from this soup kitchen because the Defendants do not want the public to know that this city discriminates against Plaintiff Haulmark and the other individuals with a hearing disability.

94.     In short and plain text, Defendant Whipple engages in normal municipality government functions in relation to discussing with the public as Wichita's mayor through his private Facebook page, and in turn Title II of the ADA applies. Thus, Title II of the ADA prohibits not only exclusion from Defendant Whipple's public briefings in a public forum located on his Facebook page, but also whatever disability-based discrimination Defendant City of Wichita engages in through its mayor.

## IV.     DISTRICT OF KANSAS'S LOCAL RULE 37.2 CERTIFICATION

95.     Plaintiff Haulmark conferred with the counsels of Defendant Whipple and Defendant City of Wichita between November 26, 2021 and February 4, 2022 in a good-faith effort to resolve this dispute without the Court's intervention. Due to the fact that Plaintiff Haulmark is located in Olathe, Kansas, and Defendants' counsels are located in Wichita, Kansas, this conferring has been conducted via email. As part of Plaintiff Haulmark's good faith effort, approximately 90% of the arguments presented in this motion have already been

shared with the Defendants. In spite of Plaintiff Haulmark's repeated requests that Defendant Whipple cooperate fully in the discovery process of this case, the parties were unable to reach an agreement.

96.     There have been reasonable attempts to reach a settlement. However, Whipple's failure to acknowledge his wrongdoing that continue to cause devastating harm, his lack of remorse, and his continual discrimination against Plaintiff Haulmark as evidenced by his refusal to permit Plaintiff Haulmark to access the public forum on Whipple's Facebook page. Therefore, they do not give Plaintiff Haulmark any realistic hope of a fair settlement.

## V.     A CONCERN OF PLAINTIFF HAULMARK ON THIS PROPOSED ORDER

97.     If the requested production of documentations is ordered, Plaintiff Haulmark is deeply concerned that there will not be sufficient time to complete significant amounts of fact discovery in this case. If this Court grants this motion, Plaintiff Haulmark requests that this Court also extend all of the fact and expert discovery deadlines by 90 days.

## VI.     CONCLUSION

98.     Plaintiff Haulmark intends to gather all the requested documents during the discovery process so he can create his next requests for interrogatories and then requests for admissions. After obtaining the responses from both of the Defendants under oath, Plaintiff Haulmark will be led to admissible evidence to be collected. This Court will then consider Plaintiff Haulmark's presented admissible evidence to decide whether the Defendant City of Wichita violated Title II of the ADA by conducting official business on a private Facebook page, constituted as a communication barrier, meant to separate the public forum and interactive space from Title II protections for Plaintiff Haulmark and other individuals with a hearing disability.

99.     In the event that Plaintiff Haulmark cannot discover the missing element required by Title II to show that he has been discriminated against on Whipple's Facebook page because of his hearing disability when 1) his comments were removed, 2) he was denied participation in public discussions, and 3) he was barred from observing those discussions, he will present the discovered evidence to support his Section 1983 claims against Defendant Whipple in his amended complaint. Due to this possible missing element, the claims brought under Section 1983 will not be precluded by the remedial statute of Title II of the ADA.

100.    Finally, this Court may determine whether the Defendant City of Wichita failed to make reasonable modifications and fails to produce and furnish the requested auxiliary aids and services to ensure that Plaintiff Haulmark and other individuals with hearing disabilities are afforded the equal opportunity with effective communication to fully participate in and benefit from all of the City's services, programs, and activities.

Plaintiff Haulmark respectfully requests that this Court enter an order requiring Defendant Whipple to fully respond to Plaintiff Haulmark's First Set of Requests for Production of Documents and barring Defendant Whipple from raising any objections.

------------------------------------------------------------------

Respectfully submitted this 4th of February 2022

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th of February 2022, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and a copy with postage prepaid was placed in mail of the U.S. Mail to each of the following:


Erik S. Houghton,
455 North Main
13th Floor
Wichita, KS 67202
*Attorney for Defendant*
*City of Wichita*

Randall K. Rathbun
Depew, Gillen, Rathbun &
McInteer, LC
8301 E. 21st St., Ste. 4500
Wichita, KS 67206-2936
*Attorney for Defendant*
*Brandon Whipple*

/s/ChrisHaulmark
PLAINTIFF, pro se