# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **CITY OF WICHITA**, | ) |
| and | ) Civil Action No. _21-1182-EFM-TJJ_ |
| **BRANDON WHIPPLE**, in his official | ) |
| capacity as the Mayor of the | ) |
| City of Wichita, | ) |
| Defendants. | ) |
| _____ | ) |

## PLAINTIFF HAULMARK'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM DEFENDANT WHIPPLE

COMES NOW, Plaintiff Chris Haulmark, appearing *pro se*, respectfully requests this Court to reject Defendant Brandon Whipple's Response to Plaintiff's Motion to Compel (See Response by Defendant Brandon Whipple) (Docket No. 32) (hereinafter "Whipple's Response") and grant Plaintiff Haulmark's Motion to Compel Discovery from Defendant Whipple. (See Plaintiff Haulmark's Motion to Compel Discovery) (Docket No. 28) (hereinafter "Haulmark's Motion") Plaintiff Haulmark provides the following statements and authorities:

## I. INTRODUCTION

1.     During the signing ceremony of the Americans with Disabilities Act (hereinafter "ADA" or "Title II") on July 26, 1990, President George H.W. Bush closed his speech by saying, "Let the shameful wall of exclusion finally come tumbling down."

2.     Plaintiff Haulmark initiated the discovery process by sending the First Set of Requests for Production of Documents to both Defendants on October 13, 2021. (See ¶ 5 in Haulmark's Motion) Defendant Whipple objected to nearly every reasonable request with an irrelevancy argument that ADA cannot apply to Defendant Whipple's campaign Facebook page (hereinafter "Whipple's Facebook Page"). (See ¶¶ 8-9 in Haulmark's Motion). Plaintiff Haulmark filed Haulmark's Motion on February 4, 2022 for this Court to order Defendant Whipple to fully respond to all twelve requests for production of documents.

3.     While Whipple's Response was filed on February 16, 2022, it shows that despite Plaintiff Haulmark's persuasive attempts to confer with the Defendants, Defendant Whipple continues to maintain the same shameful wall, preventing individuals with hearing disabilities from accessing government speech and activities, on behalf of the public entity he represents. Additionally, by prematurely presenting defense theories against Title II, Defendant Whipple is arguing against the merits presented in Plaintiff Haulmark's Complaint and

Haulmark's Motion. This effort is to impede Plaintiff Haulmark's right to engage in discovery efforts in relation to Whipple's Facebook Page.

4.      In accordance with Rule 26(b)(1) of the Federal Rules of Civil Procedure, Defendant Whipple's Facebook Page is relevant to Plaintiff Haulmark's discovery even when Defendant Whipple prematurely advances theories of defense to cast doubt on Plaintiff Haulmark's ADA claims. In fact, these argued defense theories presented by the Defendants actually reinforce the relevance of Whipple's Facebook Page in this case, *inter alia*.

## II. RULE 26(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

5.      The Rule 26(b)(1) of the Federal Rules of Civil Procedure states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

6.     "Considerations of both relevance and proportionality now govern the scope of discovery. Relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense. Information still need not be admissible in evidence to be discoverable." *Gilmore v. L.D. Drilling, Inc.*, Case No. 16-cv-2416-JAR-TJJ, at *2-3 (D. Kan. Jul. 21, 2017) (Cleaned up) "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Continental Coal, Inc. v. Cunningham*, Case No. 06-2122-KHV, at *5 (D. Kan. Nov. 28, 2007) (Citing *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, at 27 (D. Kan. 1991))

7.     "[W]hen the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. Relevancy

determinations are generally made on a case-by-case basis." See *Id.* at 3 (Citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, at 640 (D. Kan. 2003))

8.     Plaintiff Haulmark is given a lecture by Defendant Whipple regarding how to behave in this litigation, including the paternalistic argument that Whipple's Facebook Page is off-limits to discovery. It is not the issue nor is it the test whether Defendant Whipple's campaign Facebook page is subject to discovery. The test is whether the request for discovery is "reasonably calculated to lead to the discovery oof admissible evidence."

