UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRIS HAULMARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-1182-EFM-TJJ |
| | ) |
| WICHITA, CITY OF and BRANDON | ) |
| WHIPPLE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Pro se Plaintiff Chris Haulmark brings this action against Defendants City of Wichita and Brandon Whipple in his official capacity as Mayor of the City of Wichita, under Title II of the Americans with Disabilities Act (ADA). This case is before the Court on Plaintiff's Motion to Compel Discovery from Defendant Whipple (ECF No. 28). Twelve Requests for Production are at issue, but Whipple's objection is the same for each: Discovery relating to his private campaign Facebook page is irrelevant because the ADA does not apply to the page. For the reasons discussed below, the Court denies Plaintiff's motion.

**I.      Legal Standards**

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its

> likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[1]

Considerations of both relevance and proportionality now govern the scope of discovery.[2] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[3] Information still "need not be admissible in evidence to be discoverable."[4] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[5]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[6] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[7] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[8] Conversely,

---

[1] Fed. R. Civ. P. 26(b)(1).
[2] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[3] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[4] Fed. R. Civ. P. 26(b)(1).
[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[6] *Id.*
[7] *Id.*
[8] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[9] Relevancy determinations are generally made on a case-by-case basis.[10]

## II.     Discussion

The discovery dispute here is limited: Is discovery related to Whipple's private campaign Facebook page relevant to Plaintiff's ADA claims? Although the scope of relevancy is broad, if Title II of the ADA does not apply to the private campaign Facebook page of the Mayor, a public figure, then Plaintiff cannot show relevance. To state a claim under Title II, Plaintiff must allege (among other things) that he was "excluded from participation in or denied the benefits of a <u>public entity's</u> services, programs, or activities."[11] If the information/livestream videos posted on Whipple's private campaign Facebook page do not constitute a public entity's services, programs, or activities, then content and other information about the page is not relevant.

According to Plaintiff's motion, "Defendant Whipple's private Facebook page is, *inter alia*, a communication barrier established by Defendant City of Wichita to separate the public forum and interactive space, containing government activities and speech, from the protections of Title II, so that while conducting his official duties there, the mayor is attempting to avoid meeting with the requirements of Title II of the ADA."[12] In his Complaint, Plaintiff alleges that "Defendants" control Whipple's private campaign Facebook page (and the Court, construing

---

[9] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[10] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[11] *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (emphasis added).
[12] ECF No. 28 at 15 ¶ 52.

Plaintiff's allegations liberally, presumes Plaintiff is claiming Defendants jointly control the page).[13] He also claims that Whipple's Facebook page "is an official source of information to promote official government business."[14] In his reply brief, Plaintiff argues that he has never asserted Whipple's personal Facebook page itself is a "public entity's service, program, or activity."[15] Instead, Plaintiff argues, "Whipple's Facebook page is a location where some of the City of Wichita's services, programs, and activities are offered to the public," without specifically identifying any such services, programs or activities.[16]

As a matter of policy, Plaintiff's argument is untenable. Plaintiff seeks injunctive relief relating to the Mayor's ***personal campaign*** Facebook account. Taken to its reasonable limit, a ruling in favor of Plaintiff could ultimately deny public officials the right or ability to have "private" social media accounts, unless they incur potentially substantial costs and bear the burden of complying with Title II. Under Plaintiff's theory, a public official's private social media accounts would be subject to Title II requirements, if they merely mention a public service, program or activity *and* even if they do so as part of their campaign for public office. Yet, there is nothing in the cases Plaintiff has cited, discussed *infra*, that indicates Title II was intended to have the broad implications Plaintiff seeks. In addition, opening Whipple's private campaign social media account—which clearly contains many personal and campaign postings that are totally irrelevant to the issues in this case—up to discovery is simply not proportional to the needs of this case. There is an official City of Wichita account, about which Plaintiff may

---

[13] ECF No. 1 at 3 ¶ 6 ("In addition to Whipple's Facebook page, the Defendants control two other social media platforms that are in violation of the ADA.").
[14] *Id.* at 6 ¶ 16.
[15] ECF No. 33 at 8 ¶ 15.
[16] *Id.* at 11 ¶ 22.

more properly seek discovery. With these general policy considerations in mind, the Court turns to the parties' arguments.

