# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHRIS HAULMARK**, | ) | |
| Plaintiff, | ) | |
| V. | ) | |
| **CITY OF WICHITA**, | ) | |
| and | ) | Civil Action No.  21-1182-EFM-TJJ |
| **BRANDON WHIPPLE**, in his official | ) | |
| capacity as the Mayor of the | ) | |
| City of Wichita, | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFF'S MOTION TO REVIEW MAGISTRATE JUDGE'S ORDER AND MEMORANDUM IN SUPPORT

As a *pro se* litigant, Plaintiff Chris Haulmark respectfully moves this Court under Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.1.4(a) for a review of Magistrate Judge James' Order dated May 6, 2022, which prevents Plaintiff Haulmark from obtaining necessary discovery regarding his alleged Americans with Disabilities Act (hereinafter "ADA" or "Title II") claims and Defendants' asserted defenses in this case. The following objections are filed in support of Plaintiff Haulmark's Motion to Compel Discovery:

### BRIEF IN SUPPORT

### I.    INTRODUCTION

1.      This dispute relates to the ability of one party to discover documents and information about the other party's official government activities allegedly occurring on a private Facebook page[1] (Hereinafter "Whipple's Facebook page").

2.      Plaintiff Haulmark served the First Set of Requests for Production of Documents to both Defendants on October 13, 2021. (See Docket No. 11 and Exhibit #1 of Docket No. 28-1; hereinafter "Haulmark's Requests"). On November 22, 2021, Defendant Brandon Whipple served his responses to Plaintiff Haulmark's Request for Production, objecting to nearly every reasonable request in Haulmark's Requests. (See Exhibit #2 of Docket 28-1; hereinafter "Whipple's Response"). Subsequently, Plaintiff Haulmark filed a Motion to Compel on February 4, 2022. (See Plaintiff Haulmark's Motion to Compel Discovery) (Docket No. 28) (hereinafter "Haulmark's Motion") This motion sought to gather and demonstrate how a public entity is using a private Facebook page as a location for its services, programs, and activities, how Title II violations by a city are occurring, and to obtain reliefs available under Title II to redress Plaintiff Haulmark's alleged injuries.

3.      Within his motion, Plaintiff Haulmark requested this Court to order Defendant Whipple to fully respond to all twelve requests for production of documents. As requested by this Court, Plaintiff Haulmark has presented several possible theories on how Title II applies within a private Facebook page when a mayor uses this private Facebook page to promote the City of Wichita's services, programs, and activities.

4.      In spite of the efforts Plaintiff Haulmark made to present a Title II coverage framework, Plaintiff Haulmark went above and beyond the standards to move this Court

---

[1] Facebook Page of Defendant Brandon Whipple, https://www.facebook.com/VoteWhipple

to compel the production of documents. In these presented possibilities of Title II coverage, the focus was on Plaintiff Haulmark's allegation that the mayor had moved his office into a virtual space to continue meeting with the public. This is how he holds public briefings and conducts government activities on his private Facebook account, to be governed by Title II regulations. In addition, the mayor is a state actor or government official in charge of both involved public and private entities.

5.     Magistrate Judge James' Order was issued on May 6, 2022 to deny Plaintiff Haulmark's Motion to Compel. (See Docket No. 35; hereinafter "the Order")

6.     Although Plaintiff Haulmark established a prima facie case of discrimination under Title II, Magistrate Judge James may have prematurely ruled that Defendants Whipple and the City of Wichita are not liable for Title II violations with their involvement on Whipple's Facebook page. This ruling had been issued without allowing the parties to complete the discovery process, present their arguments with burdens of proof, and perform any other litigation tasks. In light of this, Plaintiff Haulmark's requests for production of documents are erroneously denied on the grounds that his requests related to Whipple's Facebook page are not relevant.

7.     This decision reasoned that the "information/livestream videos posted on Whipple's private campaign Facebook page" is not a service, program, or activity of the City of Wichita because Plaintiff Haulmark cannot cite a similar case that supports "the broad construction of Title II of the ADA suggest[ing] that this Court should expand its breadth to a private campaign Facebook page."

8.      Even though the Defendants did not file a dispositive motion, Magistrate Judge James treated Plaintiff Haulmark's discovery motion as one to dismiss a private entity that was not a party to the case. According to Magistrate Judge James, these "services, programs, or activities" have been narrowly construed, as opposed to many courts across the country construing it broadly.

