# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHRIS HAULMARK**, Plaintiff, | ) | |
| V. | ) | |
| **CITY OF WICHITA**, | ) | |
| and | ) | |
| **BRANDON WHIPPLE**, in his official | ) | Civil Action No.  21-1182-EFM-TJJ  |
| capacity as the Mayor of the | ) | |
| City of Wichita, | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REVIEW MAGISTRATE JUDGE'S ORDER

## I.   INTRODUCTION

1.      As set forth in his complaint, Plaintiff Chris Haulmark asserted a prima facie case of discrimination under Title II of the Americans with Disabilities Act (hereafter "ADA" or "Title II"), including allegations regarding the ongoing discriminatory actions of the Mayor of the City of Wichita on his private Facebook page. (See Haulmark's Complaint) (Docket No. 1) Plaintiff Haulmark alleges in his complaint that the City of Wichita intentionally excludes or denies Plaintiff Haulmark access to municipality's benefits made available on Defendant Brandon Whipple's private Facebook page[1] (hereinafter "Whipple's Facebook page"). Plaintiff Haulmark is being injured as a direct result of the intentional discrimination perpetrated by the City of

---

[1] Facebook Page of Defendant <u>Brandon Whipple</u>, https://www.facebook.com/VoteWhipple

Wichita through the actions of its mayor. This Court must take Plaintiff Haulmark's allegations at this stage of the discovery process as true.

2.      By attacking Plaintiff Haulmark's status as a pro se litigant, Defendant Whipple attempts to muddy the application of Title II of the ADA by creating confusion about how Plaintiff Haulmark's filings are to be read. Defendant Whipple, for instance, mockingly asserts that Plaintiff Haulmark is the solo expert of the ADA in this country. Defendant Whipple's self-serving assertions that ADA is not applicable are simply dishonest.

3.      Additionally, Defendant Whipple attempts to introduce an element under Title II of the ADA: private social media accounts to be a safe harbor for the city's services, programs, or activities. While there is no textual basis of Title II to import such a limitation, this is all part of Defendant Whipple's strategy to avoid compliance with Rule 26 and other rules relating to discovery of the Federal Rules of Civil Procedure.

4.      Defendant Whipple admits and does not dispute that he modified the service, program, or activity of the City of Wichita's communication and interaction with the public by moving them to his private Facebook page in order to evolve as the City of Wichita's response to the COVID-19 pandemic. By doing this, Defendant Whipple has integrated in his campaign speeches and activities in this service, program, or activity. Defendant Whipple does not dispute the existence of the municipality benefits on his private Facebook page. Defendant Whipple does not dispute that disability-based discriminations are taking place on Whipple's Facebook page against Plaintiff Haulmark and other individuals with a hearing disability.

5.     Moreover, Defendant Whipple ignores that many unique questions regarding the ADA are asked and answered on a case-by-case basis in the courts across the nation. Therefore, it is not appropriate to insist on Plaintiff Haulmark presenting a single case that involves questions regarding public officials' use of private social media accounts under Title II of the ADA. See *Ivy v. Williams*, 781 F.3d 250, at 256, (5th Cir. 2015), *cert. granted sub nom.*, *Ivy v. Morath*, 136 S. Ct. 2545 (2016), *vacated and remanded sub nom.*, *Ivy v. Morath*, 137 S. Ct. 414 (2016) (In order to determine if a public entity is liable for private driver education schools' actions discriminating against individuals with a hearing disability, plaintiffs did not need to cite a driving school case. Instead, they cited two lottery cases as the primary authority to be analyzed in parallel with private driving schools as the private entities discriminating against individuals with a hearing disability.) (Citing *Winborne v. Va. Lottery*, 278 Va. 142, 677 S.E.2d 304, at 307–08 (2009); *Paxton v. State Dep't of Tax & Revenue*, 192 W.Va. 213, 451 S.E.2d 779, at 784–85 (1994))

6.     In a similar vein, Plaintiff Haulmark pointed to several Section 1983 cases to parallelize that public officials' speech and activities on their private social media accounts are treated as government benefits coming from their public offices. These benefits would fall under Title II as programs, services, and benefits.

7.     With all due respect to this Court, Magistrate Judge James made an erroneous decision by disregarding how the ADA must be interpreted broadly to enable individuals with a hearing disability to be included and integrated in society, as promised by Congress. Plaintiff Haulmark is not being given a chance to fully complete

discovery and to present legal authorities, arguments, and supporting evidence. This is because Magistrate Judge James allowed the Defendants' unchallenged defenses while barring Plaintiff Haulmark from obtaining necessary evidence through discovery to rebut the Defendants' defenses. This is contrary to the Federal Rules of Civil Procedure and the law of this district.

