IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRIS HAULMARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 6:21-cv-01182-EFM-TJJ |
| ) | |
| CITY OF WICHITA, and ) | |
| BRANDON WHIPPLE, in his official ) | |
| capacity as the Mayor of the City of ) | |
| Wichita, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF WICHITA'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

COMES NOW Defendant City of Wichita ("Defendant City" or "City") to submit this memorandum in support of their motion to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Defendant moves for summary judgment pursuant to Federal Rule 56 and D. Kan. Rule 56.1 because of the lack of genuine dispute as to any material fact.

**I.      NATURE OF THE MATTER BEFORE THE COURT**

The fundamental issue presented by this Motion is whether Plaintiff can state a cause of action under Title II of the Americans with Disabilities Act ("ADA") – which applies only to public entities pursuant to 42 U.S.C. §12131(1) – because of videos created and posted by Defendant Brandon Whipple ("Defendant Whipple") to his personal campaign Facebook page merely because Defendant Whipple is the Mayor of the City of Wichita.

Plaintiff claims that the personal campaign Facebook content posted by Defendant Whipple subjects Defendants to liability under Title II of the ADA. In doing so, Plaintiff confuses Defendant

1

City as a public entity – which includes official acts of Defendant Whipple as Mayor – with Defendant Whipple as a person. Tellingly, Plaintiff does not make any allegations about the official mayoral Facebook page controlled by the City. The Facebook content on Defendant Whipple's personal campaign Facebook page does not fall under the control and responsibility of the City. Indeed, Kansas state campaign finance law at K.S.A. 25-4169a prohibits the City from providing services or funds in support of any political candidate's personal campaign.

Further, before receiving notice of the Complaint and its allegations, Defendant City already provided reasonable accommodations under the ADA for social media content that falls under the City's control and responsibility. After Plaintiff filed the Complaint, the City took additional steps toward accommodation. The City has provided reasonable accommodations as requested by Plaintiff, which renders Plaintiff's cause of action legally untenable.

Because Plaintiff has failed to state a claim under the ADA, Defendant City seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant City requests summary judgment under Federal Rule 56 and D. Kan. Rule 56.1.

**II.     STATEMENT OF UNDIPSUTED MATERIAL FACTS**

1. Plaintiff Chris Haulmark filed their Complaint on July 27, 2021. Dkt. 1.

2. Defendant City of Wichita was named in the Complaint, as well as Defendant Brandon Whipple, "in his official capacity as the Mayor of the City of Wichita." Dkt. 1.

3. Defendant City of Wichita is a city and municipality organized under the laws of the State of Kansas, and a public entity pursuant to the ADA. Dkt. 1, ¶¶ 12 & 75.

4. Defendant Whipple has "three different Facebook pages: (1) The Mayor's Page controlled by the City, (2) Brandon Whipple's personal Facebook page, and (3) Brandon

Whipple's campaign Facebook page controlled by Whipple for Mayor, Chelsea Whipple, Treasurer." Dkt. 32 at 2.

5. Defendant City has two social media accounts that are at issue in the Complaint: (1) Facebook page, and (2) YouTube page. Dkt. 1, ¶¶ 38–46.

6. Defendant City operated its Facebook page prior to Defendant Whipple becoming mayor of the City. Dkt. 1, ¶ 15.

7. An auto-caption service is provided by Facebook and YouTube for certain videos posted on their respective platforms. Dkt. 1, ¶ 45; Affidavit of Tyler Schiffelbein in Support of Motion ("Schiffelbein Affidavit"), ¶ 3, filed concurrently.

8. At all times preceding and through this case, Plaintiff has not been banned from Defendant City's Facebook page. Dkt. 1, ¶ 41.

9. At all times preceding and through this case, Plaintiff has not been banned from Defendant City's YouTube page. Dkt. 1, ¶ 44.

10. Prior to Defendant City receiving notice of Plaintiff's allegations or the filing of the Complaint, Defendant City already offered captioning services provided by a third-party vendor for pre-recorded and live videos posted by Defendant City to social media pages under the control and responsibility of Defendant City. Schiffelbein Affidavit, ¶ 2.

11. Prior to Defendant City receiving notice of Plaintiff's allegations or the filing of the Complaint, Defendant City was already in the process of researching and evaluating additional captioning equipment for pre-recorded and live videos posted by Defendant City to social media pages under the control and responsibility of Defendant City. Schiffelbein Affidavit, ¶ 5.

