# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **CITY OF WICHITA**, | ) |
| and | ) Civil Action No. _21-1182-EFM-TJJ__ |
| **BRANDON WHIPPLE**, in his official and | ) |
| individual capacities, | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |

**FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL**

Because of their aggressive refusal to take legally-required steps to prohibit discrimination against individuals with a hearing disability, Plaintiff Chris Haulmark, appearing *pro se*, brings this action against the Defendants City of Wichita and Brandon Whipple, in his official capacity as the Mayor of the City of Wichita, alleging violations of Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 *et seq.* (hereinafter "ADA" or "Title II") and § 12203, for equal access to, participation in, and enjoy the benefits of services, programs, and activities provided to the public. This action also alleges violations of the United States Constitution and relevant law against Brandon Whipple, in his official and individual capacity, related to his Facebook page. Plaintiff Haulmark alleges as follows:

## I.     SUMMARY OF COMPLAINT

1.      Defendant Brandon Whipple has worked diligently as Wichita's mayor since the COVID-19 pandemic broke out in America during March 2020 to ensure that the public has access to essential health information. As a result of the Sedgwick County Stay-at-Home Order on March 25, 2020, Defendant Whipple begun to use the Facebook Live's streaming services on his Facebook page[1] (Hereinafter "Whipple's Facebook page") to hold weekly public briefings while working as the mayor from his home.

2.      Defendant Whipple made an arrangement with the City of Wichita to use his mayoral campaign's Facebook page as the city's official channel of communication. While Defendant Whipple has been repeatedly introducing himself as the mayor, he intentionally created a public space for the public to interact with him in real-time, to solicit for input from the public, and he is able to respond to comments in real-time. In response to the public's comments on these streamed videos, Defendant Whipple frequently provides typed responses. Defendant Whipple engages with the public on Whipple's Facebook page while performing his mayoral duties, including providing and sharing exclusive information about the city. Due to his availability as Wichita's mayor on his campaign's Facebook page, the public interacts with Defendant Whipple as such.

3.      Plaintiff Haulmark and Defendant Whipple have been engaging with one another on social media since 2017 as Democratic colleagues. In light of Plaintiff Haulmark's hearing disabilities, he repeatedly requested captioning from Defendant Whipple in anticipation of his election to the office of mayor of Wichita. Because of these requests, many of the pre-recorded videos on Defendant Whipple's Facebook page are captioned. Thus, Defendant Whipple has known for all relevant times since 2017 that

---

[1] Facebook Page of Defendant Brandon Whipple, https://www.facebook.com/VoteWhipple

Plaintiff Haulmark has hearing disabilities and that accommodations such as captioning and transcripts are required for Plaintiff Haulmark.

4.      In comments posted on Whipple's Facebook page, Plaintiff Haulmark reminded Whipple that if elected mayor, he must comply with Title II of the ADA. After Defendant Whipple began working from home as a result of COVID-19 arriving in the United States, Defendant Whipple and the City of Wichita failed to take affirmative action. Plaintiff Haulmark repeatedly requested accommodations from Defendant Whipple to make his live-streaming videos equally accessible to Plaintiff Haulmark and residents of Wichita with a hearing disability.

5.      The City of Wichita had known of Plaintiff Haulmark's ADA requests but refuses to ensure that Defendant Whipple's Facebook videos, containing the municipal's benefits, includes the ADA-required accommodations for Plaintiff Haulmark and other individuals with a hearing disability.

6.      Instead of complying with Title II of the ADA as requested, Defendant Whipple banned Plaintiff Haulmark from the interactive space of Defendant Whipple's Facebook page solely because Plaintiff Haulmark has repeatedly requested communication access. Plaintiff Haulmark no longer can interact on Whipple's Facebook Page to participate in exchange of views with the other public members. Meanwhile, Plaintiff Haulmark's discussions with other members of the public on requests for accommodations on Defendant Whipple's Facebook page have been removed from view of the public. Additionally, Defendant Whipple publicly humiliated Plaintiff Haulmark by using the premise that he is Deaf and subjects him to public hatred, contempt, and ridicule.

.       After Plaintiff Haulmark filed the lawsuit with the original complaint, Whipple retaliated by using Facebook's tools to punish and silence Plaintiff Haulmark by barring Plaintiff Haulmark from accessing or viewing any posts and exchange of views on Whipple's Facebook page.

7.      In addition to the Whipple's Facebook page, the Defendants control other social media platforms that are in violation of the ADA. There are many videos posted on these other social media platforms that do not consistently contain any accurate captioning, sign language interpreters, or transcripts as the ADA-required auxiliary aids or services to be provided as to ensure effective communication and to ensure equal participation for Plaintiff Haulmark. Facebook, one of the social media platforms, frequently contains links to videos that the Defendants live streamed on their YouTube channel.

8.      By intentionally excluding Plaintiff Haulmark from participating in Defendants' services, programs, and activities, Defendant Whipple has subjected Plaintiff Haulmark to discrimination because he is Deaf. Therefore, not only was Defendant Whipple able to retaliate by chilling Plaintiff Haulmark's discussion of political views, but he also sent his message to the Deaf community, informing them they are not entitled to critical health and government information shared by the Defendants. Lastly, the aggressive refusal of the Defendants to comply with the ADA to avoid discrimination makes it impossible for Plaintiff Haulmark to participate in and benefit from the services, programs, and activities offered by the Defendants that has been arranged to be relocated on Defendant Whipple campaign's Facebook page.

## II.    JURISDICTION AND VENUE

9.     The Court has jurisdiction over this matter under Title II of the ADA, 42 U.S.C. 12131-12132, and the Constitution and laws of the United States, brought under 42 U.S.C. 1983, and 28 U.S.C. 1331 and 1345. This Court may grant the reliefs sought in this action pursuant to 28 U.S.C. § 2201-2202 and 42 U.S.C. § 1988.

