# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS HAULMARK**, | ) |
| Plaintiff, | ) |
| V. | ) |
| **CITY OF WICHITA**, | ) |
| and | ) Civil Action No.  21-1182-EFM-TJJ  |
| **BRANDON WHIPPLE**, in his official | ) |
| capacity as the Mayor of the | ) |
| City of Wichita, | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

As a *pro se* litigant, Plaintiff Chris Haulmark respectfully files this Reply in Support of his Motion for Leave to Amend Complaint and would show as follows:

## I. SUMMARY OF THE PROPOSED AMENDMENTS

The City offers the services, programs, and activities to the public through itself and its mayor when sharing announcements, responding to inquiries, providing vital health updates, dealing with ordinances and local regulations, and discussing important city matters.

This case is about a Deaf individual who is being denied from participating in the services, programs, and activities of the Defendant City of Wichita (hereinafter "City") as a public entity on the social media platforms, where its benefits are offered

to the public. Defendant Brandon Whipple (hereinafter "Defendant Whipple") and the City are alleged to be discriminating against the same Deaf individual.

In the original complaint, Plaintiff Haulmark alleged only one claim and brought this claim against both Defendants City of Wichita and Whipple for discriminating against him in several ways that violate Title II of the Americans with Disabilities Act. The City had failed to hold its affirmative obligations to ensure that their services, programs, and activities are provided with meaningful access for the individuals with hearing disabilities. The City is failing to make requested reasonable modifications to its policies, practices, or procedures to avoid discrimination based on Plaintiff Haulmark's disability. This includes intentionally excluding Plaintiff Haulmark from many of the services, programs, and activities offered by both Defendants. Furthermore, the Defendants fail to provide adequate notice of accessible locations offering meaningful access where individuals with hearing disabilities can seek and access inaccessible benefits currently available to individuals without a hearing disability. In addition, Plaintiff Haulmark is intentionally subjected to discrimination on the basis of his disability by unnecessary policies, practices, procedures, criteria, or administration methods.

One claim remains in the First Amended Complaint while six new claims are proposed to be added. In the First Amended Complaint[1], there are six additional claims with the original ADA claim: 1) Free Speech of the First Amendment, 2)

---

[1] In the proposed amended complaint, "Eighth" is a typo for "Seventh" for the claim covering ¶¶ 155-161. Plaintiff Haulmark will correct this typo if this Court grants this motion with instructions.

Right to petition the Government of the First Amendment, 3) Retaliation[2] of the First Amendment, 4) Right to petition the Government under Kansas Constitution Bill of Rights, 5) Free Speech under Kansas Constitution Bill of Rights, 6) Failure to Make Reasonable Modifications and Provide Accommodations under Title II of the ADA, and 7) Intentional Retaliation under Title V of the ADA.

Additionally, the First Amended Complaint clarifies the same issues that are alleged in the original complaint, cleaning up the grammar. There are not any substantially different issues added to this First Amended Complaint. In their opposition, the Defendants do not challenge the addition of the Intentional Retaliation claim under Title V of the ADA and the addition of Defendant Whipple to be sued in his individual capacity.

## II. THE DEFENDANTS' SUMMARY OF PLAINTIFF'S PROPOSED AMENDMENTS

The Defendants misstates that Plaintiff Haulmark is asking this Court to "shift" the focus of his lawsuit away from the original ADA claim towards the blocking of Defendant Whipple's campaign Facebook page with the proposed amendments to his complaint. See Joint Opposition by Defendants City of Wichita and Brandon Whipple at 3. (Docket No. 57) (hereinafter "Defendants' Opposition") In addition, the Defendants assert that the "new allegations in the proposed amendment are limited." *Id.* at 4. Furthermore, the Defendants assert that Plaintiff Haulmark "incorrectly and inconsistently describes social media on Defendant

---

[2] "Realiation" is a typo for Retaliation under the Third Claim that needs correction.

