# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHRIS HAULMARK,

    *Plaintiff*,

vs.

CITY OF WICHITA, and BRANDON WHIPPLE, in his official capacity as the Mayor of the City of Wichita,

    *Defendants*.

Case No. 6:21-cv-01182-EFM-TJJ

## MEMORANDUM AND ORDER

Before the Court is Defendant City of Wichita's and Defendant Brandon Whipple's Joint Motion to Dismiss or in the alternative Motion for Summary Judgment regarding Plaintiff Chris Haulmark's claims under Title II of the Americans with Disabilities Act ("ADA").[1] Plaintiff has alleged that by Defendants have violated Title II by banning him from Whipple's private campaign Facebook page and by not providing reasonable accommodations for videos posted on the City's official Facebook and YouTube pages. After Defendants filed this Motion, Plaintiff moved to

---

[1] Defendant City of Wichita originally filed its Motion for Summary Judgment alone (Doc. 44). Defendants afterward jointly filed an Amended Motion (Doc. 48) which superseded the previous Motion by adding Defendant Whipple while relying upon the same Memorandum in Support (Doc. 45). Because the substantive arguments have not changed, this Court will solely address the Defendants' Joint Motion.

amend his Complaint to include six additional causes of action. For the reasons stated below, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion to Amend.

## I.     Factual and Procedural Background[2]

As a deaf individual, Plaintiff is politically active in advocating for the rights of other hearing-disabled Kansans. In this assumed role, Plaintiff has spent much time online involved in forums and discussions about local government issues. Relevant to this case, Plaintiff used to follow and comment on Mayor of Wichita Brandon Whipple's personal campaign Facebook page. For reasons undisclosed, Whipple banned Plaintiff from his page and deleted his comments. Whipple also has a separate Facebook page in his public capacity as Mayor from which Plaintiff has not been banned. Although Whipple addresses public issues on his personal campaign page, the page is clearly identified as "VoteWhipple" with Whipple's spouse serving as the page owner and treasurer. The parties agree that Whipple's personal campaign Facebook page is not a public entity's service, program, or benefit.

The City of Wichita (the "City") operates two social media accounts, a Facebook page and a YouTube page on which it posts videos. Prior to Plaintiff filing his Complaint, the City had provided captioning for both pre-recorded and live videos through a third-party service provider. Furthermore, both YouTube and Facebook provide automatic captioning for some videos. After Plaintiff filed his Complaint, the City has purchased in-house captioning equipment, brining these systems up to full functionality by November 2021. At no point has the City banned Plaintiff from either of its social media sites.

---

[2] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party, the Plaintiff. The facts, where controverted, are noted as such.

Plaintiff brought this action in July 2021, alleging that both the City and Whipple in his official capacity had violated Title II of the ADA. In February 2022, Plaintiff filed a motion to compel discovery of Whipple's personal campaign Facebook page. The magistrate judge overseeing the case at the time denied the motion, finding that any information related to Whipple's personal campaign Facebook page would be utterly irrelevant to whether Plaintiff could recover under Title II. Upon Plaintiff's motion for review, this Court upheld the magistrate judge's decision. In doing so, the Court stated that Plaintiff's assertion that Title II could apply to a personal campaign Facebook page "is untenable and unsupported by the law . . . . Regardless of Haulmark's characterization of the relief sought, the result is the same." Soon afterward, Defendants brought this Motion to Dismiss or in the alternative Motion for Summary Judgment, arguing that Plaintiff's claims fail as a matter of law.

## II.    Legal Standard

The Court first must consider whether to treat Defendants' motion as one for dismissal under Rule 12(b)(6) or as a motion for summary judgment. "A Rule 12(b)(6) motion must be treated as a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.' "[3] In that case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[4] However, a court need not convert the motion to one for summary judgment if it only considers "(1) documents the complaint incorporates by reference; (2) documents referred to in the complaint that are central to the

---

[3] *Hartleib v. Weiser L. Firm, P.C.*, 861 F. App'x 714, 719 (10th Cir. 2021) (quoting Fed. R. Civ. P. 12(d)).