9.     Haulmark's Motion has been filed pursuant to Rule 37(a), asking this Court to order Defendant Whipple to fully respond to twelve requests in Haulmark's First Set of Requests for Production of Documents regarding Whipple's Facebook Page. (See ¶¶ 23-39 in Haulmark's Motion). In his motion, Plaintiff Haulmark detailed how Defendant Whipple set up a public forum on Whipple's Facebook Page, citing numerous legal authorities upon request. In addition, Plaintiff Haulmark explained how Defendant Whipple uses the same page as a location to meet with the public. Plaintiff Haulmark then outlined how Title II applies to Whipple's Facebook page. By doing this, Plaintiff Haulmark has sufficiently met the low burden of showing how Whipple's Facebook Page is within the scope of relevancy pursuant to *Gen. Elec. Cap. Corp.*'s decision.

10.     To argue that Haulmark's requests related to Whipple's Facebook Page are irrelevant for discovery, Defendant Whipple filed Whipple's Response. His opposition brief failed to resist the low burden of relevance that has been established by Plaintiff Haulmark. See *Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (Internal quotations and citation omitted); "Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." (Internal quotations and citation omitted)). "Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections." *Funk v. Pinnacle Health Facilities XXIII, LP* , No. 17-1099-JTM-KGG, 2018 WL 6042762, at *3 (D. Kan. Nov. 19, 2918) (quoting *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, at 670 (D. Kan. 2003))

11.     In an attempt to prematurely attack the merits of Plaintiff Haulmark's claim of Title II violations, Defendant Whipple presented possible defenses in his response to Haulmark's Motion. Presenting possible defenses is not a proper objection to overcome Plaintiff Haulmark's low burden of relevancy.

See *Williams v. Bd. of Cty. Comm'rs*, 192 F.R.D. 698, at 705 (D. Kan. 2000) ("A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence. When the relevancy of propounded discovery is not apparent, however, its proponent has the burden to show the discovery relevant.") (Citing *Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, at 309 (D.Kan.1996))

12.     Due to these possible defenses being raised by Whipple, Whipple's Facebook Page becomes more relevant. See Rule 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's [...] *defense* and proportional to the needs of the case[.]")

13.     While opposing Plaintiff's Motion, Defendant Whipple provides only one specific citation to legal authority when asking this Court to consider whether "Mayor's personal campaign Facebook page is a public entity's service, program or activity." (See Whipple's Response at 2)

14.     Further, Defendant Whipple failed in his Response to object specifically against any of Plaintiff Haulmark's twelve specific requests; his objections are deemed abandoned for each of Plaintiff Haulmark's requests. See *Kannaday v. Ball*, 292 F.R.D. 640, at 644 (D. Kan. 2013) (Ruling "objections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned"); *Cardenas v. Dorel Juvenile Grp.*, 230 F.R.D.

611, at 615 (D. Kan. 2005) ("When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, and (2) relied up in response to the motion to compel. Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, at 656, 670-71 (D. Kan. 2004) ("[A] court will consider only those objections that have been timely asserted in the initial response to the discovery request and subsequently reasserted and relied upon in response to the motion to compel."; "[T]he objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." )

### III. TITLE II OF THE ADA

15.     While Haulmark's Motion outlines Title II of the ADA, which provides a broad, remedial framework, as applicable to Whipple's Facebook Page, Defendant Whipple continues to misunderstand the meaning of services, programs, and activities within the first clause of Title II statutory language. In asking this Court whether Mayor Whipple's personal Facebook page is a public entity's service, program, or activity, Plaintiff Haulmark has never asserted that Whipple's Facebook Page is one. Instead, it is alleged to be a communication barrier. (See ¶ 52 in Haulmark's Motion)

16.     As one of the proposed Title II defenses, Defendant Whipple asserts that Whipple's Facebook Page is not a public entity's service, program, or activity, which is technically true. In spite of the fact that Plaintiff Haulmark never stated in his pleadings or during his discussions with the Defendants that Whipple's Facebook Page may constitute a service, program, or activity of a public entity, he pointed out that "[t]hese courts conducted necessary judicial review in many of those cases to determine that the public officials' social media posts themselves sometimes constitute government speech within public forums." (See ¶ 67 in Haulmark's Motion)