The Court finds that, on their face, Plaintiff's discovery requests relating to Whipple's Facebook page do not seek relevant information. The private campaign page, on its face, is not a public entity's "service, program or activity" (here, what Plaintiff alleges to be the Mayor's Facebook Live videos) within the meaning of Title II. Instead, the campaign Facebook page is personal to Plaintiff. That it is his campaign page, controlled by Whipple for Mayor, Chelsea Whipple, Treasurer, further highlights the fact that the site is for Whipple's personal purposes, not those of the public entity, the City of Wichita. This places the burden on Plaintiff to demonstrate relevance. Plaintiff argues (1) discovery relating to Whipple's private campaign Facebook page is relevant because it relates to Defendants' defenses[17]; (2) Whipple is prematurely arguing the merits of Plaintiff's ADA claim to impede Plaintiff's right to discovery[18]; (3) Whipple has abandoned his objections by failing to re-raise specific objections in his response brief[19]; and (4) Plaintiff's requests are relevant under the second clause of Title II, which prevents a public entity from making it disproportionately more difficult for Plaintiff to participate, unfairly disadvantaging Plaintiff and discriminating against him.[20]

Each of these arguments lacks merit. First, Plaintiff cannot "backdoor" into a relevance finding by arguing that the discovery is relevant precisely because Whipple says it is not relevant, as Title II doesn't apply. Whether discovery about Whipple's private campaign

---

[17] ECF No. 28 at 5 ¶ 17.
[18] ECF No. 33 at 3 ¶ 3; 6 ¶ 11.
[19] *Id.* at 7–8 ¶ 14.
[20] ECF No. 28 at 26–28 ¶¶ 89–94; ECF No. 33 at 10 ¶ 20.

Facebook page is relevant depends squarely on whether the page and its content are subject to Title II. But it does not become relevant solely because Whipple argues the page is <u>not</u> subject to Title II. The Court rejects Plaintiff's first argument.

Second, it is true that, to some degree, the substantive merit of Plaintiff's Title II claim based on Whipple's Facebook page is entangled with whether discovery about that page is relevant. This case presents the somewhat unusual occasion in which they overlap. The overlap does not mean, however, that the Court must ignore the issue until later. To the contrary, even though the instant motion is not a dispositive motion, if Plaintiff cannot base a Title II claim on Whipple's personal campaign Facebook page, then the information about that page is not relevant or discoverable.

Third, Plaintiff correctly cites the law in the District of Kansas on waiving or abandoning objections.[21] Plaintiff argues because Whipple didn't address his objections individually in his response brief, he abandoned them all. But Whipple's objections are all the same: lack of relevance. In this situation, there was no need to repeat the same argument twelve times. Whipple's objections are not deemed abandoned.

Fourth, whether Plaintiff relies on the first clause of Title II (relating to services, programs, and activities) or the second clause of Title II (preventing a public entity from making it disproportionately more difficult for Plaintiff to participate), Plaintiff has still failed to show the relevance of Whipple's personal campaign Facebook page.   The same concerns, discussed above, apply relative to both clauses of Title II.

---

[21] *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) ("[O]bjections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned.").

Before Plaintiff filed his motion, the Court conducted a pre-motion Zoom conference to discuss this discovery dispute, among others. At that time, the Court questioned Plaintiff's position that information concerning Whipple's private campaign Facebook page is relevant to Plaintiff's Title II claims and instructed Plaintiff that, if he eventually filed a motion to compel seeking to discover such information, he would need to cite legal authority to support his position.[22] The Court later reminded Plaintiff of this.[23]

In the instant motion to compel, Plaintiff has cited numerous cases and attempted to satisfy the Court's concerns, however, as discussed below the Court finds none of the citations directly on point or persuasive. The cases cited in Plaintiff's briefs primarily can be grouped under four "themes": (1) the ADA is to be construed broadly; (2) Whipple has created a "public forum," as in § 1983 cases; (3) a "service, program, or activity" is a public entity's "normal function"; and (4) a public entity is vicariously liable for the acts of its employees.

A. Broad Construction of the ADA

Plaintiff's first theme is he is entitled to the subject discovery because courts broadly construe the ADA. In support, Plaintiff cites the following cases—each of which do include language about broad construction of the ADA, but are distinguishable on their facts.