9.      With all due respect, Magistrate Judge James attacks the allegations of Plaintiff Haulmark's ADA claims on behalf of the Defendants. The Order imposes higher standards on Plaintiff Haulmark than required by the Federal Rules. Most of the allegations in Plaintiff Haulmark's ADA suit are related to the "information/livestream videos posted on Whipple's private campaign Facebook page[.]" Plaintiff Haulmark's request for injunction relief has been misconstrued as being directed at a private entity, which is puzzling.

10.     As a whole, the Order is essentially blessing the Defendants' efforts to avoid discovery and judgment, which, it turns out, leaves public entities with a gaping loophole through which they escape legal scrutiny and avoid complying with Title II, intended to protect qualified individuals with hearing disabilities, as did the Fifth Circuit in *Ivy v. Williams*, 781 F.3d 250 (5th Cir. 2015), *cert. granted sub nom.*, *Ivy v. Morath*, 136 S. Ct. 2545 (2016), *vacated and remanded sub nom.*, *Ivy v. Morath*, 137 S. Ct. 414 (2016).

11.     Until this case, no court addressed the question of public officials who use private social media accounts to interact with the public while refusing to accommodate individuals with disabilities.

Case 6:21-cv-01182-EFM-TJJ   Document 37   Filed 05/17/22   Page 5 of 19

12.     There remain questions regarding the scope of Title II protections decades after Congress passed the ADA to prevent disability discrimination. In this case, there is a question raised: when does a mayor's meeting with the public using a private social media account become part of the municipality's programs, services, or activities, or when does the benefit from the mayor's programs, services, or activities become a part of them?

13.     At present, Plaintiff Haulmark and individuals with hearing disabilities are unable to communicate effectively with a mayor via his private Facebook page where he virtually meets with the public. Unless this issue is to be addressed, many cities and other local governments in this state and neighboring states will likely follow Wichita's lead and deny accommodations to Plaintiff Haulmark and others with hearing disabilities. By ensuring that Title II is being applied appropriately to the City of Wichita's services, programs, and activities, this Court can prevent such circumvention of Congressional intent and provide much-needed clarity to ensure that Plaintiff Haulmark and other individuals with hearing disabilities are protected from direct and indirect disability discrimination. (See ¶ 42 in Haulmark's Motion) (stating that Congress intended to enact the ADA in order "to provide a clear and **comprehensive** national mandate for the **elimination** of discrimination against individuals with disabilities and provide **broad** coverage.") (Emphases added) (Citing 42 U.S.C. § 12101(b)(1)-(2); *Findings and Purposes of ADA Amendments Act of 2008*, Pub. L. No. 110-325, Section 2, Sept. 25, 2008, 122 Stat. 3553); H.R. rep. 101-485, pt. 3, at (1990), reprinted in 1990 U.S.C.C.A.N. 445, at 449 (The ADA is "a comprehensive piece of civil rights legislation which promises a new future: a future of inclusion and integration, and the end of exclusion and segregation."). In

reviewing antidiscrimination laws such as the ADA, the Tenth Circuit has held that a court "'must be mindful of their remedial purposes, and liberally interpret their provisions to that end.'" *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, at 983 (10th Cir. 2002) (quoting *Wheeler v. Hurdman*, 825 F.2d 257, at 262 (10th Cir. 1987)).

## II.   STANDARD OF REVIEW

14.    Plaintiff Haulmark seeks review pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which provides, in pertinent part: "A party may serve and file objections to the order within 14 days after being served with a copy. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

15.    Upon revising a non-dispositive issue decided by a magistrate judge, "the district court [is] required to defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, at 566 (10th Cir. 1997)) (Internal quotations omitted). Under the clearly erroneous standard, "the reviewing court [must] affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Allen* at 658. (Internal quotations omitted).

16.    As a matter of utmost respect, the Order is clearly erroneous and contrary to the law on several grounds.

## III.   ARGUMENT

**Magistrate Judge James clearly erred in ruling that Title II of the ADA cannot apply to a private Facebook page.**

17.     In asking questions and quoting Title II of the ADA, Magistrate Judge James underlined public entity to imply a miscalculated point, that the services, programs, or activities must be *directly performed* by a public entity:

"The discovery dispute here is limited: Is discovery related to Whipple's private campaign Facebook page relevant to Plaintiff's ADA claims? Although the scope of relevancy is broad, if Title II of the ADA does not apply to the private campaign Facebook page of the Mayor, a public figure, then Plaintiff cannot show relevance. To state a claim under Title II, Plaintiff must allege (among other things) that he was 'excluded from participation in or denied the benefits of a <u>public entity's</u> services, programs, or activities.' If the information/livestream videos posted on Whipple's private campaign Facebook page do not constitute a public entity's services, programs, or activities, then content and other information about the page is not relevant."