8.     This Court has no role in preventing Plaintiff Haulmark from obtaining evidence to counter the Defendants' defenses under Title II. This Court also has no role in determining whether these Title II coverages are applicable when determining the applicability of Rule 26 and other rules related to discovery. On the other hand, this Court must examine whether a public official of a public entity makes the benefits of the public entity available through a private social media platform. The evidentiary value of this fact must be weighted, and if the needle moves, it has met the low threshold established by Rule 26. See *Stonebarger v. Union Pac. R.R. Co., Case No. 13-2137-JAR-TJJ*, at \*7-8 (D. Kan. Jan. 5, 2015). ("Even if the evidentiary value is slight, this meets the low threshold established by rule 26.")

9.     Title II of the ADA is fully applicable for enjoining the City of Wichita to cease its mayor's ongoing discriminatory practices found on this private Facebook page, as well as elsewhere, if Plaintiff Haulmark's allegations regarding Defendant Whipple's private Facebook page are shown to be true after the litigation has been completed.

10.     It is clear that Defendant Whipple is seeking to exploit the Magistrate Judge's erroneous decision in order to circumvent the Congressional intent of the ADA, which is a comprehensive law prohibiting public entities from discriminating against

Plaintiff Haulmark and other people with a hearing disability. See *Tyler v. City of Manhattan*, 118 F.3d 1400, 1415 (10th Cir. 1997) ("Title II is a remedial, civil rights statute and, as such, should be broadly construed.")

## II.   ARGUMENT

11.   Defendant Whipple argues that the private Facebook page is irrelevant to discovery under Rule 26 and other rules related to discovery because he seems to argue that the City of Wichita and his mayoral office are entirely immune from liability for his actions while his official government speech and activities are located on his private Facebook page. If Defendant Whipple disagrees with the allegations and legal theories of Plaintiff Haulmark, this disagreement should not be allowed to restrict the scope of discovery allowed by the Federal Rules of Civil Procedure and this district's law.

12.   As the counsel for Defendant Whipple continues to display arrogance in his response, Plaintiff Haulmark must be held to only the discovery standards at this time. Plaintiff Haulmark refuses to accept Defendant Whipple's psychological projection of Plaintiff Haulmark as the sole expert in Title II practice in this country. There have been many attorneys representing defendants who have misinterpreted the ADA for over thirty years. This is because the ADA was enacted to be interpreted broadly to prohibit discrimination. In many courts, disputes have been settled when two sides disagree on how a law should be interpreted. This is likely what will happen in this case, which requires a court proceeding to undo poor legal advice given to the Defendants.

13.     Defendant Whipple has not disputed the "City of Wichita's role in providing public briefings as one of the benefits on its mayor's private Facebook page is inextricably linked to its mayor's role in providing them[.]" (See ¶ 37 in Plaintiff Haulmark's Motion for Review Magistrate Judge's Order and Memorandum in Support) (Docket No. 37) (hereinafter "Haulmark's Motion for Review"); (See also ¶¶ 50-51 in Plaintiff Haulmark's Motion to Compel Discovery from Defendant Whipple and Brief in Support) (Docket No. 28) (hereinafter "Haulmark's Motion to Compel"); (See also ¶¶ 1, 18, 33-37 in Haulmark's Complaint) (Docket No. 1)

14.     Plaintiff Haulmark exhibited that Defendant Whipple announced on his private Facebook page that he has moved from his office to his home. He continues to perform his duties by providing updates of his office and the city on his private Facebook page, which Defendant Whipple does not dispute. (See ¶¶ 80-81 in Haulmark's Motion to Compel); (See also ¶ 26 in Haulmark's Motion for Review)

15.      In his response, Defendant Whipple admits that his communication and interactions with the public have continued, but have evolved following the arrival of COVID-19. (See Response by Defendant Whipple at 4-5) (Docket No. 40) (hereinafter "Whipple's Response") As admitted, Defendant Whipple began using his private Facebook page as "the modern public square" instead of the City of Wichita's official channels to communicate and interact with the public. *Packingham v. North Carolina*, 137 S. Ct. 1730, at 1737 (2017) In fact, Defendant Whipple does not dispute and admits in his response that he communicates and interacts with the public on his private

Facebook page, including things being shared about what he has done as both the mayor and in running for office.