12. After receiving Plaintiff's Complaint, Defendant City purchased and installed for use captioning equipment that provides in-house captioning for pre-recorded and live videos

3

posted to social media pages under the control and responsibility of Defendant City. This equipment was installed and became operational with the City in November 2021. Schiffelbein Affidavit, ¶ 5–6.

13. In the hyperlink for the personal campaign Facebook page of Defendant Whipple, the page is identified as "https://www.facebook.com/VoteWhipple." Dkt. 1, ¶ 15, n.2.

14. The personal campaign Facebook page of Defendant Whipple identifies the page as "Brandon Whipple," and includes an email address and phone number that are not associated with Defendant City of Wichita. The current banner picture on the personal campaign Facebook page includes Defendant Whipple's three children, as well as a smaller picture of Defendant Whipple and his wife. The personal campaign Facebook page of Defendant Whipple links to a donation and support page for Defendant Whipple as a political candidate at the domain "linktr.ee/VoteWhipple." Schiffelbein Affidavit, ¶ 7.

### III. STATEMENT OF ISSUES

The issues presented are whether Defendant City is entitled to judgment as a matter of law – either for failure by Plaintiff to state a claim upon which relief may be granted or, in the alternative, to identify a genuine dispute of material fact – because:

1. Defendants cannot be held liable under Title II of the ADA based only on social media content posted on Defendant Whipple's personal campaign Facebook page.

2. Defendant City has provided reasonable accommodations for its own Facebook and YouTube pages.

IV.     **ARGUMENT AND AUTHORITIES**

  A.    **Standard of Review**

For a motion to dismiss under Federal Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009); *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). Yet, Plaintiff must allege more than a sheer possibility that Defendants have acted unlawfully. *Iqbal* at 678. To survive a motion to dismiss, the Complaint must contain sufficient factual matter to state a claim that is plausible – and not merely conceivable – on its face. *Id.* at 679–680. This determination asks the Court to apply its judicial experience and common sense, and the Court need not accept as true those allegations which state only legal conclusions. *Id.* at 678–679.

For summary judgment under Federal Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Such a showing may be made by "citing to particular parts of materials in the record" or by proper affidavit. Fed. R. Civ. P. 56(c)(1), (4). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Waller v. Waller*, 656 F. App'x 901, 904 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (citation and quotations omitted). Where, as here, the nonmovant will bear the burden of proof at trial, the nonmovant must "go beyond the pleadings

5

and designate specific facts" supporting an essential element to survive summary judgment. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted).

**B.    Plaintiff Has Failed to Plausibly Plead or Raise a Genuine Dispute as To The "Public Entity" Element of Their ADA Cause of Action.**

For a cause of action under Title II of the ADA, Plaintiff must plausibly allege "that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). This Motion focuses on the second element: whether Plaintiff was denied "meaningful access" to the services of a "public entity" as defined at 42 U.S.C. §12131(1). *Robertson* at 1195.

In the Complaint, Plaintiff has offered two theories to satisfy the "public entity" element of their ADA cause of action. First, Plaintiff claims that Defendants are liable for content posted to Defendant Whipple's personal campaign Facebook page simply because Defendant Whipple is the Mayor of Wichita. As to Defendant City, Plaintiff alleges that Defendant City "as the public entity is liable based on the actions of its Mayor, Defendant Whipple." Dkt. 1, ¶ 76. As to Defendant Whipple, Plaintiff alleges that "Defendant Whipple acts as an individual in his official capacity in all activities with the services, programs, and activities offered by Defendant City of Wichita." Dkt. 1, ¶ 79. Plaintiff further alleges that Defendant Whipple posted content to his personal campaign Facebook page that addressed the COVID-19 pandemic and other public issues, thereby converting the personal campaign Facebook page of Defendant Whipple into an official one for which Defendant City is responsible. Dkt. 1, ¶ 79. Plaintiff does not make any allegations as to the official mayoral Facebook page of Defendant Whipple that is operated by Defendant City.

6

In subsequent briefing, Plaintiff admitted that they "never asserted that Whipple's Facebook Page is" itself "a public entity's service, program, or activity," and instead only allege that Defendant Whipple's personal campaign Facebook page is a "communication barrier." Dkt. 33 at 8, ¶ 15.

Second, Plaintiff alleges that Defendant City has not provided reasonable accommodations for its Facebook page and YouTube page. Despite recognizing that Facebook and YouTube provide their own captioning services (Undisputed Material Fact ("UMF") #7), Plaintiff alleges that Defendant City has violated Title II of the ADA without any support for the contention that such accommodations are unreasonable. Besides, Defendant City has put additional accommodations in place that Plaintiff continually ignores.