10.    Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

11.    Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Kansas, and all of the parties are residents of the State at the time of the events giving rise to this amended Complaint.

### III.   PARTIES

12.    Plaintiff Chris Haulmark is a citizen of the United States of America. At all times relevant, Plaintiff Haulmark is a resident of Olathe, Johnson County, Kansas. Since 2010, Plaintiff Haulmark has served as an active political leader who advocates for the Deaf community across the country. Since August 2021, Plaintiff Haulmark serves on the Kansas Association of the Deaf's executive board and chairs their Social Justice committee, seeking feedback from the Deaf community and improving their lives on their behalf within the state. Thus, Plaintiff Haulmark keeps apprised of the current policies and procedures of state and local governments in Kansas. Plaintiff Haulmark is a qualified individual with a hearing disability. Plaintiff Haulmark has been deaf since he was one year old. Plaintiff Haulmark is substantially limited in the major life activities of hearing and speaking aurally. Plaintiff Haulmark's preferred method of communication is through American Sign Language (ASL). Plaintiff Haulmark also uses auxiliary aids such

as video conferencing and electronic devices to communicate. Plaintiff Haulmark watches videos with the assistance of a captioning function.

13.     In this amended complaint, Defendant Whipple is sued in both official and individual capacities. At all relevant times, Defendant Brandon Whipple was acting within the scope of his official duties and employment and under color of state law in his capacity as mayor of the City of Wichita.

14.     Defendant Whipple's campaign is a 527 political organization for his mayoral campaign, and Defendant Whipple has arranged with the City of Wichita to make it possible for his government speech and activities to be available on the campaign's Facebook page. At all relevant times, Defendant Whipple is in full control of his campaign's Facebook page.

15.     Defendant City of Wichita is a city and municipality organized under the laws of the State of Kansas. Pursuant to Title II of the ADA, the City of Wichita is a public entity. The City may be served with process at 455 N. Main, Wichita, Kansas 67202.

## IV.     STATEMENT OF FACTS

16.     Defendant City of Wichita is the largest city in the state of Kansas and is a role model to the rest of the cities within Kansas.

17.     Defendant Brandon Whipple is the elected Mayor of the City of Wichita after assuming the office on January 13, 2020.

18.     The Defendants operate three Facebook pages-- City of Wichita- Government[2] , Mayor of Wichita[3], and Brandon Whipple[4]-- which publicize government speech and

---

[2] Facebook Page of City of Wichita- Government, https://www.facebook.com/cityofwichita
[3] Facebook Page of Mayor of Wichita, https://www.facebook.com/mayorofwichita
[4] The campaign's Facebook Page of Defendant Brandon Whipple, https://www.facebook.com/VoteWhipple

activities. The City of Wichita- Government and the Mayor of Wichita Facebook pages appear to have been handed over by the previous administration to Whipple's.

19.     While Defendant Whipple was running for mayor, Brandon Whipple's Facebook page (herein "Whipple's Facebook page") was primarily used for campaigning before being elected as the mayor.

20.     As of March 12, 2020, Governor Laura Kelly of Kansas proclaimed a State of Disaster Emergency within Kansas relating to COVID-19.

21.     After this proclamation against the backdrop of the COVID-19 pandemic, Defendant Whipple announced on his campaign's Facebook page that he would continue to provide the latest information and video updates about the city while serving as mayor because of available technology. In other words, Defendant Whipple, in his official capacity, had decisively been using his campaign's Facebook page to open a designated public forum directly connected to, although not required by, his official position. This is in keeping with the mayor's primary duty of communicating with the public and engaging with it. In connection with Whipple's campaign through its mayor, the City of Wichita has arranged for some of its municipal benefits to be made exclusively available on Whipple's Facebook page to be offered to the public.

22.     With the Facebook Live streaming services, Defendant Whipple seeks to promote official government business and communicate with the public directly in his official capacity. As he streams himself to the public, Defendant Whipple makes himself available as the mayor by paying attention to solicited comments and discussions left by the public in order to provide real-time responses. Defendant Whipple's availability as the mayor on Whipple's Facebook page is part of these municipal benefits as the City of

Wichita's services, programs, and activities. This functionality is made possible by Facebook for this public interactivity space to be established.

23.     All of these live streaming videos on Whipple's Facebook page do not have any captioning or transcripts readily available to ensure that individuals with a hearing disability, including Plaintiff Haulmark, are not excluded.

24.     Also, the City of Wichita's Facebook page (hereinafter "Wichita's FB Page") and Mayor of Wichita Facebook page (hereinafter "Mayor's FB Page") post dozens of videos, either live streamed or pre-recorded. Both Facebook pages regularly shares links to websites and Facebook posts from sources that include both audiovisual and audio-only content. Many of these videos and links to other videos, published on different social media platforms, contain messages from elected officials, employees, and staff members of the City of Wichita to be shared to the public. Many of these published videos and links as services, programs, and activities do not consistently provide effective communication for Plaintiff Haulmark and individuals with a hearing disability. Thus, Plaintiff Haulmark and other individuals with a hearing disability are intentionally excluded from benefiting from the City of Wichita's services, programs, and activities found on these social media platforms.

25.     Defendant Whipple is in control of Whipple's Facebook page by determining which users are allowed to participate and to comment on which posts. Defendant City of Wichita control the content of the three social media platforms, Wichita's FB Page, Mayor's FB Page, and the YouTube channel by determining which users are allowed to participate and to comment on which posts.