Whipple's personal campaign Facebook page as on behalf of the City and repurposed to be the City of Wichita's official channel of communication- despite alleging the City has two separate official Facebook pages for itself and the Mayor in his official capacity." *Id.* at 4. (Internal quotations omitted) The Defendants close off their summary with the assertion that Plaintiff Haulmark has "failed to state a legal claim upon which relief can be granted, and the Motion should be denied because amendment is futile." *Id.* at 5.

It is no surprise that the Defendants are trying to convey a false impression through this Court about Plaintiff Haulmark's proposed amendments for his original complaint.

Plaintiff Haulmark's amendments for his complaint does not propose substantially different issues. As a result of the newly discovered evidence, a few clarifications were made and new claims were added to cover the same issues that were originally in the complaint.

To support his Title II claim as a response to a dispositive motion, Plaintiff Haulmark has submitted statements, exhibits, and legal authority, including how Defendant Whipple is allegedly conducting his mayoral duties on his campaign's Facebook page and how Title II of the ADA applies to Defendant Whipple's speech and activities on the same page. See Plaintiff Haulmark's Response and Memorandum in Opposition (Docket No. 60) (hereinafter "Haulmark's Opposition")

to the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket No. 44 & 48).

There is no undue delay or futility in the six new claims that are to be amended to the complaint. These six claims are dependent on the new evidence that have been presented in ¶¶ 79-81 of Haulmark's Opposition.

### III.   REPLY TO THE DEFENDANTS' ARGUMENTS

The Defendants mistook what has been alleged in the original complaint as the same allegation to be included in the proposed amended complaint based on new evidence discovered after the Scheduling Order deadline. If the Defendants are to read closely in the original complaint about Plaintiff Haulmark being restricted from Defendant Whipple's campaign Facebook page.

> "When a user with a Facebook page 'bans' a personal Facebook profile, the user of this Facebook profile can no longer comment on the Facebook page. If the banned user attempts to comment on a Facebook page that she or he has been banned from, she or he will only be given the opportunity to share the post and not be allowed to comment under the post. Unless the non-banned users opt to look at the list of shared posts of the Facebook page's post in order to view the shared post of the banned user on the personal Facebook profile, they will not be able to see the discussion involving the banned user."

¶ 30 in the Original Complaint (Docket No.1) (Internal quotations retained).

The previous paragraph with the duplicate text is located at ¶ 32 in the amended Complaint. In the amended Complaint, Plaintiff Haulmark added the following paragraph regarding what Facebook allows its users to do pertaining to the moderation of their Facebook pages.

> "User with a Facebook page has the option to 'block' personal Facebook profiles from viewing their Facebook page. When a personal Facebook profile is blocked, this profile cannot view and share any content at all on the Facebook page."

¶ 32 in the First Amended Complaint (Docket No. 54-1) (Internal quotations retained).

When it comes to moderating Facebook pages, there is a difference[3] between "bans" and "blocks". It is still possible for a banned user to access, view, and share the content on the Facebook page that banned them. Users who are blocked cannot access, view, or share the content on the Facebook page that is blocking them.

The Defendants are wrong that Plaintiff Haulmark's "same allegation that Plaintiff was blocked from Defendant Whipple's personal campaign Facebook page was covered extensively in the original Complaint." See Defendants' Opposition at 5.

The original complaint alleges that Plaintiff Haulmark had been only banned from Defendant Whipple's Facebook page. After the original complaint was filed to initiate this lawsuit, Defendant Whipple increased the restriction of Plaintiff Haulmark's access to the campaign's Facebook page from banning to blocking Plaintiff Haulmark. As of today, the same level of restriction remains in place to restrain Plaintiff Haulmark's free speech.