[4] Fed. R. Civ. P. 12(d).

plaintiff's claim and whose authenticity is not challenged; and (3) matters of which a court may take judicial notice."[5]

Here, both Defendants and Plaintiff have submitted documents outside the pleadings, including affidavits, screenshots of Facebook pages, links to videos, etc.  The Court finds that ruling on this motion requires it to consider documents outside of the Complaint to which none of the above exceptions apply.  Therefore, Defendants' motion will be treated as one for summary judgment.  Furthermore, as evidenced by Plaintiff's extensive filing of 52 exhibits (constituting 533 pages) in his Response, the Court finds that all parties have had a reasonable opportunity to present all pertinent material; further discovery is not necessary.[6]

## A.   Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[7]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[8]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[9]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[10]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—

---

[5] *Hartlieb*, 861 Fed. App'x at 719 (further citations and quotations omitted).

[6] *See also* Doc. 43 (affirming magistrate judge's denial of Plaintiff's Motion to Compel discovery into Whipple's Facebook page).

[7] Fed. R. Civ. P. 56(a).

[8] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[9] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[10] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

conclusory allegations alone cannot survive a motion for summary judgment.[11] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[12]

**B.        Standard for construing pleadings of pro se litigants**

Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."[13] A pro se litigant is entitled to a liberal construction of his pleadings.[14] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[15] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[16]

### III.        Analysis

**A.        Defendants' Motion to Dismiss/Motion for Summary Judgment**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[17] To prevail on a claim under this statute, a plaintiff must prove: "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public

---

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[12] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[13] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[14] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*

[17] 42 U.S.C. § 12132.

entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[18]

Here, the parties do not dispute that Plaintiff is a qualified individual under the ADA because of his deafness.  Furthermore, there is no dispute that Whipple excluded Plaintiff from his personal campaign Facebook page.  Instead, there are only two main issues the parties dispute: (1) whether Whipple's banning Plaintiff from his personal campaign page violated Title II and (2) whether the City violated Title II by failing to provide reasonable accommodations in captioning videos posted to its own Facebook and YouTube pages.  The Court will address each in turn.

### 1.     *Whipple's personal Facebook page*

A primary issue in this case is whether Whipple's personal campaign Facebook page constitutes "services, programs, or activities of a public entity" under the Title II.  Plaintiff argues that because Whipple, as Mayor of Wichita, used his personal campaign page to address public issues, the page should be treated as a media outlet for which the City of Wichita is responsible.  Under this reasoning, by blocking his account and deleting his comments, Whipple discriminated against Plaintiff on behalf of the City.  Plaintiff's only argument concerning the City itself is that it "as the public entity is liable based on the actions of its Mayor, Defendant Whipple."

As defined by statute, a public entity is "any State or local government; [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government."[19]  Notably absent from this list are employees of public entities.  This is a logical and straightforward omission.  Whipple, even as Mayor of Wichita, is not a public entity.

---

[18] *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

[19] 42 U.S.C. § 12131(1); *see also id.* § 12131(1)(C) (further listing as public entities "the National Railroad Passenger Corporation, and any commuter authority").

Therefore, he cannot be held liable under Title II for denying his own private services to others or discriminating against others.

Likewise, as the magistrate judge in this case has already found, Whipple's "private campaign page, on its face, is not a public entity's 'service, program or activity' . . . within the meaning of Title II." Rather, it is just what it claims to be—a politician's private campaign page. Its URL is "https://www.facebook.com/VoteWhipple/" and it clearly identifies the page's owner as that "Chelsea Whipple, Treasurer." On it may be found precisely what one might expect a politician to use to connect with voters, advertise for upcoming campaigns, and engage his constituents. Even Plaintiff acknowledges that Whipple's private campaign is not a public entity's service, program, or activity. His only argument is that it is a "communication barrier" to the City's services, programs, and activities. Even if that were true, it is irrelevant to a claim under Title II because it would be a barrier erected by Whipple; the same Whipple who is definitively *not* a public entity.[20] Because Plaintiff cannot show a genuine dispute of material fact as to whether Whipple's banning him from his personal campaign Facebook page denied him a public entity's services, programs, or activities, Plaintiff's claim fails on this point.