17.     Based upon Haulmark's Complaint, then expanded in Haulmark's Motion, the Defendant City of Wichita allegedly established a public forum on Whipple's Facebook Page, where Title II applies to whatever the City of Wichita, as a public entity, offers as an output within that public forum. (See ¶ 70 in Haulmark's Motion) As a result of Plaintiff Haulmark's claim that there might exist on that Facebook Page a public forum where services, programs, and activities are offered by the City of Wichita, Whipple's Facebook Page is relevant for discovery. This discovery process might help Plaintiff Haulmark clarify and refine his claims. (See Rule 26(b)(1)) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim* … and proportional to the needs of the case[.]") (Emphasis added)

# IV. ALLEGED DEFENSES AGAINST ADA RELATED TO WHIPPLE'S FACEBOOK PAGE

18.     Whipple's Response must be seen as an excessively aggressive request for an early ruling on Haulmark's claim of ADA violations during the discovery stage of the litigation. This request is made with the intention of disqualifying Plaintiff Haulmark's right to bring a private action under ADA to this Court. Defendant Whipple argues with Title II defenses despite the fact that discovery is the issue.

19.     As a result of using stalling and stonewalling tactics to prevent Plaintiff Haulmark from obtaining admissible evidence demonstrating the substantial violations, harms, and injuries that Defendant Whipple has caused and continues to cause Plaintiff Haulmark through Whipple's Facebook Page, Defendant Whipple protests the pursuit of justice by Plaintiff Haulmark.

20.     Defendant Whipple, however, has not denied the allegations made by Plaintiff Haulmark under the second clause of Title II. This clause does not require consideration of a service, program, or activity offered by a public entity. (See ¶¶ 89-94 in Haulmark's Motion)

21.     Plaintiff Haulmark is entitled to obtain this relevant information, including what Defendant Whipple may use as evidence for his possible defenses, to support his ADA claims. Plaintiff Haulmark will provide details below on how

these alleged defenses will fail if this Court insists on reviewing and considering Defendant Whipple's defense arguments.

**(A) Whipple's Facebook Page is not a service, program, or activity offered by a public entity;**

22.     As stated earlier, Plaintiff Haulmark never asserted in his pleadings or during his discussions with the Defendants that Whipple's Facebook Page could be considered a service, program, or activity of a public entity. Instead, Whipple's Facebook Page is a location where some of the City of Wichita's services, programs, and activities are offered to the public. (See ¶ 66 in Haulmark's Motion)

23.     When visiting private premises, law enforcement officers often make arrests, which are considered a service, program, or activity under Title II. Even though the Tenth Circuit never squarely decided the Title II applied to arrests, it has identified and presented two potential theories of Title II claims arising from arrests by law enforcement officers: the wrongful arrest theory and the reasonable accommodation theory. (See *Clark v. Colbert*, 895 F.3d 1258, at 1265 (10th Cir. 2018)). In parallel with Defendant Whipple's ridiculous argument regarding a Facebook page, he may contend with the same misperception that a private business premises where a law enforcement officer made an arrest is not a public service, program, or activity.

24.    A second example would be polling places located on private premises, such as a church. See *Meadows v. Hudson County Board of Elections*, Civ. No. 04-3979 (WHW) (D.N.J. Aug. 24, 2006). By using the same argument about Whipple's Facebook Page, Defendant Whipple may raise the same ridiculous defense by saying that a church is not a service, program, or activity of a public entity, rather than admitting that access to polling places is a service, program, or activity of a public entity.

25.    This next and last example shows how sidewalks are constructed by municipalities. However, they are also provided by municipalities as programs and services, even on private property, like in front of a restaurant. See *Lewis v. Powers*, Civil Action No. 1:15-CV-02692-MEH (D. Colo. Nov. 30, 2018). Defendant Whipple may use the same ridiculous argument he applies to his Facebook page to argue that the front end of a restaurant property, which is constructed with sidewalk, is not a public service, program, or activity.