*Bay Area Addiction Research & Treatment v. City of Antioch*[24] is not applicable; it merely observed that 42 U.S.C. § 12132 constitutes a general prohibition against discrimination

---

[22] ECF No. 19.
[23] ECF No. 24.
[24] 179 F.3d 725 (9th Cir. 1999).

by public entities and determined the ADA applies to zoning because zoning "is a normal function of a governmental entity."²⁵ Zoning, of course, is not at issue in the instant case.

*Tennessee v. Lane*²⁶ also does not help Plaintiff's cause. This case is about the right of access to courts, and the holding was that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."²⁷ Notably, the quotations cited by Plaintiff appear in a dissent to the Supreme Court's holding.

Next, *Martinez v. Cuomo*.²⁸ At first blush, this case appears to be more on point. It does involve the question whether Governor Cuomo was required to provide in-frame ASL interpretation during his daily televised press briefings. But the public briefings were not aired on Cuomo's personal campaign Facebook page, a material distinction from the situation presented here.

*Elwell v. Oklahoma ex rel. Board of Regents of the University of Oklahoma*²⁹ is next. In discussing this case, Plaintiff misconstrues the court's analysis, which is in fact somewhat limiting. In its entirety and in context, what the court said was "[H]ere the placement of the term 'activity' [in Title II] suggests an effort to capture all the outputs the public entity provides to the public it serves, to be comprehensive in that respect, not necessarily to rope in everything the entity does."³⁰

---

²⁵ *Id.* at 731 (citation and internal quotation marks omitted).
²⁶ 541 U.S. 509 (2004)
²⁷ *Id*. at 533–34.
²⁸ 459 F. Supp. 3d 517 (S.D.N.Y. 2020)
²⁹ 693 F.3d 1303 (10th Cir. 2012)
³⁰ *Id.* at 1307.

*Hamer v. City of Trinidad*[31] held that a public entity's "services" included sidewalks. Again, sidewalks are not at issue here. Neither are they analogous in any way to a private campaign Facebook page.

Finally, *Bledsoe v. Palm Beach County Soil & Water Conservation District*[32] involved Title II claims of employment discrimination. In *Bledsoe*, the Court discussed the broad interpretation of ADA protection, but, again, other than general principles, the case is not helpful to the issue before the Court here.

In sum, none of the cases Plaintiff cites supporting the broad construction of Title II of the ADA suggest that this Court should expand its breadth to a private campaign Facebook page.

B.  § 1983 Cases and Public Forums

The next group of cases Plaintiff cites involve constitutional claims brought against political figures under 42 U.S.C. § 1983.[33] These cases talk about how the internet and social media provide "public forums" in which constitutional free speech rights must be protected. None of these cases are Title II cases or explain how or why the principles of a § 1983 First Amendment case should be applied to a case under the ADA. Plaintiff summarily declares, "As with Section 1983, Title II applies to private accounts on social media platforms wherever a

---

[31] 441 F. Supp. 3d 1155 (D. Colo. 2020).
[32] 133 F.3d 816 (11th Cir. 1998).
[33] *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), *judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); *Buentello v. Boebert*, Civil Action No. 1:21-cv-00147-DDD, 2021 WL 2588856 (D. Colo. June 24, 2021); *Swanson v. Griffin*, 526 F. Supp. 3d 1005 (D.N.M. 2021), *rev'd and remanded*, No. 21-2034, 2022 WL 570079 (10th Cir. Feb. 25, 2022); *Davison v. Loudoun Cnty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 723 (E.D. Va. 2017).

public forum exists."[34] But without legal support, the Court is unwilling to make this jump. Throughout his briefing, Plaintiff uses the § 1983 terminology "public forum," but this terminology is not found in Title II. The term "public entity" is in Title II, but that is the term that perhaps gives the Court the most pause about applying Title II to the private campaign Facebook page of an elected mayor, when the public entity itself—here, the City of Wichita—is prohibited from financially supporting the fundraising efforts of the mayor.[35]

This is not a § 1983 case—Plaintiff asserts no § 1983 claims. The Court finds the numerous § 1983 cases cited by Plaintiff distinguishable and unhelpful in resolving the question whether discovery relating to a private Facebook page is relevant. The Court declines to apply their rationale to justify allowing the discovery here.

### C.  Public Entity's "Normal Function"

Plaintiff next cites cases about arrests on private premises[36]; polling places on private premises[37]; and sidewalks on private property[38] in an attempt to demonstrate how a location (in this case, a private Facebook page) can be the place where a public entity's services, programs, and activities are offered.[39] Again, these cases are distinguishable on their facts; use of a private Facebook page to offer live videos presents a different scenario than an arrest, polling, and sidewalks.