18.     The questions presented in this decision are whether the "information/livestream videos posted on Whipple's private campaign Facebook page" is a service, program, or activity of a municipality, or instead a program solely of a political campaign. The result is a narrow, restrictive, and contradictory interpretation of Title II of the ADA.

19.     What should really be in question here to be revealed through the discovery process is whether Defendant Whipple, who is both a public figure **and** an elected government official, is providing at least a municipal benefit through his private Facebook page.

20.     Pursuant to this mandate, Title II of the ADA requires public entities to ensure people with disabilities are not "excluded from participation in **or denied the benefits** of the services, programs, or activities of a public entity" or otherwise discriminated against by such entity. 42 U.S.C. § 12132 (Emphasis added). "The statute says that disabled persons may not be denied the right to participate in **or receive the**

**benefits** of a public entity's [service, program, or activity]." *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla*, 693 F.3d 1303, 1307 (10th Cir. 2012) (Internal quotation marks omitted) (Emphasis added).

21.    In *Pennsylvania Dept. of Corrections v. Yeskey*, the Supreme Court interpreted the benefits of the "services, programs, or activities" of a public entity to mean the "services, programs, or activities" that the public entity **provides**. 524 U.S. 206, 118 S. Ct. 1952 at 210 (1998). In determining the meaning of a statute, courts consider the "language, giving the words used their ordinary meaning." *Moskal v. United States*, 498 U.S. 103, at 108 (1990) (Citing *United States v. Turkette*, 452 U.S. 576, at 580 (1981); *Richards v. United States*, 369 U.S. at 1, 9 (1962))

22.    The Merriam-Webster dictionary defines **provide** as to supply or make available (something wanted or needed). With that definition, a government benefit would be unavailable if an official of a public entity did not establish a program, service, or activity to provide it.

23.    A mayor's role is to connect with its citizens, to meet and interact "with the public to share the announcements, responses by the city, share critical health updates, and discuss important city business[,]" a function performed by the mayor's office when representing the City of Wichita. (See ¶ 66 in Haulmark's Motion); (See also ¶¶ 16-18 in Haulmark's Complaint); K.S.A. § 12-10a06 ("The mayor shall represent the city governing body at all official city functions, and shall be the official representative of the governing body at all meetings, conferences and negotiations relating to policy matters involving other governmental units and shall recommend council action relating thereto.")

24.     A private individual or organization cannot replicate the same function when using a private social media account that is currently performed by the mayor's office when using a private Facebook page. The benefits of a city that could only be provided by the mayor are what Plaintiff Haulmark alleges Defendant Whipple pragmatically **made available** on his private Facebook page.

25.     In Haulmark's Motion, Plaintiff Haulmark discussed the existence of public forums on social media platforms, such as Whipple's Facebook page, where government officials participate. A government official provides benefits to the public by virtually participating in a public forum when using live streaming video technology.

26.     On his private Facebook page, Defendant Whipple announced his intention to work from home and would make himself available to the public when performing his duties as Wichita's mayor on his private Facebook page. (See ¶ 81 in Haulmark's Motion) (Defendant Whipple clearly stated that he would use technology to provide the benefits of the city by providing "latest information and video updates."). In doing so, Defendant Whipple created a space where he is to interact with the public on Whipple's Facebook page, but only virtually. Public access to him is one of the City of Wichita's benefits provided to the public.

27.     During the COVID-19 pandemic that spread across the country, the City of Wichita has been providing municipal benefits through its mayor's office as a virtual means to meet with the public, share information, and to answer questions. Therefore, this public entity's service, program, or activity takes place on this private Facebook page. However, Plaintiff Haulmark and those with a hearing disability cannot benefit from the

same service, program, or activity. This is because the Defendants fail to implement reasonable modifications requested by Plaintiff Haulmark under Title II. As a result, Plaintiff Haulmark is intentionally excluded from and denied the benefits of this service, program, or activity. Plaintiff Haulmark's motion includes the borrowed analogy in which the bowls represent the benefits. (See ¶ 93 in Haulmark's Motion)