16.     Like a mixture of water and oil, one will be a campaign speech and the other will be a government speech. The only way that a campaign can be run without oil being involved in the mix is when the running candidate is not an elected official. Therefore, Title II would not apply since this candidate does not represent a public entity as a public official. This is contrary to Defendant Whipple, who is the elected mayor of Wichita. As a public official, Defendant Whipple cannot assert that water is completely separated from oil on his private Facebook page and then claim that Title II does not apply to any of his actions pertaining to the mixture of his government and campaign speech and activities on his private Facebook page.

17.     Defendant Whipple does not dispute Plaintiff Haulmark's allegations that Defendant Whipple moved the offering of the City's benefits from the "Mayor's Page controlled by the City" to "Brandon Whipple's campaign Facebook page." Plaintiff Haulmark asserts that Defendant Whipple's decision to move these municipality benefits shows his desire to sidestep Title II compliance. Defendant Whipple appears to argue that he or the City of Wichita escapes liability for his actions because his government activities and speech are located on his private Facebook page. However, Defendant Whipple admits that by establishing a private social media account as a safe harbor he intends to set an example for other public officials to avoid meeting the requirements of Title II of the ADA, contrary to what Congress intended.

18.     Plaintiff Haulmark has alleged, through his filings in the case, that the City of Wichita is potentially liable for harm because of the discriminatory conduct of its mayor, which is occurring on Whipple's Facebook page. In addition, the City of Wichita may potentially be ordered to implement reasonable modifications. This is so that Plaintiff Haulmark is no longer excluded from and denied the benefits of the city mayor's communication and activities on Whipple's Facebook page.

19.     Additionally, Plaintiff Haulmark has explained how public entities can be held liable for harm because of the disability-based discriminatory actions of private entities. When explaining this, Plaintiff Haulmark alleges that both the City of Wichita and Defendant Whipple's campaign are working together through Defendant Whipple, who is both the mayor and candidate, "directly or through contractual, licensing, or other arrangements." 28 C.F.R. 35.130(b)(1) and 41.51(b)(1). (A municipality is liable for harm because of disability-based discrimination in its programs, services, or activities even when it provides them through contractual, licensing, or other arrangements.)

20.     Plaintiff Haulmark alleges that the City of Wichita caused harm by arranging for the mayor to conduct one of its services, programs, or activities on a private Facebook page on which the public can communicate and interact with him. Communication and interaction with the public are among the City's services, programs, or activities. Defendant Whipple does not dispute that he made the arrangement between the city and the campaign to work from home and use his private Facebook page to communicate with the public. This arrangement makes the city liable

for harm under Title II if the campaign discriminates against individuals with a hearing disability.

21.     When considering the applicability of 28 C.F.R. 35.130(b)(1) and 41.51(b)(1), it does not matter whether Defendant Whipple is performing directly for the City of Wichita on his private Facebook page. As long as Defendant Whipple acted within the scope of a City of Wichita program, service, or activity, the City of Wichita is responsible for any similar actions Defendant Whipple takes elsewhere. Because of this, Plaintiff Haulmark's ADA claims have a chance of success to hold the City of Wichita liable for its mayor's communication and interaction with the public.

22.     Public entities cannot license, contract, or arrange away their ADA obligations. See *Marks v. Colorado Department of Corrections*, 976 F.3d 1087, at 1096-1097 (10th Cir. 2020) (In this case, the Tenth Circuit decided whether a public entity is liable for the harm caused by discrimination committed by its contractor. The Tenth Circuit ruled that a public entity could not contract away its liability under Title II of the ADA and that the state department of corrections could be held responsible for discrimination committed by its subcontractor, the community corrections program. Regardless of the structure and staffing of a public entity, it maintains its legal duties and is responsible for any harm caused by its services, programs, and activities.)

23.     Defendant Whipple has not disputed, and admits that his online streaming videos do not contain captions or any other auxiliary aids or services to ensure that Plaintiff Haulmark and other individuals with hearing disabilities can benefit from them. In his response, Defendant Whipple suggests that Plaintiff Haulmark should

obtain communication access on his own, contrary to Title II's requirements, in order to use YouTube's automatic captioning services after taking extensive measures that other individuals without hearing disabilities do not have to take. (See Whipple's Response at 6) ("All can be downloaded to YouTube, where they are then closed captioned.")