Based on these two theories, the Complaint raises a cause of action of intentional discrimination under Title II of the ADA. Dkt. 1 at ¶¶ 60–85. Plaintiff seeks declaratory relief, injunctive relief, and damages, though each of these claims for relief is based upon the same cause of action described above. Dkt. 1 at ¶¶ 86–91.

Neither of the two legal theories offered by Plaintiff support a cause of action under Title II of the ADA. The personal campaign Facebook page of Defendant Whipple is not a service provided by a public entity. Defendant City does operate a mayoral Facebook page for Defendant Whipple, but Plaintiff makes no allegations about it. Throughout this case, Plaintiff has repeatedly referred to case law under 42 U.S.C. § 1983 to hold Defendant City accountable for the actions of Defendant Whipple as a public official, but Plaintiff has not pled a cause of action under § 1983. Title II of the ADA has a different essential element, in that it requires the service to be provided by a "public entity." *Robertson* at 1193. And even under § 1983 case law, Defendant City would not be held liable for the social media content of Defendant Whipple's personal campaign Facebook page.

When the Magistrate Judge squarely addressed this "dispositive" issue upon denying Plaintiff's motion to compel in this current matter, the Judge found that "[Whipple's] private campaign page, on its face, is not a public entity's 'service, program or activity' (here, what Plaintiff alleges to be the Mayor's Facebook Live videos) within the meaning of Title II. Instead, the campaign Facebook page is personal to Plaintiff. That it is his campaign page, controlled by Whipple for Mayor, Chelsea Whipple, Treasurer, further highlights the fact that the site is for Whipple's personal purposes, not those of the public entity, the City of Wichita." Dkt. 35 at 5 & 6. When this Court addressed Plaintiff's motion to review the Magistrate Judge ruling, it similarly held that "Haulmark's contention that Title II covers personal social media pages of public entities' employees is not supported by law." Dkt. 43 at 5.

As to Defendant City's official Facebook page and YouTube page, Plaintiff continues to completely ignore the reasonable accommodations provided by the City before and after this lawsuit commenced. Because Plaintiff "Haulmark simply failed to take advantage" of the accommodations provided, Plaintiff "Haulmark has therefore failed to state a claim for failure to accommodate." *Haulmark v. Kan.*, 2021 U.S. Dist. LEXIS 170758, *19 (D. Kan.).

Because Plaintiff has failed to state a claim under Title II of the ADA, this Court should dismiss the Complaint pursuant to Federal Rule 12(b)(6). In the alternative, lacking any genuine dispute as to a material face, Defendants are entitled to summary judgment as a matter of law pursuant to Federal Rule 56 and D. Kan. Rule 56.1.

**1.      Content Posted to Defendant Whipple's Personal Campaign Facebook Page Is Insufficient for Relief Under Title II of the ADA.**

The crux of Plaintiff's Complaint is that Defendant City and Defendant Whipple are liable under Title II of the ADA for social media content that is posted by Defendant Whipple to their

8

personal campaign Facebook page. Plaintiff further complains that Defendant Whipple excluded Plaintiff from Defendant Whipple's Facebook page in violation of Title II of the ADA – and that Defendant City should be liable for such activity as well. Plaintiff claims these allegations plead a cause of action for intentional discrimination under the ADA.

These allegations have already been adjudicated by the Magistrate Judge in the Order denying Plaintiff's Motion to Compel. Dkt. 35. In that Order, the Judge addressed the question: "Is discovery related to Whipple's private campaign Facebook page relevant to Plaintiff's ADA claims?" Dtk. 35 at 3. The Magistrate Judge meticulously addressed every case cited by Plaintiff and concluded that none of them support the position that either Defendant City or Defendant Whipple can be held liable for social media content posted to Defendant Whipple's personal campaign Facebook page. As explained by the Magistrate Judge, Plaintiff was expressly instructed in a pre-motion Zoom conference that "if he eventually filed a motion to compel seeking to discover such information, he would need to cite legal authority to support his position. The Court later reminded Plaintiff of this. In the instant motion to compel, <u>Plaintiff has cited numerous cases and attempted to satisfy the Court's concerns, however, as discussed below the Court finds none of the citations directly on point or persuasive</u>." Dkt. 35 at 7 (emphasis added).