26. Despite the obvious fact that captioning and transcription services are a requirement for all video and audio-only publications, Plaintiff Haulmark has to undergo exhausting, but necessary, legal action against the Defendants because they intentionally refuse to comply with the affirmative provisions of Title II. Furthermore, Plaintiff Haulmark must seek protection under the ADA and First Amendment of the U.S. Constitution through this Court.

## V. THE DESIGN OF FACEBOOK

27. Today, social media platforms, like Facebook, provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." See *Packingham v. North Carolina*, 137 S. Ct. 1730, at 1735 (2017). It is through the use of social media in cyberspace, such as one of the most popular being Facebook, that Americans are able to exchange views and to "petition their elected representatives and otherwise engage with them in a direct manner." See *Id*. at 1735. The Facebook platform is particularly well-suited to public discussion and debate as "protected First Amendment activity." See *Id*. at 1737. Social media websites like Facebook and Twitter are, for many, "the principal sources for knowing current events, checking ads for employment, *speaking and listening in the modern public square*, and otherwise exploring the vast realms of human thought and knowledge." See *Id*. (Emphasis added) The Facebook and YouTube "allow a person with an Internet connection to become a town crier with a voice that resonates farther than it could from any soapbox." See *Id*. (Citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, at 870 (1997)). It is necessary for the government to take action "only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. Naacp Legal Defense Ed. Fund*, 473 U.S. 788, at 802 (1985). This Court must

look at the "policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." See *Id*. Moreover, this Court must examine "the nature of the property and its compatibility with expressive activity to discern the government's intent." See *Id*. The realities of 21st century interactions, including those brought about by the COVID-19 pandemic, further confirm that Title II addresses a government's provision of information and services through its websites and other means of information exchange. See *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, at 2097 (2018) (Noting "the physical presence rule [...] must give way to the far-reaching systemic and structural changes in the economy and many other societal dimensions caused by the Cyber Age.") (Internal quotation marks omitted)

27.     Facebook is a social media platform with more than 2.85 billion monthly active users, as of March 31, 2021. See *Facebook, Inc., Quarterly Report* (Form 10-Q) (April 29, 2021). In the United States, approximately two-thirds of adults are Facebook users. *Id*. A user of Facebook can post any length of message or post a Facebook post, republish another user's post or share another Facebook post, or respond to another user's post or make a comment on another user's post. *Id*. There are all kinds of exchanges on Facebook, from greetings to heartfelt reconnection with politics.

28.     A Facebook user's "profile" contains information about the user including their name, a description of themselves, biographical information, work history, and other sites they manage. A Facebook "profile" is a personal account on the social network that require authentication to manage.

29.     In contrast, Facebook "pages" are user accounts created by businesses, public offices, celebrities or public figures, organizations, or corporations. The Facebook "pages"

are visible to the general public without the need to first register for a Facebook account. The Facebook "pages" are created and managed by users with Facebook "profiles"

30. The majority of public officials create separate Facebook "pages" in their official capacity as public officials or government officials. These pages are called Public Figure, Politician, or Government Organization "pages" and differ from personal Facebook user profiles in appearances and content. Those who have "pages" often describe their official position on their pages. A newly elected public official can designate their previous Facebook page as a "government official" page for the purpose of serving the public. In some cases, public officials combine campaigning with their duties as public officials.

31. Personal Facebook "profiles" can be protected by users so that only other certain users can see their timelines and search for their posts, but Facebook "pages" cannot be restricted in this way. Users and page creators can "ban" Facebook profiles from participating on their pages or prevent Facebook profiles from viewing their content.

32. When a user with a Facebook page "bans" a personal Facebook profile from interacting on the same page, the user of this Facebook profile can no longer comment on the Facebook page. If the banned user attempts to comment on a Facebook page that she or he has been banned from, she or he will only be given the opportunity to share the post and not be allowed to comment under the post. Unless the non-banned users opt to look at the list of shared posts of the Facebook page's post in order to view the shared post of the banned user on the personal Facebook profile, they will not be able to see the discussion involving the banned user.

33.     User with a Facebook page has the option to "block" personal Facebook profiles from viewing their Facebook page. When a personal Facebook profile is blocked, this profile cannot view and share any content at all on the Facebook page.

34.     A user with a Facebook page can remove the comments left by a user with a Facebook profile from being visible to the public. In order to remove the comments from being visible to the public, there are two choices: a permanent deletion of these comments or to hide these comments from view of other Facebook users.

35.     With Facebook as a social media platform, captioning can be uploaded to be accompanied with a video in order to ensure that people with a hearing disability can access the audio information in this video. Third-party captioning services can be used to embed real-time captions into a live video stream. Facebook makes it possible for posts containing audiovisual and audio content to include transcripts in order to provide communication accessibility to individuals with a hearing disability to the governmental information that is included in these formats. It is possible to invite a sign language interpreter to be displayed side-by-side with a speaker during a Facebook Live streaming to provide interpretation.

## VI.   DEFENDANT WHIPPLE CONFIGURED WHIPPLE'S FACEBOOK PAGE TO BE A PUBLIC FORUM

36.     Defendant Whipple presents Whipple's Facebook Page to the public as where he conducts official business of the City of Wichita on the behalf of his elected office as the mayor of Wichita. His page also has an "About" section. In the "About" section, Defendant Whipple describes himself as the father of three children, a husband, a former representative of a district within Wichita, and the Mayor of Wichita. Whipple's Facebook page displayed "Public Official" as the badge between the time he was elected and at least

after this lawsuit was filed. This badge identified him as "Wichita, Mayor, KS" on the same page.