Thus, Plaintiff Haulmark's new allegation that he is blocked from the campaign's Facebook page is proposed to replace the old allegation that he was banned from the page. To support Plaintiff Haulmark's seven claims in the proposed

---

[3] Ban or block profiles from your Facebook Page, https://www.facebook.com/help/185897171460026

amended complaint, the most important evidence has been presented with Haulmark's Opposition as Exhibit #22 to #52. The new evidence shows that Defendant Whipple admits to using the campaign's Facebook page as the mayor for official purposes with a custom or policy of the City empowering him to restrict speech and petitions in any way he wishes. After this amended complaint is filed, a question will be asked during the discovery process about why Plaintiff Haulmark was blocked from the campaign's Facebook page during the discovery stage. Is it because of his disability or is it because Defendant Whipple wanted to restrict Haulmark's speech as a viewpoint discrimination? Which claims are applicable will depend on the answer to this question.

    Due to their misreading of the original and proposed amended complaints, the Defendants' assertion that Plaintiff "has consistently delayed and increased the complexity of this case without any legal basis" should not be taken seriously. See Defendants' Opposition at 6.

    The Defendants prolonged and complicated the litigation regarding the discovery process by arguing for this Court to incorrectly rely on laws outside of Title II of the ADA to bar Plaintiff Haulmark from conducting discovery on the campaign's Facebook page. The Defendants admits, for instance, that they are attempting to apply constitutional free speech analysis to Plaintiff Haulmark's pending ADA claim with their dispositive motion. See Defendants' Opposition at 1-2.

Plaintiff Haulmark sought discovery to explore the relationship between Defendant Whipple's campaign and the City. Plaintiff Haulmark did his best to seek and gather evidence to support his ADA claim, but has been open to discovering that the reason for the banning may not be because of his disability. Had Defendant Whipple been cooperative or that Plaintiff Haulmark's motion to compel had succeeded with Title II being properly considered, there would not been any delays or complexities being added to this case. If Plaintiff Haulmark had discovered on the reason of why he was blocked from the campaign's Facebook page by Defendant Whipple, Plaintiff Haulmark would have been able to decide whether to amend his complaint to add Section 1983 claims or to pursue the lone ADA claim to the end without any amendments.

To support his standing for the requested reliefs under Title II of the ADA, Plaintiff Haulmark has presented statements, exhibits, and the legal authority in Haulmark's Opposition. Evidently, the Defendants' assertions about their compliance with Title II are unfounded.

Plaintiff Haulmark merely proposes new Section 1983 claims to be added to his amended complaint, not to shift away from the pending ADA claim.

In their opposition, the Defendants argue Plaintiff Haulmark's Title II claim is futile because of Section 1983 defenses for qualified immunity purposes. See Defendants' Opposition at 7. It is likely that Plaintiff Haulmark will succeed in obtaining the reliefs he seeks with his ADA claim since the text of the ADA does not

specify where public benefits must be offered in order for individuals with disabilities to be eligible to receive them. Especially when the Supreme Court examined whether Title II of the ADA applies when determining where a public entity provides services, programs, or activities. *Olmstead v. L. C*, 527 U.S. 581, at 603 n.14 (1999) (Holding that public entities "must adhere to the ADA's non-discrimination requirement with regard to the services *they in fact provide*.") (Emphasis added)

First, the Defendants' focus is onto a case where the Tenth Circuit supposedly decided that "personal campaign social media content of public officials does not qualify as a public forum for purposes of free speech constitutional analysis." See Defendants' Opposition at 7. (Internal quotation marks omitted) (Citing *Swanson v. Griffin (Swanson II)*, 2022 U.S. App. LEXIS 5179, *9–*10 (10th Cir.)) Second, the Defendants argue that the designated public forum allegations remain in Plaintiff Haulmark's proposed amended complaint. See *Id*. Third, the Defendants contend that the existence of the "an official mayoral [Facebook] page to Defendant Whipple" disqualifies the campaign's Facebook page from being used as a designated forum. See *Id*.

As the Defendants present the Tenth Circuit's analysis of constitutional free speech, they shoehorn in the "personal campaign social media content" to defend Defendant Whipple's unconstitutional actions on the campaign's Facebook page. See Defendants' Opposition at 7.