  2.  *The City's Facebook and YouTube pages*

Liberally construing Plaintiff's Complaint, it appears Plaintiff is also claiming that the City has denied him reasonable accommodations by not including sufficient captioning on videos posted to the City's Facebook and YouTube pages. This argument fails for lack of evidence necessary to show a genuine issue of material fact.

---

[20] Likewise, the parties do not dispute that Kansas law prevents the City from funding Whipple's private campaign efforts, including his Facebook page, which blows yet another hole in the suggestion that Whipple's page is a public entity's service, benefit or program.. *See* K.S.A. § 25-4169a(a)(1) (2015).

The elements here are the same as above. Plaintiff "must show: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of some public entity's services, programs, or activities and (3) such exclusion or denial of benefits was by reason of his disability."[21] Title II requires public entities to make its services, programs, and activities "readily accessible."[22] This is "an affirmative obligation on public entities to reasonably accommodate qualified individuals with disabilities to allow them to participate in its programs and services."[23] A plaintiff need not show "complete deprivation"[24] by the public entity but rather the lack of "meaningful access"[25] to the services, programs, or activities. "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact."[26]

Here, Plaintiff has presented no evidence of the City's failure to provide reasonable accommodations to deaf individuals on its Facebook and YouTube pages. Plaintiff admits that the City was already providing captioning services on its posted videos through a third-party vendor prior to this lawsuit. Plaintiff also admits, without further comment, that after he filed his Complaint, the City has continued to improve its captioning services, installing new in-house captioning equipment in November 2021. By Plaintiff's own admissions, it appears that just like

---

[21] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021).

[22] 28 C.F.R. § 35.150(a).

[23] *Brooks*, 12 F.4th at 1167.

[24] *Id.*

[25] *Alexander v. Choate*, 469 U.S. 287, 301–02 (1985).

[26] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050–51 (10th Cir. 2017) (internal quotation marks omitted); *see also Brooks*, 12 F.4 at 1170, n.8 ("[T]he determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability.") (further citations and quotations omitted).

before in *Haulmark v. Kansas*,[27] "Defendants offered Haulmark reasonable accommodations and that Haulmark simply failed to take advantage of them."[28]

Although Plaintiff attempts to present evidence of videos without captions in his Response, each of the cited videos is from Whipple's personal campaign page, not the City's Facebook or YouTube pages. Plaintiff's only real argument appears to be that the City's videos do not provide: "1) full content, 2) identification of speakers, 3) understanding whether a statement is being made or a question is being asked, and 4) immediate access to the content." In making this argument, Plaintiff fails to cite to any evidence showing that is actually the case. Admittedly, whether reasonable accommodations exist is at least partially a question of fact. Unsupported allegations, however, cannot create a genuine issue of material fact as required to survive summary judgment.[29] Where, as here, a party has failed to create a genuine issue of material fact as to whether a public entity provided it with reasonable accommodations, summary judgment is appropriate.

**B.     Plaintiff's Motion to Amend**

In his Motion to Amend, Plaintiff identifies six additional claims he wishes to bring against Whipple and the City. As summarized by Plaintiff, these claims are: " 1) Free Speech of the First Amendment, 2) Right to petition the Government of the First Amendment, 3) Retaliation 2 of the First Amendment, 4) Right to petition the Government under Kansas Constitution Bill of Rights, 5) Free Speech under Kansas Constitution Bill of Rights; . . . and 7) Intentional Retaliation under

---

[27] 2021 WL 4124645, at *6 (D. Kan. 2021).

[28] *Id.*

[29] *See* Fed. R. Civ. P. 56(c)(1) (stating that a party must cite to the evidence to establish a genuine dispute of material fact).

Title V of the ADA."  Each of these additional claims has its sole basis in Whipple's decision to block Plaintiff from his personal campaign Facebook page.

Under Federal Rule of Civil Procedure 15(a)(2), amending a complaint after the deadline has passed requires either "the opposing party's written consent or the court's leave."  Courts "should freely give leave when justice so requires."[30]  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[31]  For example, a motion to amend may be properly denied when "allowing amendment would moot the then-pending motion for summary judgment."[32]

Furthermore, if a party seeks to amend a complaint after the scheduling order has passed, that party "must demonstrate (1) good cause for seeking modification under Fed.R.Civ.P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[33]  To demonstrate good cause, the party must "show the scheduling deadlines cannot be met despite the movant's diligent efforts."[34]  Examples of good cause include when "a plaintiff learns new information through discovery or if the

---

[30] Fed. R. Civ. P. 15(a)(2).