26.    Generally, courts review Title II violations by public entities by determining if the normal functions of a government entity exist or not. Then, the courts determine whether or not these functions are accessible for individuals with disabilities. An alleged violation of Title II need not be tied to a specific location, such as a social media platform. (See ¶ 49 in Haulmark's Motion) Plaintiff Haulmark is alleging that Defendant Whipple is serving the public on

his campaign's Facebook page as a mayor. (See ¶ 66 in Haulmark's Motion).

Thus, the City of Wichita is liable for damages under Title II for failing to ensure

that communication between its mayor and individuals with hearing disabilities

is as effective as it is with those without hearing disabilities.

27.     Due to this controversy, Whipple's Facebook Page is relevant to

Plaintiff Haulmark's discovery under Rule 26(b)(1). To establish whether Title II

applies to Defendant Whipple's social media content, Plaintiff Haulmark needs

to be able to gather the relevant information from and about Whipple's Facebook

Page. This information needs to be presented as admissible evidence for this

Court to review and consider Plaintiff Haulmark's ADA claims later in this case.

**(B) the City of Wichita "cannot provide services, programs, or activities
through the campaign page of an elected official" and argues that
*Martinez v. Coumo*, 459 F. Supp. 3d 517, 522 (S.D.N.Y. 2020) is not
applicable;**

28.     This argument seems to be presented by Defendant Whipple on

behalf of the City of Wichita to avoid vicarious liability for violations of Title II of

the ADA.

29.     Not only do these three examples, discussed above, apply here to

contest Defendant Whipple's argument, Defendant Whipple chose to refuse to

meet and interact "with the public to share the announcements, responses by the

city, share critical health updates, and discuss important city business" on the

"Mayor's Page controlled by the City[.]" (See ¶¶ 66, 79 in Haulmark's Motion; See Whipple's Response at 2) That decision is in violation of Title II.

30.     Title II clearly establishes liability for discriminatory conduct by government employers and their employees, agents, contractors, licensees, and others. This is based on the plain text of the implementing regulation and the weight of the caselaw. (See ¶ 77 in Haulmark's Motion) Public entities' duties not to discriminate are nondelegable, and they may also be held liable for disability discrimination committed by contractors and other agents, not just their employees. (See ¶ 79 in Haulmark's Motion). Under Title II, a public entity is liable for compensable harm caused during the course of its programs, services, and activities, regardless of how it structures or staffs them. See *Amparo v. Bd. of Educ. of Las Cruces Pub. Sch.*, No. 12-CV-00136, 2013 WL 12330000, at *3 (D.N.M. May 21, 2013) (Applying vicarious liability to Title II claims); *Doe v. Bd. of Cnty. Comm'rs of Craig Cnty.*, No. 11-CV-0298, 2011 WL 6740285, at *2-4 (N.D. Okla. Dec. 22, 2011) (same); *Morales v. City of New York*, No. 13-cv-7667, 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016) ("[T]he law is clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents.").

31.     Due to this refusal, Defendant Whipple's willingness to be dismissive towards the individuals with hearing disabilities who cannot obtain important

information, intended for the public, from the City of Wichita's mayor, *Martinez v. Cuomo*, applies in full here. (See ¶ 75 in Haulmark's Motion; 459 F. Supp. 3d 517 (S.D.N.Y. 2020)).

32.     Governor Cuomo was sued not only for not providing ASL over television broadcasting, but also for failing to make his briefings accessible to these individuals with hearing disabilities. These individuals could not understand captioning or who could not access the internet to watch the briefings with a sign language interpreter provided. See *Martinez* at 520 ("Specifically, Plaintiffs argue that although videos of ASL interpretations of Governor Cuomo's briefings are available through a link on the Governor's website, because they lack internet access, they cannot view the videos. Similarly, while some of the channels that broadcast Governor Cuomo's live briefings include closed captioning, Plaintiffs argue that the closed captions do not accommodate them because they cannot read English at all or well enough to understand the information. As a result, Plaintiffs seek a mandatory preliminary injunction to require Governor Cuomo to provide an in-frame ASL interpreter during televised broadcast briefings. The Court GRANTED Plaintiffs' motion for a preliminary injunction on May 11, 2020. Dkt. 18. This opinion explains the Court's rationale.")

33.    In Plaintiff Haulmark's case, the City of Wichita fails to provide *any* accommodations as requested in order to ensure that Plaintiff Haulmark is able to understand the information that Wichita's mayor shares with the public on Whipple's Facebook Page with his Facebook live videos. (See ¶ 3 in Haulmark's Complaint) In addition, the City of Wichita fails to make reasonable modifications to ensure that its mayor's public briefings are in an accessible location where individuals with a hearing disability are able to participate in and benefit from. (See ¶ 5 in Haulmark's Complaint; See ¶ 91 in Haulmark's Motion)

**(C) State campaign finance law prohibit the City of Wichita from providing benefits to a campaign;**

34.    Defendant Whipple argues that a state statute prohibits a campaign from receiving benefits from the City of Wichita to cover any ADA-required auxiliary aids or services, citing a possible undue burden or hardship defense.

35.    Defendant Whipple did not cite any legal authority for his possible defense, but it is true that an employee or officer of a municipality may not use public funds "to expressly advocate the nomination, election or defeat of a clearly identified candidate to state office or local office." See K.S.A. § 25-4169a.

36.    As required to be in compliance with Title II of the ADA, making reasonable modifications and providing accommodations does not constitute "to

expressly advocate the nomination, election or defeat of a clearly identified candidate to state office or local office." See *Id*.

**(D) Defendant Whipple asserts that his speeches are the product of a campaign;**

37.     As a state actor, Whipple argues that Title II cannot be applied because his Facebook posts are campaign speeches. He argues this without directly disputing Plaintiff Haulmark's claim that Defendant Whipple is delivering government speech through his Facebook page. This argument has no merit, because there is no "campaign speech" exception to Title II.

38.     According to the court in *Knight First Amendment Inst. at Columbia Univ. v. Trump*, the interactive space associated with Defendant Whipple's Facebook Page is consistent with all the characteristics dispositive of the forum analysis issue. See (*Knight I*), 302 F. Supp. 3d 541, at 574 (S.D.N.Y. 2018) (The Southern District of New York "consider[ed] whether the interactive space is a designated public forum, with governmental intent serving as the touchstone for determining whether a public forum has been created. Intent is not merely a matter of stated purpose. Indeed, it must be inferred from a number of objective factors, including: the government's policy and past practice, as well as the nature of the property and its compatibility with expressive activity.")

39.    Any campaign speech shared in a public forum by an incumbent public official can also be construed as government speech coming from the office that the public official represents. Thus, Title II of the ADA requires public entities to ensure that communication with individuals with a hearing disability within their public forums is as effective as with those without a hearing disability.

**(E) an ASL interpreter would be required to accompany Defendant Whipple every time he gives a speech;**

40.    When discussing about when Defendant Whipple chooses to provide information to the public, he complains that he must always be accompanied by an interpreter using sign language.

41.    With this illogical argument, Defendant Whipple is asking for sympathy from this Court for the City and its mayor. This is because Title II requires his public briefings and meetings with the public to be accessible to Plaintiff Haulmark and other individuals with a hearing disability. Meanwhile, Plaintiff Haulmark is alleged to repeatedly suffer significant harms and injuries due to the Defendants' failure to accommodate and failure to make reasonable modifications upon request. See *Hamer v. City of Trinidad*, 924 F.3d 1093, at 1107 (10th Cir. 2019) ("[E]ach time a qualified individual with a disability encounters or actually becomes aware of a non-compliant service, program, or

activity and is thereby deterred from utilizing that service, program, or activity, he or she suffers discrimination and a cognizable injury.") (Internal quotation marks and citations omitted)

42.     While he alleges in his Complaint and in Haulmark's Motion that Defendant Whipple fails to provide any auxiliary aids or services when publishing Facebook Live videos on Whipple's Facebook Page, Plaintiff Haulmark has never specifically requested sign language interpreters since he can read and understand captioning and transcripts when provided as in any other action if a sign language interpreter is not provided.

43.     Title II provides that a defendant can establish their affirmative defense of undue burden, but only if the head of the public entity makes this decision "after considering all resources available for use in the funding and operation of the service, program, or activity, and [the decision] must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.150(a)(3). Additionally, the public entity "shall take *any other action* that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity." See *Id.* (Emphasis added)

44.     In this case, due to the fact that the Defendants have not demonstrated that they have established all the elements of their affirmative

defense of undue burden so far, Defendant Whipple's argument concerning his burden of complying with Title II should be outright rejected when deciding whether to grant Haulmark's Motion.

**(F) the COVID-19 pandemic has forced Defendant Whipple to work from home;**

45.     Defendant Whipple points out how the COVID-19 pandemic has changed the way he campaigns and carries out his duties as the mayor of Wichita. (See Whipple's Response at 3) Defendant Whipple admits he conducts some of his duties as Mayor of Wichita on his campaign Facebook page, including discussing and interacting with the public via his Facebook Live videos on behalf of the City. (See *Id.* at 3) However, Defendant Whipple admits that he wants to use the COVID-19 pandemic as an excuse to intentionally exclude Plaintiff Haulmark and other individuals with a hearing disability from having access to his public briefings and discussion on his Facebook page. (See *Id.* at 3)

46.     The realities of 21st century interactions, including those brought about by the COVID-19 pandemic, further confirm that Title II addresses a government's provision of information and services through its websites and other means of information exchange. *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, at 2097 (2018) (Noting "the far-reaching systemic and structural changes

in the economy and many other societal dimensions caused by the Cyber Age.")
(Internal quotation marks omitted)

47.     With an official statement, the U.S. Department of Justice's Civil Rights Division affirms the Department will remain vigilant in enforcing civil rights laws during the COVID-19 pandemic to ensure that fear and prejudice do not limit access to housing, schools, benefits, services, jobs, and *information*, among other things, on account of race, sex, religion, national origin, *disability*, or other protected classes. "Laws prohibiting unlawful discriminatory behavior must and will be vigorously enforced." See Statement by Assistant Attorney General for Civil Rights, Eric S. Dreiband, <u>Protecting Civil Rights While Responding to the Coronavirus Disease 2019 (COVID-19)</u>[1]

48.     Upon completion of his discovery process on Whipple's Facebook Page, Plaintiff Haulmark intends to meet the Title II's required burden of proof to establish that Defendant Whipple engages with the public, beyond his role as a candidate for reelection to the mayoral office, in his official capacity as the mayor of the city on his campaign Facebook page.

**(G) a city ordinance does not provide the mayor's position any authority to enforce the ADA; and**

---

[1] <u>Protecting Civil Rights While Responding to the Coronavirus Disease 2019 (COVID-19)</u>, https://www.ada.gov/aag_covid_statement.pdf

49.    Defendant Whipple brings up a city ordinance in order to argue that a mayor of the City of Wichita is not authorized to enforce ADA laws on behalf of the city. (See Whipple's Response at 3-4)

50.    Plaintiff Haulmark has cited a state law that authorizes a mayor to enforce all laws, including the ADA. (See ¶ 76 in Haulmark's Motion)

51.    This issue should be argued with evidence being presented by both parties after discovery has been completed because of the controversy involved here.

**(H) a worry that if ADA is applicable to Defendant Whipple's speech on his personal Facebook page, other elected officials will be subject to the same federal law for their speeches on their own personal Facebook pages.**

52.    Defendant Whipple demonstrates his concern over other public officials who must comply with the same anti-discrimination laws as he must. In this case, it must be pointed out that he has displayed no sympathy for Plaintiff Haulmark and other individuals with a hearing disability. These individuals are intentionally excluded from being able to access the City's crucial information communicated to the public on Whipple's Facebook Page.

53.    Upon conclusion of this case, it may serve as a precedent for Title II claims in social media contexts. This may show that public officials cannot exclude individuals with a hearing disability from any public briefings and

discussions, no matter where they are held. Consequently, Defendant Whipple and other public officials will no longer be reluctant to provide the ADA-required effective communication access to individuals with a hearing disability.

## V. DEFENDANT WHIPPLE IS THE PROPER PARTY TO BE ORDERED TO FULLY RESPOND TO PLAINTIFF HAULMARK'S TWELVE REQUESTS

54.     Defendant Whipple argues in his response that the campaign's Facebook page is not subject to Title II of the ADA since he is acting as a private individual on it.

55.     It's important to remember that even if Defendant Whipple wasn't the elected mayor and wasn't named in this lawsuit, but rather is someone running a private Facebook page where a different individual conducts the duties of the mayor, Whipple may be subject to Rule 45 of the Federal Rules of Civil Procedure, which permits subpoenas to be issued to non-parties. However, Plaintiff Haulmark probably cannot successfully apply Rule 45 to Whipple in order to obtain relevant information regarding Whipple's Facebook page if this other individual, acting as the mayor, controls the relevant requested documents pertaining to this private Facebook page. As a result, that mayor as a party to this lawsuit will be compelled by this motion.  See *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, at 397 (D.N.M. 2018) ("Courts may refuse discovery requests aimed at nonparties in cases where the same testimony or

documents could instead be obtained from a party to the action, and a few courts even impose a heightened relevancy requirement for nonparty discovery requests.") (Citation and quotation omitted).

## VI. PLAINTIFF HAULMARK HAS THE RIGHT TO ADD SECTION 1983 CLAIMS TO HIS AMENDED COMPLAINT INSOFAR AS TITLE II OF THE ADA DOES NOT PRECLUDE THESE SPECIFIC CLAIMS

56.     Defendant Whipple does not seem to comprehend that Plaintiff Haulmark has the right to bring before this Court at least a violation of 42 U.S.C § 1983 (hereinafter "Section 1983") claim against Defendant Whipple if the completed discovery shows that Defendant Whipple's three unconstitutional actions deprived Plaintiff Haulmark of his First Amendment rights with state action taken without consideration of his hearing disability.

57.     If the discovery uncovers admissible evidence that Defendant Whipple acted on a basis of Plaintiff Haulmark's hearing disability, then there will not be a necessary amendment to be made to Plaintiff Haulmark's Complaint that at least includes a Section 1983 claim to be added and clarified. Section 1983 claims are precluded by the ADA if all Title II elements are met. (See ¶ 19 in Haulmark's Motion)

58.     Obtaining facts from this required discovery process to show Plaintiff Haulmark was discriminated against on Whipple's Facebook Page on account of

his hearing disability is vital to determining the applicability of Title II of the ADA to a possible Section 1983 claim. (See ¶¶ 20-21 in Haulmark's Motion)

59.     There is a definite paradox in Whipple's Response. This is because Defendant Whipple uses a metaphor of a basketball game with a leading point that is incorrect, in claiming that Plaintiff Haulmark's response when he was filing Haulmark's Motion was predictable. K-State only had a 17 point lead over the Jayhawks on January 22, 2022[2]. In addition, the Defendants received exactly 92% of the draft of Haulmark's Motion on December 22, 2021. (See ¶ 95 in Haulmark's Motion) For fifty-six days until Haulmark's Motion was filed, there was nothing to predict. Perhaps this metaphor is meant in a patronizing manner toward Plaintiff Haulmark.

## VII. SUMMARY

60.     Plaintiff Haulmark clearly alleges in his Complaint that a public entity is posting videos on Whipple's Facebook Page, containing more than its mayor's government speeches. These Facebook Live videos are without captions or any other alternative auxiliary aids or services. The City of Wichita directly caused the lack of auxiliary aids or services. This is because its mayor posted the Facebook Live videos, containing government speech and activities, on Whipple's

---

[2] Kansas vs. Kansas State - Team Statistics - Jan 22, 2022, ESPN,
https://www.espn.com/mens-college-basketball/matchup?gameId=401368382

Facebook Page without captions or any other alternative auxiliary aids or services.

61.     It is perfectly reasonable to interpret Title II as applying to public entities' communication with the public through the internet. In the case of the City of Wichita's public briefings provided by its mayor on the Wichita's official Mayor's Facebook page, no one would dispute that Title II would be applicable on that official page and that any individual with a hearing disability who requested a reasonable accommodation to benefit from the social media content of this page would be entitled to one.

62.     However, as per Defendant Whipple's reading, Title II does not apply if Defendant Whipple posts social media posts containing the content of government speech and activities on the mayor's private Facebook account. That is absurd, as social media content containing government speech or activity is simply one of the many "services, programs, or activities" that a municipality provides through its mayor, an issue that strikes to the heart of Title II's protections. At this stage, this Court must accept as true the allegations that the City of Wichita is causing the inaccessibility.

63.     It appears that Defendant Whipple wishes this Court to enter summary judgment, in ruling on a discovery motion, with respect to the ADA claims pending against the Defendants. In his response, Defendant Whipple

argues that Plaintiff Haulmark must establish that Title II applies to the City of Wichita's public forum, where his government speech and activity are to be found, on his campaign Facebook page, *before* Plaintiff Haulmark can conduct discovery on that page. While Defendant Whipple failed to explain why his speech and meeting with the public would fall outside of the broad category of a public entity's services, programs, and activities, he has not referred to any of the applicable federal rules, applicable statutes, or applicable regulations that command the premature process that he insists upon.

64. Making this determination as to whether a public entity is liable in a given case is a fact-specific and fact-intensive inquiry that may need to be reserved until after discovery. One of the major decisive issues of this case is how Title II applies to the public forum and interactive space located on Whipple's Facebook Page, which must be decided by this Court *after* the parties have each presented their evidence. In the event Plaintiff Haulmark prevails with his litigation, the Defendants' wall of shame will deservedly come tumbling down.

65. Thus, Plaintiff Haulmark has demonstrated that Whipple's Response is an amalgamation of hypothetical theories, unavailable defenses, and mere speculations intended to waste judicial resources and create barriers in the way of justice and a possible fair settlement, by refusing to accept the likelihood of

Plaintiff Haulmark's ADA claims being plausible. Haulmark's Motion is a discovery motion, not a motion for summary judgment.

66.     Considering the broad scope of discovery, the low burden that Plaintiff Haulmark has met, and Defendant Whipple's abandoned specific relevance objections, this Court must overrule Defendant Whipple's groundless objections as to Plaintiff Haulmark's twelve requests in his First Set of Requests for Production of Documents. (See ¶¶ 23-39 in Haulmark's Motion)

## VIII. CONCLUSION

Plaintiff Haulmark respectfully requests that this Court disregard Defendant Whipple's Response to Plaintiff's Motion to Compel and grant Plaintiff Haulmark's Motion to Compel Discovery from Defendant Whipple, ordering Defendant Whipple to provide responses to all twelve of Plaintiff Haulmark's discovery requests in full, extending the fact and expert discovery deadlines as requested, and for such other relief as this Court deems proper.

--------------------------------------------------------------

Respectfully submitted this 1st of
March 2022

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st of March 2022, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and to each of the following:

| | | |
|---|---|---|
| Erik S. Houghton, | Randall K. Rathbun | |
| 455 North Main | Depew, Gillen, Rathbun & | |
| 13th Floor | McInteer, LC | |
| Wichita, KS 67202 | 8301 E. 21st St., Ste. 4500 | /s/ChrisHaulmark |
| *Attorney for* | Wichita, KS 67206-2936 | PLAINTIFF, pro se |
| *Defendant City of* | *Attorney for Defendant* | |
| *Wichita* | *Brandon Whipple* | |