---

[34] ECF No. 28 at 18 ¶ 68; *see also* ECF No. 33 at 9 ¶¶ 16, 17.
[35] Kan. Stat. Ann. § 25-4169a.
[36] *Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2018) (declining to determine whether Title II applied to arrests).
[37] *Meadows v. Hudson Cnty. Bd. of Elections*, Civ. No. 04-3979 (WHW), 2006 WL 2482956 (D.N.J. Aug. 24, 2006).
[38] *Lewis v. Powers*, Civil Action No. 1:15-CV002692-MEH, 2018 WL 6268419 (D. Colo. Nov. 30, 2018).
[39] ECF No. 33 at 11–12, ¶¶ 23–25.

*JL ex rel. Thompson v. New Mexico Department of Health*,[40] another case cited by Plaintiff, offers guidance on what is meant by "service, program, or activity." According to this case, "The focus of the inquiry into whether a particular public function constitutes a service, program, or activity within the meaning of Title II is not so much on whether a particular public function can technically be characterized as a service, program, or activity but whether it is a normal function of a governmental entity."[41] The *JL* court noted the ADA encompasses zoning decisions because zoning is a normal function of a governmental entity, just as maintaining public sidewalks is a normal function of a city.[42] But *JL* limited the stretch of what constitutes a "normal function" of a public entity, finding the plaintiffs failed to show or cite any authority for the proposition that failure to cure effects of a third-party breach of contract is a denial of a public service, program, or activity within the meaning of Title II of the ADA.

Plaintiff assumes that *JL*'s use of the terminology "normal function" supports his argument.[43] Plaintiff states—without support—that sharing announcements, responses by the city, sharing critical health updates, and discussing important city business is a "normal function" of a city.[44] The Court respectfully disagrees. Posting "selfie-like" videos on Facebook to update citizens on various matters and, frankly, to build credibility with constituents and maintain their support, is not a normal function of a city. Rather, it is an expected act of an individual politician, whether he or she holds an office or is campaigning for an office. It bears

---

[40] 165 F. Supp. 3d 1048 (D.N.M. 2016)
[41] *Id.* at 1074–75 (internal quotation marks and citations omitted).
[42] *Id.* at 1075.
[43] ECF No. 28 at 17 ¶ 66; 33 at 13 ¶ 26.
[44] ECF No. 28 at 17 ¶ 66; *id*. at 21 ¶ 74; *id*. at 28 ¶ 94; *see also id.* at 14 ¶ 51.

no resemblance to zoning decisions or sidewalk maintenance. This argument, too, fails to justify broadening discovery to the mayor's private campaign Facebook page.

D. Vicarious Liability

Finally, Plaintiff cites a group of cases for the unremarkable premise that public entities can be vicariously liable under the ADA for the acts of their employees.[45] This is true. But if the employee's act (posting videos on a private Facebook page) does not fall under the umbrella of the ADA, then there is nothing for which the employer can be held responsible under Title II. The fact that—in some situations—vicarious liability may apply does not justify subjecting Whipple to discovery about his personal Facebook page.

To Plaintiff's credit, at the Court's urging he has obviously conducted considerable research in an attempt to find authority for his position. However, for all the reasons explained *supra*, the Court determines Plaintiff has not shown that his discovery requests relating to Whipple's personal campaign finance Facebook page are relevant to this case. Whipple's relevance objections are therefore sustained and he need not respond to the twelve Requests for Production at issue.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery from Defendant Whipple (ECF No. 28) is denied.

Dated May 6, 2022, at Kansas City, Kansas.

　　　　　　　　　　　　　　　　　　　　　　　*Teresa J. James*
　　　　　　　　　　　　　　　　　　　　　　　Teresa J. James
　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

---

[45] *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001); *Rosen v. Montgomery Cnty.*, 121 F.3d 154, 157 n.3 (4th Cir. 1997); *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Cardona Roman v. Univ. of P.R.*, No. 10-CV-1363(DRD), 2011 WL 3204837, at *5 (D.P.R. July 27, 2011); *Guynup v. Lancaster Cnty.*, No. 06-4315, 2008 WL 4771852, at *2 (E.D. Pa. Oct. 29, 2008).