28.     To illustrate this contrast, Governor Cuomo provides benefits for the State of New York, while Defendant Whipple provides benefits for the City of Wichita. In spite of Defendant Whipple's services being identical to those provided by Governor Cuomo, the benefits Defendant Whipple provides are made available on a private Facebook page. *Martinez v. Cuomo*, 459 F. Supp. 3d 517, at 525 (S.D.N.Y. 2020) ("In other words, without in-frame ASL interpretation, Plaintiffs are, as a practical matter, unable to access **benefits** to which they are legally entitled.") (Internal quotation marks omitted) (Emphasis added) (*Citing Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)). In order to establish a Title II defense, for instance, the Defendants must demonstrate that the **same** municipal benefits provided on Whipple's Facebook page are also made available on the City's official social media accounts.

29.     Accordingly, Defendant Whipple's decisive provision of a service, program, or activity on his private Facebook page by his mayoral office is firmly within Title II's scope.

30.     Therefore, this private Facebook page is highly relevant to Plaintiff Haulmark's discovery.

**Magistrate Judge James clearly erred with the failure to apply the provision of ADA, prohibiting the City of Wichita from aiding Defendant Whipple's political campaign to discriminate against Plaintiff Haulmark and other individuals with a disability.**

31.     As a result of focusing intensively on the statutory references to the use of public entity that gave her pause, Magistrate Judge James compared many of Plaintiff Haulmark's cited Title II cases without taking into account how benefits flow from these public entities. Defendant Whipple's activities on Whipple's Facebook page appear to be treated as strictly private in the Order. Despite the allegation that a mayor can provide benefits only a mayor can offer, the public is able to reap such benefits.

32.     Title II regulations require a public entity to provide nondiscriminatory access to its benefits "directly or through contractual, licensing, or other arrangements." 28 C.F.R. 35.130(b)(1) and 41.51(b)(1); (See also ¶ 66 in Haulmark's Complaint) (Docket No. 1). It is clear from the reference to "other arrangements" that a formal agency or contract agreement is not necessary. 28 C.F.R. 35.130(b)(1) and 41.51(b)(1); Department of Justice's Title II Technical Assistance Manual[2], Section II-1.3000 Relationship to Title II (hereinafter "the DOJ's Manual").

33.     There was a discrimination case originally filed by an individual with hearing disabilities in Texas that involved the requirement of obtaining a driver education certificate, provided by private driver education schools licensed by the Texas Education Agency, to complete the Texas Transportation Code requirements, which the Fifth Circuit reversed and decided to dismiss after the Texas's district court denied the defendant's motion to dismiss the case. *Ivy v. Williams*, 781 F.3d 250 (5th Cir. 2015). The Fifth Circuit found that the required driver education was not a "service, program, or activity" of the Texas Education Agency for the purposes of Title II, despite the fact that the driver

---

[2] Department of Justice's Technical Assistance Manual, https://www.ada.gov/taman2.html

education was heavily regulated and supervised by the Texas Education Agency. *Williams*, 781 F.3d at 255. In their appeal to the Supreme Court, plaintiffs argued that the Fifth Circuit had overlooked how the Texas Education Agency and private driver education schools intertwined. However, the Supreme Court vacated the Fifth Circuit's decision and ordered the case to be dismissed on different grounds: the five plaintiffs had either completed driver's education courses or moved out of Texas. *Ivy v. Morath*, 137 S. Ct. 414, (2016).

34.     As one of instances, Defendant Whipple's political campaign provides a benefit or service to beneficiaries of the City of Wichita's service, program, or activity, an opportunity to interact with the mayor in his official capacity. 28 C.F.R. § 35.130(b)(1)(v) ("A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability [. . . a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program"); *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181, at 1187 (D. Colo. 1998) (stating that the arrangement to provide services to public entity beneficiaries was the crucial factor in determining whether Title II applies); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, at 1344 (N.D. Cal. 1993) (Holding that "[t]he crucial distinction" that rendered the public entity liable for a private entity's inaccessibility was that the public entity "ha[d arranged] with [a private entity] for [it] to

provide aid, benefits, or services to beneficiaries of the" public entity's mayoral office and other municipal functions.)

35.     Allegedly, Defendant Whipple has an arrangement with the City of Wichita and his political campaign to use a private Facebook page for public engagement. (See ¶ 91 in Haulmark's Motion).

36.     Those regulations and Defendant Whipple's decisive use of the private Facebook page confirm that the City of Wichita is responsible for ensuring that Plaintiff Haulmark and individuals with hearing disabilities have nondiscriminatory access to the municipal benefits being provided through its mayor on his private Facebook page. Therefore, the City of Wichita exercises comprehensive control over its benefits, but relies on the use of a private Facebook page at the mayor's discretion to implement and provide the benefits of its mayor's interaction with the public. *Tyler v. City of Manhattan*, 849 F. Supp. 1429, at 1441 (D. Kan. 1994) (This Court pointed out that the claimed benefits must flow from any act of the City in the manner it conducts those activities.).

37.     The City of Wichita's role in providing public briefings as one of the benefits on its mayor's private Facebook page is inextricably linked to its mayor's role in providing them, which satisfies the close relationship requirement set forth in the DOJ's Manual to trigger Title II obligations for this private entity, in control of this private Facebook page. See also *Williams*, 781 F.3d at 260 (Wiener, J., dissenting) ("The critical issue is not whether a contract exists, but (1) whether a private party services the beneficiaries of the public entity's program, and (2) how extensively the public entity is involved in the functions and operations of the private entity. If the private entity does so serve, and the

public and private entities are closely intertwined, then under those particular
circumstances, the private entity's activities might be fairly considered an integral and
inseparable part of the public entity's program.")

38.     Plaintiff Haulmark plans to show how Whipple's Facebook page provides
municipal benefits to the public after the discovery process is completed. The municipal
benefits are allegedly provided with the use of these online live videos on Whipple's
Facebook page, including information shared by Defendant Whipple on behalf of the City
of Wichita, public feedback, and development of the City. The regulations of Title II state
that the City of Wichita must operate in a manner that their services, programs, and
activities, "when viewed in [their] entirety," are compliant with Title II. 28 C.F.R. §
35.150(a)

39.     Furthermore, Plaintiff Haulmark respectfully disagrees with the opinion of
Magistrate Judge James that Plaintiff Haulmark must focus exclusively on the reference
of public entity in the statutory language of Title II when determining the location of a
service, program, or activity, so he should conduct his discovery on this private Facebook
page in order to obtain and present evidence showing that Defendant Whipple is providing
the City of Wichita's benefits through the use of his private Facebook page. Plaintiff
Haulmark will then show that the City of Wichita's policies, or a lack thereof, failed to
secure nondiscriminatory access to the municipal benefits made available on Whipple's
Facebook page.

40.     If Plaintiff Haulmark meets the burden of proving that Defendant Whipple made available the municipal benefits on Whipple's Facebook page, the Defendants must demonstrate that all of these benefits were created by a private party.

41.     Therefore, Whipple's Facebook page is highly relevant to Plaintiff Haulmark's discovery.

**Magistrate Judge James clearly erred when considering a possible injunction against a private entity.**

42.     In Magistrate Judge James' decision, she erroneously assumes that Plaintiff Haulmark "seeks injunctive relief relating to the Mayor's **personal campaign** Facebook page." (Emphasis retained). Magistrate Judge James may be correct in saying that an injunction under Title III may cause undue burden. In other words, private entities and places of accommodation may claim undue burden as one of their Title III defenses.

43.     Reviewing all of Plaintiff Haulmark's briefings that were filed in this Court as a lawsuit against two parties, both being the proper defendants under Title II of the ADA, Plaintiff Haulmark cannot find any indication that he has stated that he seeks remedies to redress his alleged injuries to compel a private entity, such as this political campaign. However, within Defendant Whipple's Response to Plaintiff's Motion to Compel, there are some asserted defenses as to how Title II cannot reach into a private Facebook page. This may have created an implication that Title III remedies are sought by Plaintiff Haulmark. (See Response by Defendant Brandon Whipple) (Docket No. 32) (hereinafter "Whipple's Response").

44 .     While political campaigns may be subject to the requirements of Title III, the City of Wichita has its own ADA-required affirmative responsibility for ensuring that

individuals with hearing disabilities can obtain the benefits provided by its mayor on a private Facebook page. The City of Wichita is well positioned to take affirmative steps, as required by Title II. Title II is to ensure that individuals with hearing disabilities have access to the benefits provided by its mayor without discrimination.

45.     In response to Defendants' failure to comply with Plaintiff Haulmark's request for reasonable modifications for effective communication with these virtual services, programs, or activities, Plaintiff Haulmark has filed this lawsuit to seek several remedies. The remedies available under Title II, however, apply only to the public entity, the City of Wichita. Plaintiff Haulmark has not requested an injunction under Title III to be applied to Defendant Whipple's "personal campaign Facebook account."

46.     As part of this requested injunction relief, available under Title II, the City of Wichita must adopt policy language prohibiting its employees and elected officials, including the current and future mayors, from discriminating against individuals with hearing disabilities based on their disabilities in the course of performing municipal duties anywhere, including on a private Facebook page or on other private social media platforms.

47.     The City of Wichita must also adopt requirements and make use of its resources to ensure that employees and elected officials posting videos and/or audio recordings to their personal social media accounts relating to the City of Wichita's official business are provided with appropriate auxiliary aids and services, as mandated by Title II.

48.     A city mayor being the head of a public entity is allegedly in full control of every aspect of his private Facebook page. Therefore, a Title II injunction is able to compel this mayor to ensure that individuals with a hearing disability have nondiscriminatory access to the benefits being provided through his private Facebook page. On the other hand, the mayor must ensure that all of the City of Wichita's benefits provided on the private Facebook page are also provided on the official social media platforms of the City of Wichita. See 28 C.F.R. § 35.130(b)(1) and (4) ("A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability " and a "public entity may not, in determining the site or location of a facility, make selections [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.").

49.     This case is significant because it is to eliminate a public entity's ability to avoid Title II responsibility through various arrangements with any private entities.

50.     Therefore, this private Facebook page is highly relevant to Plaintiff Haulmark's discovery.

## IV.   CONCLUSION

51.     The problem that Plaintiff Haulmark faces, which is exacerbated by the Order, is that Plaintiff Haulmark has been held to a higher standard than what is appropriate at this stage of the litigation. By giving the Defendants the benefit of the doubt, Plaintiff Haulmark, at the very least, demonstrated that all of his twelve requests related to Defendant Whipple's private Facebook page "may be relevant" to the case.

52.     On the face of them, Plaintiff Haulmark's twelve requests are relevant. It is an ADA Title II action involving a government official, more specifically, a mayor. This is because he is legislatively authorized to represent a city at meetings, including those virtual meetings on his private Facebook page. Plaintiff Haulmark, in his motion to compel, explains that the documents and communications Plaintiff Haulmark requests for production relate to whether Defendant Whipple provides the City of Wichita's benefits as the mayor on his private Facebook and, at the same time, whether or not the City of Wichita discriminates against Plaintiff Haulmark based on his disability. "Even if the evidentiary value is slight, this meets the low threshold established by rule 26. Thus, [Defendant Whipple] bears the burden of showing the evidence is outside the scope of rule 26(b)(1)." *Stonebarger v. Union Pac. R.R. Co.*, Case No. 13-2137-JAR-TJJ, *7-8 (D. Kan. Jan. 5, 2015).

53.     In the end, Plaintiff Haulmark intends to establish that the real source of benefits, which are offered on the private Facebook page of Defendant Whipple, is the City of Wichita. To suggest this discovery of the private Facebook page remains off-limits rewards the Defendants' legal maneuvering tactics and encourages the future use of this loophole by public entities, especially when Congress created the ADA with the intent to eliminate and avoid disability discrimination. The Order runs contrary to the law and should not be ignored. Surely Magistrate Judge James did not intend for this to happen, nor does it constitute a just or fair outcome of the case.

WHEREFORE, Plaintiff Haulmark respectfully requests that this Court grant Plaintiff Haulmark's Motion to Review to set aside Magistrate Judge James' Order (Doc. 32), order

Defendant Whipple to fully respond to all Plaintiff Haulmark's twelve requests within thirty days from the date of the issuance, to bar the Defendants from raising any objections to any future discovery requests related to Defendant Whipple's private Facebook page, to extend the fact and expert discovery deadlines to be ninety days from the date of court order, and for such other relief as this Court deems proper.

----------------------------------------------------------------

Respectfully submitted this 17th of May 2022

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th of May 2022, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and to each of the following:

Erik S. Houghton,
455 North Main
13th Floor
Wichita, KS 67202
*Attorney for Defendant City of Wichita*

Randall K. Rathbun
Depew, Gillen, Rathbun & McInteer, LC
8301 E. 21st St., Ste. 4500
Wichita, KS 67206-2936
*Attorney for Defendant Brandon Whipple*

/s/ChrisHaulmark
PLAINTIFF, pro se