24.     Regardless, Plaintiff Haulmark maintains that he can't view Whipple's Facebook page, and cannot obtain the videos or any other information necessary to follow the ADA-incompatible instructions to gain communication access or complete discovery. (See ¶ 84(G)) in Haulmark's Complaint) Defendant Whipple has not disputed the banning of Plaintiff Haulmark from Whipple's Facebook page in any of his filings.

25.     As a result of the ban, Plaintiff Haulmark is prohibited from accessing Defendant Whipple's private Facebook page for the limited purpose of gathering evidence relevant to the ADA claims and allegations contained in Haulmark's Complaint.

26.     A competent attorney will understand that a court order granting an injunction would affect every employee of the public entity, including the mayor, in order to bring the entire public entity into full compliance with the law. Defendant Whipple's paranoia that this case may set a precedent to create a domino effect on other government actors should not be taken into account at this point since it is not a defense available under Rule 26.  In fact, the defenses being offered by Defendant Whipple make Facebook pages relevant under Rule 26.

27.     In light of this, any argument asserting that a municipality is exempt from Title II if it provides a program through an arrangement with a private entity such as a political campaign lacks any foundation. The City of Wichita will have to use the full range of its authority to address any allegations of discrimination in any of its programs, services, or activities as a consequence of the potential order that could be issued at the conclusion of litigation.

28.     In this case, it's not a question of what the ADA should be, but what it already is.

### III.    CONCLUSION

29.     Magistrate Judge James' Order depends on a pretense that Title II cannot reach into a private Facebook page. The Title II of the ADA regulation specifies that Title II "applies to **all** services, programs, and activities provided or made available by public entities" and that a "public entity, in providing **any** aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements" discriminate on the basis of disability. 28 C.F.R. §§ 35.102(a), 35.130(b)(1) (Emphasis added); See also *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998).

30.     Plaintiff Haulmark has demonstrated that Title II may apply to the City of Wichita, a public entity, in order to enforce its mayor's actions on Whipple's Facebook

page. Plaintiff Haulmark has explained in his motions why and how his discovery requests will enable him to collect and present evidence to show that Defendant Whipple's activities and speech on Whipple's Facebook page contain benefits of a public entity, that he and others with a hearing disability are entitled to under Title II of the ADA.

31.    Plaintiff Haulmark explained how the city mayor's activities and speech on Whipple's Facebook page are related to Plaintiff Haulmark's ADA claims, showing how Title II can apply to the mayor's activities and speech offered to the public as benefits on behalf of the City of Wichita, and aims to establish a pattern and practice of unlawful discriminatory acts taken by the City of Wichita. Plaintiff Haulmark met his burden of demonstrating that the requests for discovery could bear "any possibility" of being relevant to his ADA claims and to the Defendants' defenses. See *Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016)

32.    Defendant Whipple has not demonstrated that the evidence that Plaintiff Haulmark are pursuing are outside the scope of Rule 26 because, for instance, Defendant Whipple has not denied that government speech and activities are located on his private Facebook page. See *Stonebarger v. Union Pac. R.R. Co., Case No. 13-2137-JAR-TJJ*, at *7-8. ("Even if the evidentiary value is slight, this meets the low

threshold established by rule 26. Thus, [Defendant Whipple] bears the burden of showing the evidence is outside the scope of rule 26(b)(1).")

33.    Again, "[r]elevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Waters* at *1 (Internal quotations and citation omitted). During this discovery phase, Plaintiff Haulmark easily met his burden when he provided specific reasons why each of his requests regarding Whipple's Facebook page are relevant to the claims and defenses in this case.

WHEREFORE, Plaintiff Haulmark respectfully requests that this Court grant Plaintiff Haulmark's Motion to Review to set aside Magistrate Judge James' Order (Doc. 32), order Defendant Whipple to fully respond to all Plaintiff Haulmark's twelve requests within thirty days from the date of the issuance, to bar the Defendants from raising any objections to any future discovery requests related to Defendant Whipple's private Facebook page, to extend the fact and expert discovery deadlines to be ninety days from the date of court order, and for such other relief as this Court deems proper.

-----------------------------------------------------------------

Respectfully submitted this 13th of June 2022

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th of June 2022, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and to each of the following:

Erik S. Houghton,
455 North Main
13th Floor
Wichita, KS 67202
*Attorney for
Defendant City of
Wichita*

Randall K. Rathbun
Depew, Gillen, Rathbun &
McInteer, LC
8301 E. 21st St., Ste. 4500
Wichita, KS 67206-2936
*Attorney for Defendant
Brandon Whipple*

/s/ChrisHaulmark
PLAINTIFF, pro se