Crucially, Plaintiff could not explain how the personal campaign Facebook page of Defendant Whipple constituted a service provided by a "public entity," which is an essential element of Plaintiff's ADA claim against both Defendants. *See Robertson* at 1193. Instead of citing to ADA case law, "Plaintiff uses the § 1983 terminology 'public forum,' but this terminology is not found in Title II. The term 'public entity' is in Title II, but that is the term that perhaps gives the Court the most pause about applying Title II to the private campaign Facebook page of an

9

elected mayor, when the public entity itself—here, the City of Wichita—is prohibited from financially supporting the fundraising efforts of the mayor." Dkt. 35 at 10.

Even assuming Plaintiff has some legal support for his position, the Magistrate Judge had no trouble finding that the personal campaign Facebook page was content from Defendant Whipple as an individual politician, rather than as an official of Defendant City. According to the Judge, "[p]osting 'selfie-like videos on Facebook to update citizens on various matters and, frankly, to build credibility with constituents and maintain their support, is not a normal function of a city. Rather, it is an expected act of an individual politician, whether he or she holds an office or is campaigning for an office." Dkt. 35 at 11. Because Plaintiff had only alleged actions by Defendant Whipple that do "not fall under the umbrella of the ADA," Defendant City cannot "be held responsible under Title II." Dkt. 35 at 12.

After their motion to compel was denied, Plaintiff moved this Court to review the Magistrate Judge. In denying the motion to review, this Court made the same findings as the Magistrate Judge. Plaintiff's attempt to subject Defendants to liability under Title II of the ADA due to content posted to Defendant Whipple's personal campaign Facebook page "is untenable and unsupported by the law." Dkt. 43 at 4. The Court held that "to consider communications on a public employee's campaign page as services of the public entity is a bridge too far." *Id.*

The same logic supports the Motion here. Even when viewing the Complaint and record most favorably for Plaintiff, he clearly has not pled a plausible cause of action under the ADA. Defendant Whipple is not a "public entity" as defined by the ADA. 42 U.S.C. 12131(1). And social media content posted by Defendant Whipple on his personal campaign Facebook page necessarily qualifies as personal because Defendant City is prohibited by state law from supporting political candidates. K.S.A. 25-4169a. This stands in contrast to the official mayoral Facebook page

10

controlled by the City. UMF #4. As such, any service provided by Defendant Whipple in his personal capacity does not qualify as a service provided by the Defendant City as a "public entity." In the world proposed by Plaintiff, every personal social media account of every political candidate and every public entity employee would be subject to the ADA. That is not the law.

Despite ample opportunity, Plaintiff has failed to support their cause of action. Plaintiff pointed to the "broad construction of the ADA," but has failed to cite any cases that suggest the Court "should expand its breadth to a private campaign Facebook page." Dkt. 35 at 9. Under Title II of the ADA, Plaintiff must raise allegations plausibly related to a "public entity," but has not done so. *Robertson* at 1193.

In the Complaint and again when supporting their Motion to Compel, Plaintiff emphasized that social media content counts as a "public forum." Yet such language comes from 42 U.S.C. §1983, where it is not even clearly established that personal social media content from government officials constitutes a "public forum." *Swanson v. Griffin*, 2022 U.S. App. LEXIS 5179, *9–*10 (10th Cir.). In *Swanson*, the Tenth Circuit dismissed a complaint against a county commissioner who blocked plaintiff from their personal Facebook profile. *Id.* at *2. The commissioner had posted some comments about their official work, to which plaintiff responded with criticism and was subsequently blocked. *Id.* The *Swanson* court decided that such activity was protected by qualified immunity because plaintiff had "not identified case law clearly establishing when an individual government official's social media profile becomes a public forum." *Id.* at *9–*10.

Therefore, based on the Tenth Circuit's analysis in *Robertson and Swanson*, the social media content posted by a political candidate to their personal Facebook page does not qualify as a "public forum" or services from a "public entity." Plaintiff alleges that Defendant Whipple's personal campaign content on social media should be subject to Title II of the ADA because

Defendant Whipple discussed policy and governmental issues, such as the COVID-19 pandemic. Dkt. 1, ¶ 79. According to Plaintiff, Defendant Whipple's personal campaign Facebook page "is an official source of information to promote official government business." Dkt. 1, ¶ 16.

But this allegation is not supported by any case law indicating personal campaign social media content is subject to Title II of the ADA. As the Magistrate Judge found, discussing political issues – especially related to COVID-19 during a pandemic – is a normal thing for a political candidate to do. Dkt. 35 at 11. Discussing policy issues on a personal campaign social media page does not convert that page into a service provided by a public entity. In fact, Defendant City expressly provides an official mayoral Facebook page for Defendant Whipple, which is distinct from the personal campaign Facebook page at issue here. Notably, Plaintiff does not allege he has been blocked from this or any other official social media page operated by Defendant City. The Complaint should be dismissed for failure to state a claim under Title II of the ADA.

Plaintiff has alleged various factual issues to address the "public entity" essential element, but none of the facts are plausible and none raise a genuine dispute that would upset the conclusion that Defendants are entitled to judgment as a matter of law. Plaintiff claims that Defendant City "controls" Defendant Whipple's personal campaign Facebook page. Dkt. 1 at ¶ 6. But Plaintiff has yet to explain how that "control" occurs given state law prohibiting that Defendant City from supporting political candidates, such as supporting Defendant Whipple's personal campaign Facebook page. This issue is compounded by the fact that Defendant City provides an official Facebook page for mayoral use by Defendant Whipple, but Plaintiff makes no allegations whatsoever about that page. The allegation that the City somehow controls or operates Defendant Whipple's personal campaign Facebook page is neither plausible nor grounded in any evidence.

Lastly, Plaintiff alleges that the Facebook page identifies Defendant Whipple as "the Mayor of Wichita." Dkt. 1, ¶ 33. But this fact alone is woefully insufficient to state a claim or raise a genuine dispute under the ADA that Defendant Whipple's personal campaign Facebook page is a service provided by a public entity. The Facebook page at issue clearly identifies that it is controlled by Defendant Whipple and "Chelsea Whipple, Treasurer." UMF #14. The hyperlink for the personal campaign Facebook page is identified as "VoteWhipple." UMF #13. The lead pictures on the Facebook page include Defendant Whipple's family, including Chelsea Whipple. While "Mayor of Wichita" is mentioned, that is the last part of the biography about his family and other public service. The Facebook page includes a link to Defendant Whipple's campaign website. UMF # 14.

Plaintiff's allegations concerning social media content posted to Defendant Whipple's personal campaign Facebook page are insufficient to entitle Plaintiff to relief under Title II of the ADA. The personal social media content of Defendant Whipple is not that of a "public entity" merely because Defendant Whipple is a mayor. As shown above, for legal relief, the ADA requires Plaintiff to at least plausibly allege that the services provided by a "public entity" do not reasonably accommodate individuals with disabilities. Plaintiff's allegations about Defendant Whipple's personal campaign Facebook page do not satisfy that essential element.

## 2. Defendant City Has Provided Reasonable Accommodations As To Its Own Facebook and YouTube Pages.

While Plaintiff's Complaint predominantly focuses on Defendant Whipple's personal campaign Facebook page, Plaintiff does include allegations about Defendant City's Facebook page and YouTube page. These allegations are far more limited and likewise fail to state a claim against Defendants.

Plaintiff alleges that Defendant City has posted significant amounts of audiovisual or audio-only content to its Facebook page and YouTube page that do not reasonably accommodate individuals with hearing disability. Dkt. 1, ¶¶ 43, 46. Plaintiff admits that they can post comments to the Facebook and YouTube pages of Defendant City, and all material on those pages is available to them. Dkt. 1, ¶¶ 41, 45. Plaintiff also admits that audiovisual and audio-only content on Facebook and YouTube includes captioning services. Dkt. 1, ¶¶ 41, 45. In their Complaint, Plaintiff fails to plausibly allege why these services are not sufficient under Title II of the ADA and has yet to cite any case law in support of this legal theory.

Regardless, Plaintiff's Complaint ignores that Defendant City – both before and after commencement of this lawsuit – already provides captioning for its social media content on Facebook and YouTube. Prior to receiving notice of Plaintiff's allegations or the filing of the Complaint, Defendant City already used captioning services provided by a third-party vendor for pre-recorded and live videos posted by Defendant City to social media pages under the control and responsibility of Defendant City. UMF #10. These services were supplemented by captioning options provided by Facebook and YouTube. UMF #7. Also before notice of the Complaint, Defendant City was already in the process of researching and evaluating additional captioning equipment for pre-recorded and live videos posted to its Facebook and YouTube pages. UMF #11. After service of the Complaint, Defendant City purchased and installed for use equipment that provides more effective captioning for pre-recorded and live videos on City social media. UMF #12. Defendant City has repeatedly made Plaintiff aware of these accommodations, such as during settlement discussions, but Plaintiff has charged ahead anyway.

Title II of the ADA requires "public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis

14

of disability.'" *Robertson* at 1195 (quoting 28 C.F.R. § 35.130(b)(7)). Not only did Defendant City provide reasonable accommodations for Plaintiff prior to the lawsuit, the City continued to update and modify its service for posting social media content to accommodate individuals with hearing disability. UMF #10–#12. Defendant City has operated its Facebook page and YouTube page since before Defendant Whipple became Mayor and has never blocked or limited Plaintiff's participations with those pages in any way. UMF #6, #8–#9. Despite these undisputed facts, and after settlement discussions and months of litigation, Plaintiff has yet to identify any failures by Defendant City to meet the standard set out in *Robertson*.

The reasonable accommodations provided by Defendant City sink Plaintiff's cause of action here. Plaintiff cannot state a claim of failure to provide reasonable accommodations when Plaintiff has failed to take advantage of those accommodations offered by Defendant City. As in the prior factually similar litigation involving Plaintiff Haulmark against the state of Kansas, the record "shows that Defendants offered Haulmark reasonable accommodations and that Haulmark simply failed to take advantage of them. Haulmark has therefore failed to state a claim for failure to accommodate." *Haulmark* at *19.

After the Complaint was filed in the current matter before the Court, Defendant City took additional actions to provide accommodations as requested by Plaintiff. These actions by Defendant City render Plaintiff's cause of action moot. "[I]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Haulmark* at *12 (citing *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013); additional quotations omitted). Here, the undisputed facts clearly show Defendant City consistently offered reasonable accommodations for captioning of videos posted to City-controlled social media pages both before and after Plaintiff

15

filed his Complaint. As such, Plaintiff's claims against Defendant City can no longer proceed and must be dismissed as moot.

### 3. Plaintiff Is Not Entitled to Relief Under the ADA As a Matter of Law.

As explained above, Plaintiff has not plausibly alleged facts sufficient to establish a cause of action under Title II of the ADA. Even if the Complaint does contain such allegations (which it does not), the undisputed material facts show that relief is foreclosed to Plaintiff and Defendants are entitled to summary judgment.

This is true for each of the types of relief requested by Plaintiff: declaratory relief, injunctive relief, and monetary damages. As this Court put it in denying Plaintiff's motion to review the Magistrate Judge ruling, "[r]egardless of Haulmark's characterization of the relief sought, the result is the same." Dkt. 43 at 5. Because Plaintiff has failed to raise a controversy as to his claims under Title II of the ADA, declaratory relief is not an option. *Haulmark* at *20. The same is true of the requested injunctive relief, which requires some legal controversy for the Court to intervene. *Id.* at *13–*14. Similarly, Plaintiff cannot sustain a claim for damages because Plaintiff has not identified any action by Defendants that violates Title II of the ADA. *Id.* at *18–*19. Defendants are thus entitled to dismissal of Plaintiff's Complaint.

//

V.     **CONCLUSION**

Defendant City respectfully requests that the Court grant its Motion to Dismiss or, in the alternative, its Motion for Summary Judgment, and enter an Order that Defendant City is entitled to judgment as a matter of law, and for such other and further relief as the Court deems just, fair and equitable.

Respectfully submitted,

/s Erik S. Houghton
Erik S. Houghton, #27368
Deputy City Attorney
City Hall – 13th Floor
455 N. Main
Wichita, KS  67202
(316) 268-4681
Fax:  (316) 858-7777
Email:  ehoughton@wichita.gov
*Attorney for Defendant City*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2022, I presented the above and foregoing **Defendant City of Wichita's Memorandum in Support of Motion to Dismiss or, In the Alternative, for Summary Judgment** to the clerk of the court for filing and uploading to the CM/ECF system which will send a notice of such electronic filing to the attorneys of record enrolled in the CM/ECF system, and a copy of same was sent to the following:

Chris Haulmark
600 S. Harrison St., Apt. #11
Olathe, KS 66061
Phone: 512-366-3981
chris@sidg.net
*Plaintiff pro se*

Randall K. Rathbun
Depew, Gillen, Rathbun & McInteer, LC
8301 E. 21st St., Ste. 4500
Wichita, KS 67206-2936
Phone: (316)262-4000
randy@depewgillen.com
*Attorney for Defendant Brandon Whipple*

                                                /s/ Erik S. Houghton
                                                Erik S. Houghton, #27368
                                                Deputy City Attorney