37.     Thus, Defendant Whipple has designated Whipple's Facebook page as an public forum for the mayor office of Wichita to serve the public. While appearing in a selfie-style format on Whipple's Facebook page, Defendant Whipple live-streams himself out of his home while discussing critical health information and important political issues. Defendant Whipple consistently introduces himself as the mayor, and the public addresses him as such. A different social media platform operated by the City of Wichita does not offer the same municipal benefits that are offered to the public by the mayor.

38.     Whipple's Facebook page is generally accessible to the public at large without regard to political affiliation or any other limiting criteria. There is no limit on the happenstance of geography for Whipple's Facebook page. Any Facebook user who wants to follow Whipple's Facebook page can do so and this page has over 10,000 followers. Any Facebook user can also comment on posts, published on Whipple's Facebook page, unless they have been banned or blocked. In other words, there are no restrictions on which members of the public can participate in this interactive space, except for having an electronic device that is internet-enabled with an active Facebook account that is not banned or blocked from Whipple's Facebook page.

39.     Between January 30, 2020 and this day, Defendant Whipple created and published at least hundreds of audiovisual content, that were live streamed, on Whipple's Facebook page. In doing so, Defendant Whipple invokes his mayor status to influence the behavior of those around him to garner such public engagement on his Facebook page.

40.     There are no auxiliary aids and services included in any of these audiovisual content to ensure that individuals with a hearing disability are not excluded. Plaintiff Haulmark remains blocked from accessing and viewing the content on Whipple's Facebook page to this day.

## VII.   THE DEFENDANTS CONTROLS WICHITA'S FB PAGE

41.     The Defendants uses other social media platforms to communicate depending on the issue or what it is trying to accomplish (i.e., Facebook, YouTube, Twitter, etc.).

42.     With this lawsuit, Plaintiff Haulmark is focusing on the audiovisual content published on this social media platform even though much of its content on the social media platforms also fails to comply with Title II of the ADA. The posts, published on Wichita's FB Page, consist of a variety of written statements, photos, videos, and other posts linking to external websites and other social media platforms.

43.     The Defendants present an official Facebook page as an interactive governmental space for their constituents, residents outside of Wichita, and individuals with political and democratic interests. Wichita's FB Page has hundreds, if not thousands, of videos dating December 2011 to present.

44.     Wichita's FB Page is generally accessible to the public without regard to affiliation with political parties or any other limiting criteria. For Wichita's FB Page, there is no geographical restriction. Facebook users can follow Wichita's FB Page, which currently has over 44,000 followers. Facebook users can also comment on posts published on Wichita's FB Page, unless they've been banned or blocked. In other words, members of the public are not restricted from participating in this interactive space, except that they

need an internet-connected device with an active Facebook account that has not been banned from Wichita's FB Page.

45.     On Wichita's FB Page, the published videos contain elected officials, including Defendant Whipple, employees, and guests of the public providing information about the city and its surrounding. The published videos contain regular public hearings of the city and recordings of its meetings. Moreover, the published videos include previews of the agenda and public statements made by the city government. Lastly, these published video cover topics such as transportation concerns, procurement contracts, tax rates, cultural activities, and other important policies and issues.

46.     Nearly all of the videos on Wichita's FB Page do not provide any effective communication for Plaintiff Haulmark and other individuals with a hearing disability. There is not any accurate real-time captioning, transcript, or sign language interpretation on many of these videos.

## VIII.  THE DEFENDANTS CONTROLS THEIR YOUTUBE CHANNEL

47.     The Defendants operate a YouTube Channel-- <u>City of Wichita</u>[5]-- which publicizes their official business activities. This YouTube channel has published over 2,500 videos since it was created by Defendant City of Wichita more than a decade ago.

48.     Some of the recorded audiovisual content on this YouTube channel uses automatic machine-generated captioning, created at least a day after being streamed and published. This automated captioning service provided by YouTube is non-compliant with the ADA. Automatic machine-generated captioning does not provide effective communication for Plaintiff Haulmark and other individuals with a hearing disability, due

---

[5] YouTube Channel of <u>City of Wichita</u>, https://www.youtube.com/user/wichitacity7

to lack of the following: errorless accuracy, uniformity in style and presentation for crucial understanding, complete textual representation of the audio as close to verbatim as possible, and including speaker identification and non-speech audio information with clarity. Some of other audiovisual content on the same YouTube Channel does not include captioning or transcripts at all.

49.     YouTube's automatic captioning services are not designed and intended to be ADA compliant to provide equally effective communication for individuals with a hearing disability. Because of this, the Defendants must modify their policies, procedures, and practices to ensure the future audiovisual content is in full compliance with Title II of the ADA by using a third-party captioning service to ensure the digital information is equally effective communication accessible for Plaintiff Haulmark and other individuals with a hearing disability. With the archived audiovisual content, accurate transcripts must accompany each video to ensure that no individual with a hearing disability is excluded from equally benefiting from these videos.

## IX.   PLAINTIFF HAULMARK ALLEGES DISCRIMINATION UNDER TITLE II OF THE ADA.

50.     In this amended Complaint, Plaintiff Haulmark brings to this Court the issue of being deliberately excluded from equally participating in and benefiting from the services, programs, and activities offered by the Defendants. This lawsuit relies heavily on the amount of daily government speech that occurs on social media platforms including Facebook and YouTube by, to, and about the government at the city level.

51.     Under one of the first live streaming videos on Whipple's Facebook page, Plaintiff Haulmark made a request for auxiliary aids and services, which is a protected activity under the ADA and First Amendment of the U.S. Constitution, as an individual

with a hearing disability to understand what Defendant Whipple was saying when addressing the public. Instead of taking action to bring their services, programs, and activities into full compliance with Title II of the ADA, Defendant Whipple denied Plaintiff Haulmark's request on the behalf of the City of Wichita.

52.    Throughout the following months after the first live streaming videos, Plaintiff Haulmark continued to address Defendant Whipple as the mayor when repeatedly exercising his rights under federal and constitutional law to discuss and request for accommodations on Whipple's Facebook page in accordance with the ADA. Responding to Plaintiff Haulmark in the public eye, Defendant Whipple demanded from Plaintiff Haulmark that Plaintiff Haulmark is to provide any and all solutions that can provide free captioning services with Defendant Whipple's live streaming videos. However, despite being experienced with information technology, Defendant Whipple's demand is for the Plaintiff Haulmark to carry the burden that belongs to the him and City of Wichita pursuant to the ADA.

53.    Plaintiff Haulmark did not discuss anything other than the ADA matters on Whipple's Facebook page during the entire time relevant to this Complaint's amendment. In this interactive online environment within which all can watch and hear the digital town halls, Defendant Whipple has publicly engaged in discrimination against Plaintiff Haulmark because of his hearing disability.

54.    Plaintiff Haulmark contacted the executive director of the Kansas Commission for the Deaf and Hard of Hearing on July 12, 2020 in response to one of Defendant Whipple's demands for a solution to include real-time captioning in his live streaming videos. Contact has been made by email, which has been carbon copied to

Defendant Whipple. The email provided background information regarding Defendant Whipple's need for resources to make his live streaming videos fully compliant with the ADA. Defendant Whipple has not responded to Plaintiff Haulmark's email or made any necessary improvements to bring the Facebook Live streaming videos into full compliance with the ADA.

55.     The president of Kansas Association for the Deaf contacted Defendant Whipple on March 15, 2021, informing him that the Deaf community did not have access to Defendant Whipple's weekly media briefings. The letter expressed frustration and concern over the Deaf community not having access to Defendant Whipple's Facebook Live streaming videos on Facebook. ASL interpreters and real-time captioning for Facebook Live streaming videos are requested in this letter, as well as transcripts of past Facebook Live videos to be produced and published. Responding to the letter, Defendant Whipple stated with agreement that the official communications should meet or exceed the standards of the ADA. Despite this, individuals with a hearing disability continue to be excluded from Defendant Whipple's Facebook Live streaming videos to this day.

56.     To put it simply, Defendant Whipple aggressively refuses to provide auxiliary aids and services for Plaintiff Haulmark and other individuals with a hearing disability to have an equally effective means of communicating with Defendant Whipple and other Facebook users on posts containing all live recorded videos on Whipple's Facebook page, which has been repurposed to be the City of Wichita's official channel of communication.

57.     Over a thousand of videos published on Wichita's FB Page lack captioning or transcripts to ensure individuals with hearing a disability are not excluded from their programs, services, and activities.

58.     Wichita's FB Page regularly posts links to its other social media platforms (i.e., YouTube, Twitter, etc.) that do not provide effective communication for individuals with a hearing disability. While it has been obvious to them of the necessary to make ADA-required reasonable modifications, the Defendants fail to take affirmative actions to make sure that the audiovisual content available on Whipple's Facebook page and Wichita's FB Page comply with Title II of the ADA.

59.     As the head of a public entity, Defendant Whipple rejects Plaintiff Haulmark's requests for reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of his hearing disabilities.

60.     As a Facebook user, Plaintiff Haulmark has been banned and blocked from commenting on Whipple's Facebook page only because he repeatedly requested, with citations to Title II of the ADA, and discussed his accommodation needs on Whipple's Facebook page to obtain communication access to the live streaming and published videos. Additionally, Plaintiff Haulmark's comments were removed from public view regarding these requests and discussions.

61.     Defendant Whipple has essentially banished Plaintiff Haulmark from the interactive space associated with Whipple's Facebook page. Defendant Whipple has acknowledged this fact. These actions have violated not only the ADA, but also the First Amendment to the U.S. Constitution.

62.     Because of being banned and blocked on Whipple's Facebook page, Plaintiff Haulmark is hesitant to request for accommodations to be able to share his political views

on Wichita's FB page and Mayor's FB Page, since he may be banned or blocked over the same reasons as with Whipple's Facebook page.

## X.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 - First Amendment*
*Free Speech*
*(Plaintiff Haulmark against Defendant Whipple)*

63.    As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

64.    On this claim, Plaintiff Haulmark seeks only injunctive and declaratory relief against Defendant Whipple in his official capacity.

65.    At all times relevant to this amended Complaint, Defendant Whipple is acting under the color of law.

66.    Plaintiff Haulmark engaged in First Amendment-protected speech in his comments on Defendant Whipple's Facebook page.

67.    Plaintiff Haulmark's speech was on a matter of public concern and did not violate any law.

68.    Plaintiff Haulmark is blocked from accessing Whipple's Facebook page.

69.    Plaintiff Haulmark was never provided a notice by Defendant Whipple, in an accessible format for the individuals with a hearing disability, that his protected speech is being restrained.

70.    By banning and blocking Plaintiff Haulmark from Whipple's Facebook page, and removing his comments, Defendant Whipple prevented (and continues to prevent) Plaintiff Haulmark from exercising his First Amendment rights, including his right to speak freely.

71.     Without any warning, Defendant Whipple's banning and blocking of Plaintiff Haulmark from commenting on posts on Whipple's Facebook page, and the removal of his comments, is a viewpoint-based restriction on speech.

72.     Whipple's Facebook page is opened as a designated public forum that Defendant Whipple fully controls.

73.     Defendant Whipple's conduct violates clearly established rights belonging to Plaintiff Haulmark of which reasonable persons in Defendant Whipple's position knew or should have known. Viewpoint-based prior restraint on speech has been widely known as being unconstitutional for more than eight decades. See *Near v. Minnesota, 283 U.S. 697 (1931).*

74.      The Supreme Court has long rejected the proposition that speech online is subject to a different First Amendment standard than speech offline. See *Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

75.     Defendant Whipple engages in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and is reckless disregard of Plaintiff Haulmark's constitutional rights.

76.     Defendant Whipple, as the mayor, is a policymaker for the City of Wichita and his actions in this matter has the effect of Wichita custom, policy, and practice.

77.     The City of Wichita's customs, policies, and/or practices are the moving force behind Defendant Whipple's violation of Plaintiff Haulmark's constitutional rights.

78.     Defendant Whipple's actions and/or omissions cause, directly and proximately, Plaintiff Haulmark to suffer damages. The actions and inaction of Defendant

Whipple cause Plaintiff Haulmark damages in that he is prevented from speaking freely on a matter of public concern, among other injuries, damages, and losses.

### SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1983 - First Amendment*
*Right to petition the Government*
*(Plaintiff Haulmark against Defendant Whipple)*

79.     As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

80.     On this claim, Plaintiff Haulmark seeks only injunctive and declaratory relief against Defendant Whipple in his official capacity.

81.     At all times relevant to this amended Complaint, Defendant Whipple is acting under the color of law.

82.     Plaintiff Haulmark engaged in First Amendment-protected petitioning in his commenting on Whipple's Facebook page.

83.     Plaintiff Haulmark's petitioning was on a matter of public concern and did not violate any law.

84.     Plaintiff Haulmark is blocked from accessing Whipple's Facebook page.

85.     Plaintiff Haulmark was never provided a notice by Defendant Whipple, in an accessible format for the individuals with a hearing disability, that his protected speech is being restrained.

86.     By banning and blocking Plaintiff Haulmark from Whipple's Facebook page, and removing his comments, Defendant Whipple prevented (and continues to prevent) Plaintiff Haulmark from exercising his First Amendment rights, including his right to petition the government for redress of grievances.

87. Without any warning, Defendant Whipple's banning and blocking of Plaintiff Haulmark from commenting on posts on Whipple's Facebook page, and the removal of his comments, is a viewpoint-based restriction on his right to petition.

88. Whipple's Facebook page is opened to as a designated public forum that Defendant Whipple fully controls.

89. Defendant Whipple's conduct violates clearly established rights belonging to Plaintiff Haulmark of which reasonable persons in Defendant Whipple's position knew or should have known. Viewpoint-based prior restraint on speech has been widely known as being unconstitutional for more than eight decades. See *Near v. Minnesota, 283 U.S. 697 (1931).*

90. The Supreme Court has long rejected the proposition that speech online is subject to a different First Amendment standard than speech offline. See *Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

91. Defendant Whipple engages in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and is reckless disregard of Plaintiff Haulmark's constitutional rights.

92. Defendant Whipple, as the mayor, is a policymaker for the City of Wichita and his actions in this matter has the effect of Wichita custom, policy, and practice.

93. The City of Wichita's customs, policies, and/or practices are the moving force behind Defendant Whipple's violation of Plaintiff Haulmark's constitutional rights.

94. Defendant Whipple's actions and/or omissions cause, directly and proximately, Plaintiff Haulmark to suffer damages. The actions and inaction of Defendant

Whipple cause Plaintiff Haulmark damages in that he was prevented from speaking freely on a matter of public concern, among other injuries, damages, and losses.

## THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 - First Amendment*
*Realiation*
*(Plaintiff Haulmark against Defendant Whipple)*

95.     As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

96.     On this claim, Plaintiff Haulmark seeks only injunctive and declaratory relief against Defendant Whipple in his official capacity.

97.     At all times relevant to this amended Complaint, Defendant Whipple is acting under the color of law.

98.     Plaintiff Haulmark engaged in First Amendment-protected speech and petitioning in his commenting on Whipple's Facebook page.

99.     Plaintiff Haulmark's speech and petitioning were on a matter of public concern and did not violate any law.

100.    Defendant Whipple responded (and continues to respond) to Plaintiff Haulmark's First Amendment-protected activity with retaliation, including but not limited to removing his comments and blocking him from commenting on Whipple's Facebook page.

101.    Defendant Whipple's retaliatory actions are substantially motivated by Plaintiff Haulmark's exercise of his First Amendment and ADA rights.

102.    By banning and blocking Plaintiff Haulmark and removing his comments, Defendant Whipple sought to punish Plaintiff Haulmark for exercising his First Amendment and ADA rights, to silence his future speech, to stop him from petitioning,

and to restrict his freedom of expression, along with the future speech and expression of others. Defendant Whipple's retaliatory actions would chill a person of ordinary firmness from engaging in First Amendment-protected and ADA activity.

103.   Defendant Whipple's conduct violates clearly established rights belonging to Plaintiff Haulmark of which reasonable persons in Defendant Whipple's position knew or should have known. Viewpoint-based prior restraint on speech has been widely known as being unconstitutional for more than eight decades. See *Near v. Minnesota, 283 U.S. 697 (1931).* Retaliation against an individual based on his First Amendment-protected speech has been clearly established in the Tenth Circuit for almost two decades. See *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

104.   Defendant Whipple, as the mayor, is a policymaker for the City of Wichita and his actions in this matter has the effect of Wichita custom, policy, and practice.

105.   The City of Wichita's customs, policies, and/or practices are the moving force behind Defendant Whipple's violation of Plaintiff Haulmark's constitutional rights.

106.   Defendant Whipple's actions and/or omissions cause, directly and proximately, Plaintiff Haulmark to suffer damages. The actions and inaction of Defendant Whipple cause Plaintiff Haulmark damages in that he is prevented from petitioning the government for redress of his grievances and is prevented from speaking freely on a matter of public concern, among other injuries, damages, and losses.

### FOURTH CLAIM FOR RELIEF
*Section III of the Kansas Constitution Bill of Rights*
*The right to petition the government*
*(Plaintiff Haulmark against Defendant Whipple)*

107.   As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

108.    On this claim, Plaintiff Haulmark seeks only injunctive and declaratory relief against Defendant Whipple in his official capacity.

109.    At all times relevant to this amended Complaint, Defendant Whipple is acting under the color of law.

110.    The Petition Clause to the Kansas Constitution provides that "[t]he people have the right to assemble, in a peaceful manner, to consult for their common good, to instruct their representatives, and to petition the government, or any department thereof, for the redress of grievances." See Kan. Const. Bill of Rights, Section III.

111.    Plaintiff Haulmark was engaged in protected petitioning in his commenting on Whipple's Facebook page.

112.    Plaintiff Haulmark's petitioning was on a matter of public concern and did not violate any law.

113.    By banning and blocking Plaintiff Haulmark from Whipple's Facebook page, and removing his comments, Defendant Whipple prevented (and continues to prevent) Plaintiff Haulmark from exercising his right to petition the government for redress of grievances.

114.    Without any warning, Defendant Whipple's banning and blocking of Plaintiff Haulmark from commenting on posts on Whipple's Facebook page, and the removal of his comments, is a viewpoint-based restriction on his right to petition.

115.    Whipple's Facebook page is opened as a designated public forum that Defendant Whipple fully controls.

116.    Defendant Whipple's conduct violates clearly established rights belonging to Plaintiff Haulmark of which reasonable persons in Defendant Whipple's position knew or should have known.

117.    Defendant Whipple engages in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and is reckless disregard of Plaintiff Haulmark's rights under the Kansas Constitution.

118.    Defendant Whipple, as the mayor, is a policymaker for the City of Wichita and his actions in this matter has the effect of Wichita custom, policy, and practice.

119.    The City of Wichita's customs, policies, and/or practices are the moving force behind Defendant Whipple's violation of Plaintiff Haulmark's rights.

120.    Defendant Whipple's actions and/or omissions cause, directly and proximately, Plaintiff Haulmark to suffer damages. The actions and inaction of Defendant Whipple cause Plaintiff Haulmark damages in that he is prevented from petitioning the government for redress of his grievances on a matter of public concern, among other injuries, damages, and losses.

**FIFTH CLAIM FOR RELIEF**
*Section XI of the Kansas Constitution Bill of Rights*
*Free Speech*
*(Plaintiff Haulmark against Defendant Whipple)*

121.    As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

122.    On this claim, Plaintiff Haulmark seeks only injunctive and declaratory relief against Defendant Whipple in his official capacity.

123.    At all times relevant to this amended Complaint, Defendant Whipple is acting under the color of law.

124.    The Free Speech Clause to the Kansas Constitution provides that "The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such rights; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted." See Kan. Const. Bill of Rights, Section XI.

125.    The free speech rights protected by Section XI of the Kansas Constitution Bill of Rights are more expansive than those protected by the First Amendment to the United States Constitution.

126.    Plaintiff Haulmark is engaged in protected free speech in his commenting on Whipple's Facebook page.

127.    Plaintiff Haulmark's speech was on a matter of public concern and did not violate any law.

128.    By banning and blocking Plaintiff Haulmark from Whipple's Facebook page, and removing his comments, Defendant Whipple prevented (and continues to prevent) Plaintiff Haulmark from exercising his right to speak freely.

129.    Without any warning, Defendant Whipple's banning and blocking of Plaintiff Haulmark from commenting on posts on Whipple's Facebook page, and the removal of his comments, is a viewpoint-based restriction on speech.

130.    Whipple's Facebook page is opened as a designated public forum that Defendant Whipple fully controls.

131.    Defendant Whipple's conduct violates clearly established rights belonging to Plaintiff Haulmark of which reasonable persons in Defendant Whipple's position knew or should have known.

132.    Defendant Whipple engages in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and is reckless disregard of Plaintiff Haulmark's rights under the Kansas Constitution.

133.    Defendant Whipple, as the mayor, is a policymaker for the City of Wichita and his actions in this matter has the effect of Wichita custom, policy, and practice.

134.    The City of Wichita's customs, policies, and/or practices are the moving force behind Defendant Whipple's violation of Plaintiff Haulmark's rights.

135.    Defendant Whipple's actions and/or omissions cause, directly and proximately, Plaintiff Haulmark to suffer damages. The actions and inaction of Defendant Whipple cause Plaintiff Haulmark damages in that he was prevented from speaking freely on a matter of public concern, among other injuries, damages, and losses.

### SIXTH CLAIM FOR RELIEF
*42 U.S.C. § 12131-12134 et seq. - Violations of Title II of the ADA*
*Failure to Make Reasonable Modifications and Provide Accommodations*
*(Plaintiff Haulmark against Defendants City of Wichita and Whipple)*

136.    As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

137.    On this claim, Defendant Whipple is sued only in his official capacity.

138.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

139.     A public entity is required to "make reasonable modifications in policies,

practices, or procedures when the modifications are necessary to avoid discrimination on

the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity."

See 28 C.F.R § 35.130(b)(7)(i).

140.     The City of Wichita is a "public entity" under Title II. 42 U.S.C. § 12131(1)(b).

Defendant Whipple is the head of the same public entity, a named party in this lawsuit.

141.     In addition, a public entity may not, on the basis of disability, "[d]eny a

qualified individual with a disability the opportunity to participate in or benefit from the

aid, benefit, or service[.]" 28 C.F.R. § 35.130(b)(1)(i).

142.     "A public entity may not, directly or through contractual, licensing, or other

arrangements" discriminate against individuals on the basis of disability. See 28 C.F.R. §

35.130(b)(1).

143.     In addition, a public entity "may not directly or through contractual or other

arrangements, utilize criteria or methods of administration that have the effect of

subjecting qualified individuals with disabilities to discrimination on the basis of

disability." See 28 C.F.R. § 35.130(b)(3)(i).

144.     As the U.S. Supreme Court instructed, statutes must "be construed so that

effect is given to all its provisions, so that no part will be inoperative or superfluous, void

or insignificant." See *Corley v. United States*, 556 U.S. 303, at 314 (2009) (Cleaned up).

145.     These social media platforms include three Facebook pages-- City of Wichita-

Government[6], Mayor of Wichita[7], and Brandon Whipple[8]-- and a YouTube channel-- City of

---

[6] Facebook Page of City of Wichita- Government, https://www.facebook.com/cityofwichita
[7] Facebook Page of Mayor of Wichita, https://www.facebook.com/mayorofwichita
[8] The campaign's Facebook Page of Defendant Brandon Whipple, https://www.facebook.com/VoteWhipple

Wichita[9]-- which contains the posting of the videos as the outputs the public entity provides to the public it serves, constituting as the services, programs, and activities under Title II.

146.   Defendant Whipple is legislatively authorized to enforce all of the laws including the ADA and other anti-discrimination laws using the City's resources when bringing the City of Wichita into full compliance with Title II. See K.S.A. § 12-10a06.

147.   By arranging with Defendant Whipple's campaign to offer services, programs, and activities on behalf of the City of Wichita against the backdrop of the COVID-19 pandemic, the City has been capable of avoiding discrimination against individuals with a hearing disability.

148.   The City of Wichita may not delegate its affirmative duties to ensure compliance with Title II of the ADA to private entities such as Defendant Whipple's campaign.

149.   As a result of hiding behind Defendant Whipple's campaign and ignoring its own independent responsibility to ensure accessibility and compliance required by Title II, the City of Wichita intentionally discriminates against individuals with a hearing disability like Plaintiff Haulmark.

150.   It is the City of Wichita's affirmative duty to coordinate measures with Defendant Whipple's campaign and develop a plan to ensure that Plaintiff Haulmark and other individuals with a hearing disability are provided with effective communication consistently to avoid discrimination.

---

[9] YouTube Channel of City of Wichita, https://www.youtube.com/user/wichitacity7

151.   As a result of the intentional failure of the Defendant City of Wichita to take affirmative steps, individuals with a hearing disability are excluded from the videos as the programs, services, and activities offered on these social media platforms.

152.   Defendant Whipple has been aware of ADA requests of modifications and accommodations from Plaintiff Haulmark and other individuals with a hearing disability for the City of Wichita to comply with Title II of the ADA by providing effective communication with all videos posted on the Defendants' social media platforms.

153.   As a result of not meeting the ADA's requirements, the Defendants do not consistently provide effective communication to ensure that individuals with a hearing disability can access and equally participate in their services, programs, and activities on their social media platforms.

154.   As part of its failure to make necessary modifications to ensure that the Mayor's public briefings are held in a communication accessible location, the Defendant City of Wichita fails to ensure that individuals with a hearing disability, including Plaintiff Haulmark, will not be denied access to all of its' municipal benefits.

**EIGHTH CLAIM FOR RELIEF**
*42 U.S.C. § 12203(a) - Violations of Title V of the ADA*
*Intentional Retaliation*
*(Plaintiff Haulmark against Defendant City of Wichita)*

155.   As if fully set forth herein, Plaintiff Haulmark incorporates all other paragraphs of this amended Complaint.

156.   Title V of the ADA emphasizes, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under [the ADA]." See 42 U.S.C. § 12203.

157.    As an advocate for Wichita residents with a hearing disability, Plaintiff Haulmark consistently made ADA requests while addressing Defendant Whipple, clothed with the authority of state law pertaining to the City of Wichita, on Whipple's Facebook page. Aside from ADA matters, Plaintiff Haulmark did not express any personal views, beliefs, or thoughts on the same page.

158.    Defendant Whipple removed all of Plaintiff Haulmark's comments, covering only ADA-related matters, on Whipple's Facebook page.

159.    Defendant Whipple blocked Plaintiff Haulmark from accessing Whipple's Facebook page after Plaintiff Haulmark filed this lawsuit with the original complaint.

160.    Defendant Whipple subjected Plaintiff Haulmark to hatred, contempt, and ridicule in the public eye.

161.    Defendant Whipple is who took adverse actions on behalf of the public entity he represents against Plaintiff Haulmark on Whipple's Facebook page. By doing so, City of Wichita has threatened to take action against any individuals who wish to make ADA related requests.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Haulmark respectfully request that this Court enter judgment in his favor and against the Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

a. Declaratory relief and injunctive relief;

b. Retain jurisdiction over this action to ensure the Defendants' full compliance with the mandates of the ADA;

c. Compensatory damages as allowed by law, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive damages for the Section 1983 claims as allowed by law in an amount to be determined at trial;

e. An award of attorney fees and costs if counsel has ever been retained by Plaintiff Haulmark during the duration of this action;

f. An award of reasonable expenses of court to Plaintiff Haulmark; and

g. Such other further relief as deemed just and proper.

## XII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

-------------------------------------------------------------------

DESIGNATION OF PLACE OF TRIAL

Plaintiff Haulmark designates Wichita, Kansas as the location for the trial in this matter.

Respectfully submitted this 22nd day of August 2022

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981