Before the appeal with the Tenth Circuit, a sister court pointed out that the plaintiff did not allege:

"(1) that Otero County had a policy and practice regarding the use of Facebook pages by public officials; (2) that Defendant Griffin created the Facebook page upon becoming an Otero County Commissioner or designated the Facebook page as belonging to an Otero County Commissioner; (3) that Defendant Griffin explicitly invited an exchange of views by the public or clothed the Facebook page in the trappings of [the] public office by including, for instance, official contact information; or (4) how others, including government official and agencies, regard and treat the Facebook page."

See *Swanson v. Griffin (Swanson)*, 526 F.Supp.3d 1005, at 1012 (D.N.M. 2021), *rev'd and remanded*, No. 21-2034, 2022 WL 570079 (10th Cir. Feb. 25, 2022) (Internal quotation marks omitted).

It has been undisputed, however, that the defendant's Facebook account is an individual profile[4] and that he does not refer to himself as a county commissioner. See *Swanson* at 1009. In addition, it's been undisputed that there was not any invitation to submit comment regarding public business. See *Id*. The plaintiff requested copies of messages transmitted using Facebook messenger from the defendant's personal Facebook account regarding public business. See *Id*. The county attorney stated that the defendant had unblocked the plaintiff on Facebook. See *Id*. at 1010. The defendant was sued in his individual capacity. See *Id*.

On appeal, the Tenth Circuit concluded that the plaintiff "did not carry his burden on the clearly established prong of the qualified immunity analysis."

---

[4] See the difference between a Facebook profile and a Facebook page: ¶¶ 26-29 in original complaint; ¶¶ 28-31 in proposed amended complaint; Compare Profiles, Pages and Groups on Facebook, https://www.facebook.com/help/337881706729661

*Swanson II* at \*6. The plaintiff cited only three out-of-circuit cases before the *Swanson II's* decision determined that the plaintiff "has not identified law clearly establishing when an individual government official's social media profile becomes a public forum. " *Swanson II* at \*7

As of today, five recent Circuit Court rulings have shed light on whether public officials act under color of state law when they restrain constituents social media platforms. See *Knight First Amend. Inst. at Colum. Univ. v. Trump*, 928 F.3d 226, 238 (2d Cir. 2019), *cert. granted, judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Colum. Univ.*, 141 S.Ct. 1220 (2021); *Davison v. Randall*, 912 F.3d 666, 689 (4th Cir. 2019); *Lindke v. Freed*, No. 21-2977 (6th Cir. Jun. 27, 2022); *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021); *Garnier v. O'Connor-Ratcliff*, No. 21-55118 (9th Cir. Jul. 27, 2022).

Next, the 5th Circuit could become the sixth because of *Kallinen v. Newman*, Civil Action 4:22-CV-652 (S.D. Tex. Jul. 20, 2022) is pending appeal as USCA No. 22-20383. The number of decisions may have or will rise beyond "a handful of decisions from courts in other circuits" in the near future. *Swanson II* at \*4 (Citing *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009)).

The *Swanson* case differ from this case involving Defendants City of Wichita and Whipple with respect to Plaintiff Haulmark's new proposed Section 1983 claims that are to be amended to the original complaint. Defendant Whipple admitted on April 2, 2020 that he is holding weekly press conferences on his campaign's Facebook

page. See ¶ 58 of Haulmark's Opposition. Defendant Whipple has shared during his live streaming session on April 10, 2021 that his discussion with the public on the campaign's Facebook page has been approved by the communication team of the City. See ¶ 78 of Haulmark's Opposition. Defendant Whipple admitted that his live streaming services for the public is on behalf as himself as the mayor on September 25, 2021. See ¶ 80 of Haulmark's Opposition. Nearly two weeks ago on September 3, 2022, it is shown that Defendant Whipple continues to serve the public on the campaign's Facebook page, disseminating information from within the city and answering questions from the audience about city-related matters, which a private citizen would not be able to do. See ¶ 81 of Haulmark's Opposition.

Mostly important, Plaintiff Haulmark remains blocked from Defendant Whipple's campaign Facebook page to this day. In other words, Plaintiff Haulmark's speech continues to be restricted because of Defendant Whipple's continuing and repeating unlawful conduct. The Tenth Circuit concluded that "both the continuing violation doctrine and the repeated violation doctrine can be applied within the § 1983 context." *Herrera v. City of Espanola*, 32 F.4th 980, at 989 (10th Cir. 2022)

As long as Defendant Whipple refuses to unblock and unban Plaintiff Haulmark from the campaign's Facebook page, each day constitutes a discrete act and a new violation of Plaintiff Haulmark's constitutional rights. *Herrera* at 996. (Citing *Hamer v. City of Trinidad*, 924 F.3d 1093, at 1101 (10th Cir. 2019)).

Meanwhile, the weight of authority in regards to qualified immunity under Section 1983 is accumulating over time.

As a result of the continuing violation and repeated violation doctrines and the updated weight of authority approach, the law may be clearly established by the time Defendant Whipple takes action to cease blocking Plaintiff Haulmark from his campaign's Facebook page if the litigation continues.

Plaintiff Haulmark is proposing to this Court for his new Section 1983 claims to seek an injunction against Defendant Whipple in his official capacity as well as damages against Defendant Whipple in his individual capacity to be amended to his complaint.

While Plaintiff Haulmark continues to be blocked from Defendant Whipple's campaign page with his speech continuing to be restricted on the same page, Plaintiff Haulmark is justified to have the multiple Section 1983 claims to be amended into the complaint because the weight of authority is expected to increase in the near future while Defendant Whipple's unlawful conduct continues to be repeated on a daily basis. The new Section 1983 claims are actionable and not futile.

According to the Defendants, Plaintiff Haulmark's proposed amended complaint should include detailed and complex information.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."

In Plaintiff Haulmark's proposed amended complaint, he identifies the specific claims he is alleging, the facts supporting those claims, and what each Defendant allegedly did wrong. Again, there are not any substantially different issues added to this First Amended Complaint. As a result of the newly discovered evidence, the new claims will focus on Defendant Whipple's actions and inactions that violate the laws and constitutions.

The Defendants confirm further that Defendant Whipple does not use the designated official mayoral Facebook page when he provides up-to-date information about the City's affairs, its activities, and its responses to the public. Instructing Plaintiff Haulmark to use the "official mayoral [Facebook] page to Defendant Whipple" instead of the campaign's Facebook page where members of the public are currently participating would be like asking him to sit in an empty room with none of the public officials or members of the public present. See Defendants' Opposition at 7. Further, this assertion indicates the Defendants' intention to practice segregation or isolation by limiting the campaign's Facebook page to individuals without a hearing disability and those who share Defendant Whipple's views.

## IV.   CONCLUSION

As far as the proposed amendments to Plaintiff Haulmark's complaint go, they are reasonable, flow naturally from the fact pattern, and do not prejudice the Defendants by limiting their defenses.

It has been shown during the duration of this litigation by Plaintiff Haulmark that he has done his due diligence with his best efforts to prevail in this case, and the proposed amended complaint is not to be futile or untimely. It is through the proposed First Amended Complaint that Plaintiff Haulmark is able to pursue further justice in this Court.

---

Respectfully submitted this 15th of September 2022

*[signature]*

PLAINTIFF, *pro se*
chris@sigd.net
600 S. Harrison St
Apt #11
Olathe, KS 66061
512-366-3981

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th of September 2022, a true and correct copy of the above and foregoing document was sent via email as an attached file in format of PDF to the clerk of the U.S. District Court for the District of Kansas and to each of the following::

| | | |
|---|---|---|
| Erik S. Houghton, 455 North Main 13th Floor Wichita, KS 67202 *Attorney for Defendant City of Wichita* | Randall K. Rathbun Depew, Gillen, Rathbun & McInteer, LC 8301 E. 21st St., Ste. 4500 Wichita, KS 67206-2936 *Attorney for Defendant Brandon Whipple* | /s/ChrisHaulmark PLAINTIFF, pro se |