[31] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993); *see also Vazirabadi v. Denver Health & Hosp. Auth.*, 782 F. App'x 681, 687 (10th Cir. 2019) ("The most important factor in deciding a motion to amend the pleadings is whether the amendment would prejudice the nonmoving party.") (further citation, quotations, and alterations omitted).

[32] *Carson v. Golz*, 829 F. App'x 853, 857 (10th Cir. 2020), *cert. denied sub nom. Golz v. Fudge*, 142 S. Ct. 95 (2021), *reh'g denied*, 142 S. Ct. 626 (2021)

[33] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240–41 (10th Cir. 2014) ("We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so."); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

[34] *Id.* at 1240 (further citation, quotations, and alterations omitted).

underlying law has changed."[35]  "If the plaintiff knew of the underlying conduct but simply failed to raise [those] claims, however, the claims are barred."[36]

In the present case, Plaintiff has brought his Motion to Amend his Complaint more than six months after the deadline to amend his Complaint expired.  Plaintiff does not offer any adequate explanation for this delay.  Furthermore, he moved to add six new claims to his Complaint while Defendants' Motion for Summary Judgment was pending.  Allowing amendment would effectively moot that Motion, especially since all the claims rely upon the same underlying facts.  Prolonging this litigation without cause would undoubtedly prejudice Defendants.  This prejudice would be undue because Plaintiff cannot give any legitimate reason for failing to include his proposed claims earlier.

Most importantly, Plaintiff has failed Rule 16(b)(4)'s good cause standard.  The law has not changed, nor has Plaintiff discovered new evidence since the deadline to amend his Complaint passed.  To be sure, Plaintiff *claims* to have discovered new evidence that "*may* demonstrate *potential* Section 1983 claims,"[37] directing the Court to ¶¶ 79–81 of his Response to Defendants' Motion for Summary Judgment.  All these paragraphs show is that Whipple used his personal campaign Facebook page to address public topics.  Plaintiff knew this and Defendants have admitted to the same ever since this case began. Therefore, this "new evidence" would not make any difference in Plaintiff's ability to bring the claims he now asserts prior to the scheduling order deadline.

---

[35] *Id.*

[36] *Id.*

[37] Emphasis added.

Plaintiff makes no further argument as to how he showed diligent efforts but still could not meet the scheduling order deadline.  While Plaintiff's status as a pro se litigant may explain his unfamiliarity with the litigation process, it does not excuse his failure to use diligent efforts when attempting to meet the scheduling deadlines.[38]  As each of Plaintiff's proposed claims has as its basis Whipple's use of his personal campaign page to discuss public issues, Plaintiff clearly knew of the underlying conduct but simply failed to raise these claims.  Because the Court finds that Plaintiff cannot meet Rule 16(b)(4)'s good cause standard, Plaintiff's proposed claims are barred.

**B.     Because Plaintiff has failed on his ADA claims, he is not entitled to any relief**

In his Complaint, Plaintiff requests; (1) declaratory judgment that the Defendant violated the ADA; (2) extensive preliminary and permanent injunctions against Defendants; (3) compensatory damages; and (4) costs and attorney's fees.  Because Defendants are entitled to summary judgment on Plaintiff's substantive claims, the Court finds that Plaintiff is not entitled to any of his requested relief.[39]

**IT IS THEREFORE ORDERED** that Defendants Motion for Summary Judgment (Doc. 48) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant City of Wichita's Motion for Summary Judgment (Doc. 44) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend (Doc. 54) is **DENIED.**

---

[38] *See, e.g.*, *Vazirbadi*, 782 F. App'x at 686 (holding pro se plaintiff to Rule 16(b)(4) standard).

[39] *See, e.g.*, *Haulmark*, 2021 WL 4124645, at *7 (declining to address Plaintiff's declaratory judgment claim because "there is no live case or controversy to any of Haulmark's claims").

**IT IS SO ORDERED.**

This case is closed.

Dated this 20th day of October, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE